UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL J. FAGO, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:02-CV-1189 (AHN) |
| | : | |
| vs. | : | |
| | : | |
| CITY OF HARTFORD, et al. | : | |
| Defendants. | : | April 2, 2004 |

DEFENDANTS' MEMORANDUM IN
SUPPORT OF JOINT MOTION FOR SANCTIONS

The defendants, City of Hartford, Bruce Marquis, Kevin Jones, Mark Pawlina,

Joseph Buyak, Mark Rudewicz, Stephen Miele, Nancy McClure, Robert Russell and Patrick

Jobes submit this memorandum in support of their joint motion for sanctions against

plaintiff's counsel, James S. Brewer, based on his inappropriate conduct during the

continuation of plaintiff's deposition on January 22 and February 4, 2004.

I.      BACKGROUND

Defendants again find themselves in the unenviable position of requiring Court

intervention to prevent further inappropriate, obstructionist behavior by plaintiff's counsel,

James Brewer, during the course of discovery.  While defendants acknowledge that the Court

generally disfavors motions for sanctions, Mr. Brewer's continued blatant disregard for the

Federal Rules of Civil Procedure regarding proper deposition conduct makes the filing of this

motion necessary.

On May 14, 2003, Charles Howard, attorney for defendants City of Hartford, Bruce

Marquis, Kevin Jones, Mark Pawlina, Joseph Buyak, Mark Rudewicz and Stephen Miele (the

"Marquis Defendants") deposed plaintiff and later continued his examination on August 7,

2003. Shortly into the August 7 session of the deposition, Attorney Brewer became

obstructionist and unilaterally halted the deposition. Counsel for the Marquis Defendants

then filed a motion to compel and for sanctions on September 17, 2003. Following oral

argument, on December 31, 2003 (the "December 31 Order"), the Court granted the Marquis

Defendants' motion to compel and for sanctions, finding that Attorney Brewer improperly

ended the deposition. Further, the Court noted that Attorney Brewer "behaved in an

argumentative manner, and went so far as to accuse Attorney Howard of fraud...." The Court

found Attorney Brewer's accusations to be unfounded.

On January 22, 2004, less than one month after the Court's December 31 Order,

defendants resumed plaintiff's deposition. As discussed in more detail below, Attorney

Brewer once-again engaged in repeated speaking objections, witness coaching, and personal

2

attacks on questioning counsel.  His conduct continued unabated during the fourth and final session of plaintiff's deposition on February 4, 2004, during which plaintiff was principally examined by Joseph Mr. McQuade, counsel for Nancy McClure, Patrick Jobes and Robert Russell (the "McClure Defendants"), during which time Mr. Brewer wrongfully instructed the witness not to answer several questions.  Defendants now seek sanctions against Attorney Brewer to discourage him from engaging in any such further inappropriate conduct in the future.

II.    LAW AND ARGUMENT

The Court should sanction Attorney Brewer for his obstructive, inappropriate conduct during plaintiff's continued deposition.  Such sanctions are appropriate under 28 U.S.C. § 1927, Federal Rule of Civil Procure 30(d), Local Rule of Civil Procedure 16(g)(1) and/or pursuant to the Court's own inherent power.

A.    Applicable Legal Standards

1.    28 U.S.C. § 1927

Under 28 U.S.C. § 1927, sanctions may be imposed against any attorney "who so multiplies the proceedings in any case to increase the costs unreasonably and vexatiously...." 28 U.S.C. § 1927.  An attorney who engages in such conduct may be liable for excess costs,

3

expenses and attorneys' fees. Id.  The primary concern of § 1927 is to limit the abuse of

court processes, particularly abuses connected with pre-trial discovery. See Roadway

Express v. Piper, 447 U.S. 752, 757, n.4, 100 S.Ct. 2455, 65 L. Ed. 2d 488 (1980).  An

award of sanctions under § 1927 is appropriate if the court determines that the attorney acted

in bad faith.  See United States v. International Bd. Of Teamsters, 948 F.2d 1338, 1345 (2nd

Cir. 1991)("bad faith is the touchstone of an award under this statute.").  An award pursuant

to §1927 is proper "when the attorney's actions are so completely without merit as to require

the conclusion that they must have been taken for some improper purpose such as delay."

State of New York v. Operation Rescue Nat'l, 80 F.3d 64, 72 (2d Cir) (internal quotation

omitted), cert. denied sub nom., Broderick v. United States, 117 S.Ct. 85, 136 L.Ed. 2d 42

(1996).

## 2.    The Court's Inherent Power

It is well established that courts have the inherent power "to manage their own affairs

so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO,

Inc., 501 U.S. 32, 111 S.Ct. 2123, 2132, 115 L.Ed. 2d 27 (1991) (quoting Link v. Wabash

R.R., 370 U.S. 626, 630-31, 8 L. Ed. 2d 734, 82 S.Ct. 1386 (1962)).  This power includes

the authority to impose costs and attorneys' fees against a party or his or her attorney where a

4

party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." <u>Alyeska Pipeline Serv. Co. Wilderness Society</u>, 421 U.S. 240, 258-59, 44 L. Ed. 2d 141, 95 S.Ct. 1612 (1975)(quoting <u>F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.</u>, 417 U.S. 116, 129, 40 L. Ed. 2d 703, 94 S. Ct. 2157 (1974)). More recently, the Second Circuit has held that when an attorney violates a court order or engages in "other misconduct that is not undertaken for the client's benefit, the district court *need not* find bad faith before imposing a sanction under its own inherent power." <u>United States of America v. Seltzer</u>, 227 F.3d 36, 42 (2d Cir. 2000) (emphasis added).

            3.        Local Rule of Civil Procedure 16(g)(1)

Local Rule of Civil Procedure 16(g)(1), formerly Local Rule 31(a), provides that "[i]t shall be the duty of counsel to promote the just, speedy and inexpensive determination of every action. The Court may impose sanctions directly against counsel who disobey an order of the Court or intentionally obstruct the effective and efficient administration of justice." Loc. R. Civ. P. 16(g)(1). A finding of bad faith was not necessary for the imposition of sanctions under Local Rule 16(g)(1)'s predecessor, Local Rule 31(a). See <u>In re Sanctions for Failure to Comply with a Court Order</u>, 58 B. R. 560, 568 (D. Conn. 1985) (Cabranes, J.).

4.    Federal Rule of Civil Procedure 30.

Under Fed. R. Civ. P. 30(d)(1), "[a]ny objection during a deposition must be stated concisely and in non-argumentative and non-suggestive manner.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)."  Fed. R. Civ. P. 30(d)(1).  "If the court finds that any impediment, delay or other conduct has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable cost's and attorney's fees incurred by any parties as a result thereof."  Fed. R. Civ. P. 30(d)(3).

B.    Attorney Brewer Should Be Sanctioned For His Prolonged Speaking
Objections, Witness Coaching And Ad Hominem Attacks On Counsel.

Attorney Brewer should be sanctioned because he engaged in extensive speaking objections, personal attacks on counsel, and coaching of the witness.  To fully appreciate the scope of Mr. Brewer's misconduct, the Court will need to review the full transcripts from the continued depositions.  However, the following deposition excerpt of examination by Mr. Howard on January 22nd, although lengthy, illustrates almost the entire spectrum of Mr. Brewer's inappropriate deposition conduct:

6

Q.  In paragraph 25 when you say the plaintiff was maliciously investigated by defendants based upon a false complaint by McClure, are you referring to the investigation done by Captain Pawlina?

MR. BREWER:  Objection. He already testified this is a pleading he has never read before. You're asking him if he is saying this?

MR. HOWARD:  It's in his name.

MR. BREWER:  Whatever, Chuck, but you're saying this is like it's a statement. It's not so. The form of the question is improper.

Q.  You may still answer.

A.  I believe I have answered that question in past depositions. Lieutenant McClure made a false complaint. It was malicious in the way it was handled, because certainly a reasonable and prudent person would not have come to that same conclusion. In fact, I don't know what Captain Pawlina -- I don't know what techniques he's got in investigating things or whatever, but clearly when he says he can't determine if it happened or didn't happen but yet there's such a significant incident to have occurred but yet no one captures no one's attention. If it walks like a duck, talks like a duck, it's a duck. Clearly that was the catalyst and there was nothing there and that is the underhandedness that I have seen in the city, that I have seen in you, that I have seen in all of this case. Instead of just letting the process go and be fair, there's nothing but obstacles, nothing but maliciousness and there's nothing that's not underhanded in the way it's being dealt with.

Q.  My question was, again, is are you referring in this -- is this reference, as part of your claim in this lawsuit, to the investigation that was done by Captain Pawlina?

MR. BREWER:  *Objection. If you do that again, then we are going to stop and we'll call your friend Judge Fitzsimmons who thinks you are beyond reproach and tell her that you're being argumentative with the witness. I think you already learned from the Court's order that she asked us to try to get along, Chuck.*

MR. HOWARD:  I am trying to get along.

MR. BREWER:  *I know you are beyond reproach and I am not, which I resent in her ruling that I am false, that I can be sanctioned, but you can't even though you were involved in the Marquis refusal to show up at a deposition.*

*But don't tell my client in a condescending way my question was and ask him the same thing again because that is argumentative. If you don't like his answer, too bad.*

MR. HOWARD: I am going to ask --

MR. BREWER: If you are going to do that, get the judge on the phone.

MR. HOWARD: Get the judge.

MR. BREWER: If you can repeat the question he asked the first time and then the answer, please, and we'll see if he was responsive or not and get the judge on the phone. Thank God for the Second Circuit Court of Appeals

(Whereupon, the question was read back.)

MR. BREWER: That's a different question, so it's clear on the record. My point is when you talk to the judge, we'll have a record, Chuck. That's a different question so it's not my question, you know, was this and you didn't answer it; that's argumentative.

MR. HOWARD: I think it's the same question.

MR. BREWER: No, it's not the same question.

MR. HOWARD: Would you please answer the second question? Is the investigation that's -- I'll rephrase it. Is the investigation that's being referred to in paragraph 25 the investigation by Captain Pawlina?

MR. BREWER: Objection, asked and answered.

MR. HOWARD: That's a yes or no question.

MR. BREWER: I said objection, asked and answered, but go ahead and answer it again for the third time.

A.   I've answered that question. I'm sorry if it's not phrased the way you want it boxed in to be phrased, but I've answered that question far beyond the -- it's very pointedly how I answered that question.

Q.   Would you please answer it yes or no?

A.   No, I won't. You asked me to answer that question. I answered it for you, sir.

Q.   I'm asking you to give me a yes or no answer.

MR. BREWER: Yes or no answer to what question now, because you rephrased it. Just ask it again or --

MR. HOWARD: I'll rephrase again. I'm asking for a yes or no question.

MR. BREWER: It's yes or no answer.

8

Q.    Sorry. Is the investigation that is being referred to in paragraph 25, the first count of the complaint, the investigation done by Captain Pawlina?

A.    Yes.

Q.    Is there any investigation that you are referring to there that was done by any of the other defendants that I represent --

MR. BREWER: Objection.

MR. HOWARD: -- namely --

MR. BREWER: No.

MR. HOWARD: I'm asking my question.

MR. BREWER: Finish your question.

MR. HOWARD: -- namely Chief Marquis, Captain Buyak, Sergeant Miele, now Lieutenant Ludewicz or Assistant Chief Jones?

MR. BREWER: *I object and he's not going to answer these questions, because what you're doing is playing a game like Mike pointed out, an underhanded game. This is a pleading against all the defendants and so for you to say your allegation here, is unfair to this witness. He is not an attorney. The allegations are against all the defendants that are listed in that same count, Chuck, and you know darn well that that's what it is. So get the judge on the phone, because you're not going to try to pigeonhole --*

MR. HOWARD: Are you instructing him not to answer?

MR. BREWER: *I will tell you what my objection is and you can decide whether you want to rephrase the question. You to say Mike Fago give me a legal conclusion. You know as to whether or not that allegation only applies to Pawlina so you can divide and conquer, which is your MO here. That's patently unfair to do that to a witness and you do that garbage all the time, you know. You take the complaint out and you say, well, you have never read this before, let me go over it with you anyway and you try to incorporate it as a statement from this individual. It's not his allegations. This is a pleading that I drafted and it's suing all these people and I think that's just improper.*

MR. HOWARD: Are you finished?

MR. BREWER: No, no. Don't be condescending to me.

MR. HOWARD: I am going to claim my question and your comments --

MR. BREWER: It is not a comment. It is an objection. If you don't want to hear my objection, say so.

MR. HOWARD:  I heard you out and --

MR. BREWER: *You are not the judge here, Chuck, even though you think that you have all the judges in your pocket or whatever it is that happens in Corrupticut here.*

MR. HOWARD:  Call the judge.

MR. BREWER:  Get the judge on the phone and tell her that, you know, it's your friend Chuck calling. Let's take a break.

MR. HOWARD:  I am going to call the judge.

MR. BREWER:  Call the judge.  You  think she is waiting at the phone for you, Chuck?  Is that how it works?  Did you have this like setup or something? Just for the record Chuck didn't even look up the number.  I want that on the record.  Chuck must have it speed dialed in his brain and that's pretty frightening, because I don't know Judge Fitzsimmons's number by heart.

(Whereupon, Attorney Brewer and Mr. Fago left the room.)

MR. HOWARD:  Let the record reflect that I am looking at a tab given to me with the number on it.

(Whereupon, Mr. Howard spoke to Diane from Judge Fitzsimmons's chambers.)

MR. HOWARD:  Present here now are the court reporter, Joe McQuade, Derrick Mogck and me.  We have had some disputes over the resumption of Mr. Fago's deposition.  We were planning also to call the judge in connection with the dispute we had over the completion of discovery so if you're expecting the judge in at some point --

DIANE:  I expect her probably within he next half hour or so.

MR. HOWARD:  Okay.  Could I ask you  to --

(Whereupon, Mr. Brewer and Mr. Fago entered the room.)

MR. HOWARD:  And Mr. Brewer and his client, Sergeant Fago, just came in.  I have the judge's secretary.  The judge's secretary indicated that she is not yet in.  If you could have her call Shipman & Goodwin, I will have the receptionist direct her call into the conference room.  The number is area code (860) 251-5000.

DIANE:  I'll have her call you.

MR. HOWARD:  Could we have your name?

DIANE:  Diane.

MR. HOWARD:  Thank you very much.  Bye.

DIANE:  You're welcome.  Bye-bye.

(Whereupon, the phone conversation was concluded.)

MR. BREWER:  *Do you think the judge will be in trouble if she doesn't call back in time? Chuck, you can still ask him questions; just don't harass the witness.*

MR. HOWARD:  I am going to claim that question.

MR. BREWER:  What's the question?

MR. HOWARD:  No, no --

MR. BREWER:  I am going to do it.

MR. HOWARD:  You did tell him not to answer.

MR. BREWER:  *I told him not to answer it, because you are harassing --*

MR. HOWARD:  I am going to speak it.

MR. BREWER:  *Put your hands down, put your hands down.  Calm down, Chuck.  Put your hands down.*

MR. HOWARD:  I am not going to --

MR. BREWER:  *I find it offensive.  If you please don't stop it, I am going to make a motion --*

MR. HOWARD:  Are you going to walk out again?

MR. BREWER:  *Walk out again?  I'll walk out.  I can go anywhere I want, see.*

MR. HOWARD:  You can walk out again.

MR. BREWER:  *Unfortunately for you this is still a free country, Chuck.  You are not the judge.*

MR. HOWARD:  I am not the judge.

MR. BREWER:  *You are not the judge.  I will say it many times, you are not the judge.*

MR. HOWARD:  I am going to ask the questions.

MR. BREWER:  *You may have it in with John Rowland.  You may be a judge someday, Chuck.  I hope you are, because you're a great guy, but you're not the judge today, okay, and you have to understand that.  You don't say, you know, I find this, I find that.*

MR. HOWARD:  I am not saying that.

MR. BREWER:  *You do that all the time and then --*

11

MR. HOWARD:  I have a right to --

MR. BREWER:   -- you are belligerent to Mike Fago.  I don't understand why you're being belligerent to him.  Nick Russo I can understand it, but I don't understand it in this case.

MR. HOWARD:  I have a right to ask the questions to find out whether the claim --

MR. BREWER:  You just --

MR. HOWARD:  Listen to me please.  I heard you out.

MR. BREWER:  All right, fine.

MR. HOWARD:  I have a right to find out what claims are being made against each of my defendants when I have multiple defendants.

MR. BREWER:  Right; that's fair.

MR. HOWARD:  And I will ask those questions.

MR. BREWER:  All right.

MR. HOWARD:  You can put an objection.

MR. BREWER:  You can't ask misleading questions.

MR. HOWARD:  I take great exception to your speaking --

MR. BREWER:  *You are not the judge.*

MR. HOWARD:   -- speaking objections.

MR. BREWER:  They are not speaking objections.

MR. HOWARD:  If you have an objection, you can put it on the record.

MR. BREWER:  You are asking this witness for legal conclusions, which you know is an improper question.

MR. HOWARD:  I am asking him factual questions.

MR. BREWER:  If you don't want me to state the, what the basis is, we don't have this Judge Hall rule here.  If you want to do it that, we'll do it.  I'll say objection and I'll give you the rule or something.  If you want to do it that way, we will, but you're going to have to do the same thing and you have to make your chief show up on Wednesday or Tuesday or whatever it is, you know, but go ahead, ask him questions.

Q.     May I ask you my second question?  Are you claiming that any investigation was done by any of the other clients that I represent and for your memory that it's Assistant Chief Jones, Captain Buyak, Sergeant Miele, then Sergeant Rudewicz or Chief  Marquis?

A.  Well, I'll answer that as best I can.  I believe those parties that you named are participants in my claim of being wrongfully demoted.  What they've done individually is they certainly have worked together on this.  I don't know how else to answer that question, sir.

Q.  And when you say they've worked together, what do you mean by that?

A.   Well, their stories all are similar.  I find that hard to believe.  I find it hard to believe that Chief Marquis could not sift through this and see it for what it was.  I find it hard to believe that Kevin Jones could not sift through it.  Certainly he would have a more difficult time because of his relationship with Lieutenant McClure.  I find it difficult to believe that Joe Buyak can make such an outrageous, damaging statement to one's career, which makes absolutely no sense.  It is so malicious to make that statement.  He is not saying I'm going to punch someone.  He is saying I'm going to kill someone.  He is a captain and that carries a lot of weight and that's going to go to Chief Marquis who is going to rely on his command staff.  I find it hard to believe that Patrick Jobes could make such an outrageous statement of being pushed in Federal Court.

Q.  I was not asking about Jobes.

A.  Let me just -- you know the question you're asking is hard to just narrowly put in the context that you just want it.  I'm trying to take the whole thing.  I thought we were here to get to the truth.

Q.  You're here to answer the questions that I ask.

MR. BREWER:  Once again, it's argumentative.

MR. HOWARD:  Your lawyer can ask --

MR. BREWER:  *Chuck, you can -- you can argue with me all you want, Chuck, but don't argue with Mike, all right?  If you have an argument, take it outside, but you're not going to argue with him.*

MR. HOWARD:  Are you claiming that any of those people  --

MR. BREWER:  *And don't interrupt. Excuse me.  You cut him off.  He was in the middle of answering, Chuck.  You can't do that.*

MR. HOWARD:  I will rephrase the question.

MR. BREWER:  No, you can't rephrase.

MR. HOWARD:  I will be patient today.

MR. BREWER:  *I know.  You're Jobe [sic], the book of Jobe [sic] here.*

13

MR. HOWARD:  Listen --

MR. BREWER:  No, no, no, I want him

MR. HOWARD:  No.

MR. BREWER:  He is allowed to finish answering.

MR. HOWARD:  I am going to finish my question.  We've gone --

MR. BREWER:  *No, no.  You can't do that.  This is like a filibuster, for crying out loud, whoever can interrupt whoever else and if you want to do it that way, I will, but he was in the middle of answering.  You told him I didn't ask about Jobes.  You cut him off.*

MR. HOWARD:  I didn't ask about Jobes.

MR. BREWER:  Jobes is a defendant.

MR. HOWARD:  I asked about my defendants.

MR. BREWER:  Whatever.

MR. HOWARD:  I've given up lots of leeway, Sergeant Fago.

MR. BREWER:  *I don't want you to talk to my client.  It's unethical, Chuck, for you to you can be here a long time.  That's unethical to say that, too, it really is.  It's improper.  Don't threaten the witness.*

Q.    Are you claiming there was any other investigation that was done by those people as the investigating authority that I've listed --

A.    I'm not --

Q.    -- Marquis, Jones, Buyak, Miele, Rudewicz or Marquis?

MR. BREWER:  I object.  It's asked and answered partially.

A.    I believe that they were doing something to come to this conclusion or this happening of what occurred to me.  Again, I'm not in their minds.  I'm not in their shoes.  I'm not following their movements and this all took me by surprise the day I was demoted, because nothing was up front with me. Everything was underhanded and all of your defendants, all of your people that you defend part and parcel had a hand in it.  That's the best I can answer it and I take offense to it saying you've been patient with me, this and that.  I've been very patient with you.  I would hope you are going to ask me the questions, I will give you the answers and let's get to the truth and let's not use trickery or underhandedness or deceit.  I will answer the questions as long as it gets to the truth.

Q.    Please answer my questions.

A.    I just did.

MR. BREWER: *That was unfair. That's exactly what I am talking about. Why do you have to -- is it something Freudian or whatever? Why did you have to make that statement to him after the witness said that? Why couldn't you just let it go and then ask him the next question?*

MR. HOWARD: Is that an objection?

MR. BREWER: *Yes, it is. It's more than an objection, because when we get the judge on the phone, I am going to tell her you are making these little side little shots at Mike Fago to try to get him mad. Is that your goal here, because that's the MO for this case, see if I can make Mike Fago angry, because that's what the claim was? That's really underhanded.*

MR. HOWARD: Well --

MR. BREWER: Stop doing it. If you have a question, ask it.

MR. HOWARD: If you continue, Mr. Brewer, I am going to file --

MR. BREWER: Okay, Mr. Howard.

MR. HOWARD:  -- sanctions because of this conduct --

MR. BREWER: You think I care about that?

MR. HOWARD:  -- which is outrageous in my view.

MR. BREWER: *Once again, Chuck, I have to reiterate you are not the judge, okay? I know you probably got lined up with your buddy Rowland to be a judge, whatever. I don't care. I'm political as far as that goes. I hope you become a judge, but you don't get to decide sanctions; the judge does.*

Q.    Directing your attention to paragraph 36 of count one in Exhibit 27. Paragraph 36 says, "The two white male demotions, including the plaintiff's demotion from lieutenant, created vacancies that were filled by the defendants with black males." See where it says that?

A.    Yes.

Q.    Who is the other white male that is being referred to there?

MR. BREWER: Object to the form.

A.     Dan Albert.

Q.    Are you claiming that his demotion was malicious as well?

MR. BREWER: Object to the form.

A.    Again, I didn't write this. I don't know the whole fact pattern of Dan Albert, but I know that he certainly didn't do some of the other things that others have done and I do believe that his demotion was, again, malicious.

Deposition Transcript of Michael Fago ("Fago Tr.") Vol. III, attached at Tab 1, at 283-302 (emphasis added).

In the foregoing excerpt, Mr. Howard was attempting to question plaintiff about the allegations in his Complaint. In an effort to disrupt Mr. Howard's questioning, Mr. Brewer engaged in inappropriate, prolonged speaking objections and witness coaching.[1] Further, his repeated comments about Mr. Howard believing that he is the judge, and having "the judges in [his] pocket," were unprofessional and inappropriate. His comments also show disrespect toward the Court. The Advisory Notes to Federal Rule 30(d) provide that "[i]n general, counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer." Fed. R. Civ. P. 30(d), Advisory Committee's Note to the

---

[1] Aside from the passage quoted above, Mr. Brewer repeatedly made speaking and/or coaching objections during the remainder of the deposition. See Fago Tr. Vol. III. at (page/line). Questioning by Attorney Howard: 304/22, 305/19, 312/15 & 21, 313/13 & 24, 332/19, 339/8, 347/ 1, 14 & 25, 348/4 & 9, 349/16, 352/13, 353/7 & 15, 355/2, 356/9, 357/13 & 22, 369/6, 379/9. Questioning by Attorney McQuade: 380/11 & 19, 383/6, 384/6, 388/15, 390/1 & 5, 391/11, 393/1, 13, 18 & 25, 394/16, 397/6, 398/2, 400/15 & 20, 401/12, 403/2, 405/1 & 7, 407/19, 427/9, 432/18 & 22, 433/2, 445/9 and 451/20. See Fago Tr. Vol. IV, attached at Tab 2. Continued questioning by Attorney McQuade: 489/4, 12, 16 & 20, 490/20, 492/3 & 18, 493/6, 497/11 & 24, 498/6, 499/5 & 19, 501/12 & 16, 502/5 & 22, 503/10 & 16, 504/8 & 13, 505/ 5, 10 & 14, 506/19, 507/10, 509/2, 6, 14, 25,

1993 Amendments. Such comments, which also would have inappropriate if made before this Court, were clearly made in bad faith and for some improper purpose. Under no circumstances can Mr. Brewer be deemed to have engaged in such inappropriate, disruptive behavior for the benefit of his client.

During the continuation of plaintiff's deposition on February 4, 2004, Mr. Brewer engaged again in the same inappropriate, obstructionist behavior. As Attorney Joseph McQuade cross-examined plaintiff about the allegations in his Complaint, the following exchange took place:

> Q.   Okay. That's what I'm asking. If we turn again to paragraph 34 of the first count, there is an allegation there. It says, "Plaintiff was not treated the same as similarly situated officers due to race." Do you see that?
> MR. BREWER: I object. It's not an allegation.
> Q.   Do you see that?
> A.   Yes.
> Q.   And do you stand by that statement?
> MR. BREWER: *Objection, and we're not answering anymore of these questions so figure out another way to ask him fact questions or we'll ask the judge to intervene. You know, you're calling these allegations. You know rule 8 says what these are. The deponent doesn't know the rules of pleading. These are facts. Some are facts and some are allegations so you're misconstruing the document that he didn't author.*
> Q.   Do you see the statement, the words that are written after number 34?
> A.   Yes.

---

510/9, 18 & 24, 511/12 & 21, 512/18, 513/20, 514/4, 516/23, 518/5, 523/10, 524/8, 531/19, 595/15, 19 & 23, 596/2 & 11, 597/17 and 603/19 & 22.

Q.    And you see the words, "Plaintiff was not treated the same as similarly situated officers due to race." Do you see those words?

A.    Yes.

Q.    Do you stand by those words?

MR. BREWER: *I object. He didn't write those words so how can he standby them, whatever standby them means. I object and I instruct him not to answer. He is not going to give you -- you can ask him do you have any facts to support that, you know. This is a deposition. It's not a legal seminar to see what his knowledge of the law is.*

MR. McQUADE: This is your lawsuit, correct?

MR. BREWER: *No, it's not his pleading. It's a lawyer's pleading.*

MR. McQUADE: Is this your lawsuit, sir?

MR. BREWER: I object and we're going to stop, because it's becoming argumentative. If you want to move on, ask him some real questions and stuff.

MR. McQUADE: I need to ask him what --

MR. BREWER: *You know this is his lawsuit. You know it's his lawsuit. You know he is the plaintiff. You went through that whole thing. I resisted the urge to tell you to knock it off, but the whole point here is that you want to take the complaint -- if you want to say, which everybody else is entitled to do which I don't have a problem with, on paragraph 29 it says, you know, x, y, z happened, do you have any facts to support that, yeah, I remember that happened or, no, I don't, that's what you get to do. You don't get to sit there and parse with him plaintiff was not treated the same as similarly situated officers due to race. You can say, well, what facts do you have to support that, you know, but that's not what you're asking.*

MR. McQUADE: That's what I've been asking.

MR. BREWER: *Do you contend this is your allegation? You're asking about something he didn't draft and it's nonsense and, you know, it's not appropriate to ask it that way.*

MR. McQUADE: It's his lawsuit.

MR. BREWER: *It is not his lawsuit. What do you mean his lawsuit? You're saying it's his lawsuit at the same time that you're reading from a document that he didn't draft that he hired a lawyer to draft.*

Q.     Right.  We've already established that Attorney Brewer acts on your behalf.
       Now what I am asking  -- I'm going to ask you this question.  Do you have
       any facts or evidence  -- I'm going to withdraw that.  You are a police officer,
       correct?

A.     Yes.

Q.     And you understand what evidence is, correct?

A.     Yes.

Q.     Do you have any facts or evidence to support the contention that Nancy
       McClure discriminated against you because you are white?

       MR. BREWER: *Okay, I object.  It's been asked and answered and now it's
       becoming abusive.  You already went through that.*

       MR. McQUADE:  Your contention is he didn't understand any of the
       allegations?

       MR. BREWER:  You went through it again and again and now, you know --

       MR. McQUADE:  I want to make sure you understand --

       MR. BREWER: *I think what we will do is let the judge address the issue,
       because it's an important issue, because now we are getting back again to the
       whole attorney/client privilege issue, you know, and I am not trying to be an
       obstructionist, but I heard it a million times every time I ask a question, you
       know, about you guys.  I get some Mickey mouse answer about how everybody
       in the City of Hartford has got a privilege with every attorney that ever looked
       at the City of Hartford, which I think is bogus.  But when you are talking about
       what he has, you really mean what do we have.  Now, if you want to break it
       down, you already did.  He said to Mike a minute ago what do you have and
       he said I personally don't know.  I can't recall.  You already have that so it's
       argumentative to ask him the same thing again.*

       MR. McQUADE:  Attorney Brewer, you have been making speaking
       objections throughout this --

       MR. BREWER:  Yeah.

       MR. McQUADE:   -- rather than --

       MR. BREWER:  I'll either do that --

       MR. McQUADE:  Call the judge, because I don't really think that the judge is
       interested in refereeing our little dispute here.  I have taken --

       MR. BREWER:  I don't care what you think.

MR. McQUADE: I have taken your objections to heart. Your objections have included --

MR. BREWER: *Because you were wrong, Joe. Look a minute. Don't complain about me, okay, when you were wrong and don't say they are speaking objections. If you don't want me to make those, I won't, but when you are talking about a privilege, I have to put on the record why I think it's privileged. When you say other than your conversations, well, you've left about a million other ways to communicate between attorney and client. Now you're saying I'm not allowed to make a "speaking objection" now? How are we going to work it out unless you want to hear from me? If you don't want to hear from me, I'll say objection and if I think it's privileged, I will tell him not to answer and you can take it up later, but we want to get done.*

MR. McQUADE: Right.

MR. BREWER: *What you're doing I think is improper and I've seen it done too many times and I'm sick of it. You are not supposed to take the complaint and say to him, you know, even though he had nothing to do with it you already ratified that other than giving facts, some facts to the complaint and say, well, you allege this, you allege that. This is not a statement. This is not an affidavit, you know. If you want to take his affidavit from somewhere, do that; that's fair.*

MR. McQUADE: It's not his affidavit and that's why I'm asking the questions.

MR. BREWER: Well, ask him what facts he knows. That's what you're supposed to be, a fact finder.

Q.  Now, Sergeant Fago, you see the words that are written after paragraph 34 there, "Plaintiff was not treated the same as similarly situated officers due to race." You see that, correct?

A.  Yes.

Q.  Okay. Now, excluding any communications you've had with Mr. Brewer, are you aware of any facts or evidence to support the contention that Nancy McClure treated you differently based on your race which you've identified as white?

MR. BREWER: It's the same objection.

A.  Yes.

Q.   You have evidence of that?

A.   Yes.

Q.   And what is that evidence?

A.   Well, it's been practice there at the Hartford Police Department that you make a complaint against a member of a protected class, it may not go anywhere. For example, a black male probationary police officer spit on a lieutenant's car from Windsor and he was treated much differently than me. A black male probationary police officer choked his girlfriend off duty and he has been treated much differently than me and perhaps there are others, but I was treated much differently than those persons.

Q.   And how does that relate to Nancy McClure?

MR. BREWER:  *I object. It's argumentative. Don't answer the question.*

MR. McQUADE:  You're instructing him not to answer the question?

MR. BREWER:  Yes. It's becoming abusive and I'll move for a protective order, but ask questions how it relates to Nancy McClure.

MR. McQUADE:  Yes. Your answer?

MR. BREWER:  I object.

MR. McQUADE:  Did Nancy McClure do anything to you to discriminate against you on the basis of your race?

MR. BREWER:  Objection, asked and answered.

A.   Yes.

Q.   Now, you've spoken about various other officers who have been treated differently, correct?

A.   Yes.

Q.   And it's true that the chief ultimately hands out discipline; is that correct?

A.   Yes.

Q.   Now, did Nancy McClure ever discipline you?

MR. BREWER:  *Objection, asked and answered. He is not answering the questions that you asked last time. We are not doing that and if you give me your copy of your transcript, I'll give you the question you asked and his answer. So do not answer that question. If you have new questions, you can ask him. You already asked that. I remember that one.*

A.   Asked and answered.

MR. BREWER: *No, no. I'm instructing him not to answer. That is totally illegitimate. I raised the issue at the beginning, because I suspected that would be done and if you want, I'll show you where you asked that question. You don't get to ask the same question, you know, four or five times. Any judge will tell you that.*

MR. McQUADE: Well, putting aside that --

MR. BREWER: Well, you don't put it aside. What do you mean putting it aside? I'm telling him not to answer a question. You can either withdraw it or you can make an issue out of it.

MR. McQUADE: Well, I'm not going to withdraw the question.

MR. BREWER: *Well, he is not going to answer it, because he's already answered it and you are abusing him because of the way you conducted the last deposition. It is abundantly clear that you filibustered for the last half hour, Joe, so that you could go and get a transcript and go and show it to your clients or whatever you and Chuck discussed. I saw it. We all noticed it and then I hear that the transcript, like I said at the beginning, you're giving it to all your clients. That's not how it works and now you're going to ask the same questions.*

MR. McQUADE: What are you talking about?

MR. BREWER: You are not allowed to read the transcript and go back on the fourth day of this guy's deposition and ask him the same question that he already asked and answered to see if you get a different answer. That's what I am talking about.

MR. McQUADE: I'm trying to understand his answer.

MR. BREWER: No, you are not trying to understand. You're asking --

MR. McQUADE: His answer is that others were treated differently. Now that doesn't have anything to do with Nancy McClure. I'm trying to figure out how your answer relates to Nancy McClure.

MR. BREWER: That's not what you were asking him.

MR. McQUADE: Are you instructing him not to answer that question as well?

MR. BREWER: I don't even know -- you can ask him the question do you know what Nancy McClure did, but when you say relate to it, I don't -- well, whatever. It makes no sense to me.

22

Q.    How does your testimony that various other members of the Department were
      disciplined or were not disciplined and you were disciplined relate to Nancy
      McClure?  What does that have to do with Nancy McClure?

A.    If she didn't make a false complaint, I wouldn't have been disciplined.

Q.    And how did she then -- how did she -- how does that fact support the
      contention that Nancy McClure treated you differently because you're white?
      MR. BREWER:  Objection.  It's argumentative.  He is not here to prove his
      case to you.

Fago Tr. Vol. IV (attached at Tab 2) at 501-512 (emphasis added).

Making sanctions even more appropriate is the fact that Mr. Brewer's disruptive

conduct in this deposition is not an isolated incident.  Rather, as demonstrated by the Court's

December 31 findings and Order sanctioning Mr. Brewer, and as reflected by the transcripts

from the January 22 and February 4 continuation of plaintiff's deposition, such inappropriate

deposition tactics are part of a larger pattern of unprofessional conduct.[2]  Accordingly, the

imposition of sanctions is just and warranted.  See Unique Concepts, Inc. v. Brown, 115

F.R.D. 292, 293-94 (S.D.N.Y. 1987) (sanctioning attorney $693.25 in costs and $250 fine

pursuant to §1927 and the Court's inherent power for "harassing, wasteful, vexatious"

conduct during a deposition, including "ad hominem attacks and long-winded interruptions").

---

[2] Mr. Brewer's inappropriate conduct is not limited to this case.  In Russo v. City of Hartford, Case
No. 3:97-cv-2380(JCH), one of three related matters which have been consolidated for purposes of
discovery, Judge Hall recently issued an Order to Show Cause why Attorney Brewer should not be

III.    CONCLUSION

For all the foregoing reasons, defendants respectfully request that their motion be granted.

DEFENDANTS,
CITY OF HARTFORD,
BRUCE MARQUIS, KEVIN JONES,
MARK PAWLINA, JOSEPH BUYAK, MARK
RUDEWICZ, AND STEPHEN MIELE

By: _____
Charles L. Howard
Federal Bar No. CT 05366
Gregg P. Goumas
Federal Bar No. CT 19095
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103-2819
Tel: (860) 251-5000
Fax: (860) 251-5599

---

sanctioned personally as a result of his conduct during discovery. See Order dated March 11, 2004, attached hereto at Tab 3.

DFENDANTS,
PATRICK JOBES, ROBERT RUSSELL and
NANCY MCCLURE

By _Joseph W. McQuade_____

Joseph W. McQuade
Federal Bar No. CT 12121
Kainen, Escalera & McHale, PC
21 Oak Street, Suite 601
Hartford, CT 06106
Tel: (860) 493-0870
Fax: (860) 493-0871

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Support of Motion for Sanctions was mailed via first class mail, postage prepaid, on this 2nd day of April, 2004, as follows:

James S. Brewer, Esquire
Erin O'Neil, Esquire
818 Farmington Avenue
West Hartford, CT 06120

Joseph W. McQuade, Esquire
Jennifer L. Dixon, Esquire
Kainen, Escalera & McHale, P.C.
21 Oak Street, Suite 601
Hartford, CT 06106

With Chambers Copy to:

The Honorable Alan H. Nevas
United States District Court
915 Lafayette Blvd.
Bridgeport, CT 06604

Gregg P. Goumas

366848 v.01 S1

26