**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MICHAEL J. FAGO | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:02CV1189 (AHN) |
| v. | : | |
| | : | |
| CITY OF HARTFORD, ET AL. | : | |
| Defendants. | : | APRIL 30, 2004 |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**SUMMARY JUDGMENT BY DEFENDANTS MCCLURE, JOBES AND RUSSELL**

Defendants Nancy McClure, Patrick Jobes and Robert Russell (collectively, the "Three Defendants"; and together with all defendants, the "Defendants") respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment. Summary Judgment should enter in favor of the Defendants on all counts of plaintiff's complaint in which they are named.

I.      BACKGROUND

Plaintiff, a Hartford police officer, brought this action against the Defendants after the City of Hartford's Chief of Police determined that Plaintiff had not successfully completed his probationary period as a lieutenant and returned Plaintiff to the rank of sergeant.

Plaintiff has asserted the following causes of action against the Three Defendants: (a) a Fourteenth Amendment equal protection claim, based on race, brought pursuant to 42 U.S.C. §1983 (Count One); (b) a First Amendment retaliation claim brought pursuant to 42 U.S.C.

§1983 (Count Three); (c) intentional infliction of emotional distress (Count Five); and (d)

defamation (Count Six).  The facts are set forth in the accompanying Rule 56(a)1 Statement of

Facts Not in Dispute.

II.    DISCUSSION

    A.    Summary Judgment Standard.

    Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue of material fact and that the moving party is entitled to a judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  A party opposing a motion for summary judgment "may not

rest upon the mere allegations or denials of [his] pleading, but [his] response, by affidavits or

otherwise provided in this rule, must set forth specific facts showing that there is a genuine

issue for trial."  Fed. R. Civ. P. 56(e).  In determining when a party has raised a genuine issue

of material fact, the Supreme Court has stated, "there is no issue for trial unless there is

sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If

the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250, 106 S. Ct. 2505 (1986)

(citations omitted).  Indeed, a plaintiff may not get to a jury without "any significant probative

evidence tending to support the complaint."  Anderson, 477 U.S. at 249 (quoting, First Nat'l

Bank of Arizona v. Cities Servs. Co., 391 U.S. 253, 290 (1968)).  The moving party's burden

may be fulfilled by "pointing out to the District Court--that there is an absence of evidence to

support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986).

The Second Circuit has stated that the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Yerdon v. Henry, 91 F.3d 370, 374 (2d Cir. 1996), quoting, Anderson, 477 U.S. at 252; see also, Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999), cert. denied, 530 U.S. 1242 (2000) ("An inference is not a suspicion or guess.  It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist.").  Further, the Second Circuit has stated that the non-movant "cannot rely on inadmissible hearsay in opposing a motion for summary judgment."  Burlington Coat Factory Warehouse Corp. v. Espirit de Corp., 769 F.2d 919, 924 (2d Cir. 1985).  Thus, "even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829 (1985).  In fact, the plaintiff's evidence must be precise and specific, and may not be based on conjecture and surmise. Bickerstaff, 196 F.3d at 451 ("affidavits must be based upon 'concrete particulars,' not conclusory allegations."); Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 17 (2d Cir. 1999); see also, McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997) (plaintiff's rationalizations are insufficient to create genuine issues of material fact).  In this case, plaintiff has failed to raise a genuine issue of material fact necessitating a trial.

B.    <u>Plaintiff's Section 1983 Claims Must Fail Against the Three Defendants</u>.

The Three Defendants are not appropriate defendants in this lawsuit.  Clearly, Plaintiff

named the Three Defendants as defendants in this lawsuit to retaliate against them for either:

(a) (in the case of McClure) writing a memorandum to Pawlina regarding Plaintiff's admitted

physical contact with her; or (b) expressing their opinions when compelled to do so as part of

Pawlina's investigation.  The Three Defendants were not personally involved in then-Chief

Marquis' decision that Plaintiff had not successfully completed his probationary period.

Moreover, the actions of the Three Defendants did not proximately cause Plaintiff to be

returned to the rank of sergeant.  Further, Plaintiff has no evidence suggesting that any of the

Three Defendants denied him equal protection of the laws based on his race.  Also, Plaintiff

cannot establish that he spoke out on a matter of public concern and there is no evidence that

any of the Three Defendants retaliated against him for the exercise of any First Amendment

rights.  Finally, the Three Defendants are protected from liability by the doctrine of qualified

immunity.

1.    <u>The Three Defendants Did Not Cause Plaintiff's Demotion</u>.

The Three Defendants are not liable to Plaintiff for any of the alleged Constitutional

violations because their involvement, if any, in Plaintiff's failure to successfully complete the

probationary period is simply too remote.  In particular, the Three Defendants are entitled to the

entry of summary judgment by operation of two related, if not overlapping, requirements of a

§1983 claim:  personal involvement and proximate causation.  Because the Three Defendants

4

were not in a position to either deny Plaintiff the equal protection of the law based on his race or to retaliate against him based on his exercise of First Amendment rights, they could not have caused the deprivation of his rights.

a.     <u>Insufficient Personal Involvement.</u>

The only injury suffered by Plaintiff in this employment discrimination action was then-Chief Marquis' determination that Plaintiff had not successfully completed his probationary period and his recommendation to the Personnel Director that Plaintiff be returned to the rank of sergeant. This determination is necessarily subjective in nature and is entrusted to the Chief of Police.[1] Thus, the very nature of the decision to dismiss a probationary employee from a probationary position precludes personal involvement by such lower ranking police officials such as a lieutenant, sergeant and officer.

The Second Circuit has long held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994). "Section 1983 imposes liability only on the official causing the violation." <u>Camacho v. Fairfield County</u>, 2004 U.S. Dist. LEXIS 4296 at *18 (D. Conn. March 12, 2004), attached as Exhibit O. Generally, a defendant may be held liable if he directly participated in the constitutional deprivation or if he was in a supervisory position and

---

[1] The City's Personnel Rules and Regulations allow a probationary employee to be dismissed from his probationary position based on the Chief's "opinion" that the probationary employee's "habits and dependability do not merit his continuance in the service." Personnel Rules & Regulations, Rule IX, §4 (Exhibit 10 to the Fago Tr.). In addition, this determination is not subject to the grievance procedure established in the relevant collective bargaining agreement. Arbitration Award in the matter of <u>City of Hartford and Hartford Police Union</u>, Case No. 2003-A-0554 (July 29, 2003) (attached as Exhibit 26 to the Fago Tr.).

failed to remedy a wrong, created an unconstitutional policy or custom or was grossly negligent in managing subordinates.  Williams v. Smith, 781 F.2d 319, 323-324 (2d Cir. 1986).  In this case, none of the Three Defendants outranked Plaintiff or supervised Plaintiff during the relevant time period.  Therefore, in order to recover under §1983, Plaintiff must establish that the Three Defendants directly participated in the constitutional deprivation.  "Direct participation" requires "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal."  Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001).

In this case, it is clear that the Three Defendants were not personally involved in any decision on Plaintiff's probationary period.  The record reveals that Plaintiff was subject to a one-year probationary period as a lieutenant.  According to the City's Personnel Rules and Regulations (Rule IX, §4), the "appointing authority may recommend in writing to the Director of Personnel the removal of an employee, if in his opinion the working test indicates that such employee is unable or unwilling to perform the duties of the position satisfactorily or that his habits and dependability do not merit his continuance in service."  Then-Chief Marquis made the decision that Plaintiff had not successfully passed his probationary period and, consequently, reported such decision to the City's Personnel Director with the recommendation that Plaintiff be returned to the rank of sergeant.  Then-Chief Marquis testified:  "As a chief of police, I have to make a decision whether a person during a probationary period remain in that rank or not based on the totality of the things that I had learned, whether through the

investigation or otherwise and based on what I'm looking for in terms of creating a staff, a team management, if you will.  It was my decision to demote Fago because of a pattern of events more or less."  Marquis Tr. at 75.  While then-Chief Marquis relied, in part, on Pawlina's investigation, he did not consult any of the Three Defendants in making his decision. Therefore, the Three Defendants did not have direct personal involvement in the decision as to whether Plaintiff had successfully completed his probationary period and had no direct involvement in any alleged Constitutional tort.  As such, summary judgment should enter in favor of McClure, Jobes and Russell on Counts One and Three of the Second Amended Complaint.

> b.     The Three Defendants Did Not Proximately Cause Plaintiff's Alleged Constitutional Injury.

Similarly, the record reveals that McClure, Jobes and Russell did not proximately cause Plaintiff's alleged injury.  The Second Circuit has explained:

> Civil actions brought under §1983 are analogous to state common law tort actions, serving primarily the tort objective of compensation.  A §1983 action, like its state tort analogs, employs the principle of proximate causation. Although proximate causation in the §1983 context is a question of federal law, in determining the meaning of the concept we look to those state court analogs, because the Supreme Court has made it crystal clear that principles of causation borrowed from tort law are relevant to civil rights actions brought under §1983.

Barnes v. Anderson, 202 F.3d 150, 158 (2d Cir. 1999) (multiple citations and quotation marks omitted).  Thus, in order to prevail on a §1983 claim against a person, the plaintiff is required to prove that the defendant caused the deprivation of his or her rights.  Taylor v. Brentwood

Union Free School Dist., 143 F.3d 679, 686 (2d Cir. 1998), cert. denied, 525 U.S. 1139 (1999).

"The Supreme Court consistently has refused to impose §1983 liability upon defendants where

the causal connection between their conduct and the constitutional injury is remote rather than

direct." Taylor, 143 F.3d at 686.  "Although a §1983 claim has been described as a species of

tort liability, . . . it is perfectly clear that not every injury in which a state official has played

some part is actionable under that statute." Id., (quoting, Martinez v. California, 444 U.S. 277,

285, 100 S. Ct. 553 (1980)).

      In this case, the Three Defendants did not cause Plaintiff to be returned to the rank of

sergeant.  Rather, McClure wrote a memo to her supervisor regarding an incident in which she

was standing in a hallway and was struck by Plaintiff as he walked past her.  Plaintiff admits

that he made physical contact with McClure.  However, Plaintiff and McClure disagree as to

Plaintiff's intent or lack thereof in making physical contact with McClure.  McClure did not

request that Plaintiff be demoted as a result of this incident.  Rather, she simply wanted such

conduct to stop.  McClure was later ordered to report to the Hartford Police Department's

Internal Affairs Division (IAD) and answer questions concerning Plaintiff.  Jobes was obligated

to answer interrogatories sent out by Pawlina and to go to the IAD and answer questions

regarding Plaintiff.  As with McClure, Jobes did not request that Plaintiff be demoted.

Likewise, Russell was ordered to go to IAD and answer questions concerning Plaintiff.  He did

not request that Plaintiff be demoted.

In 2001, Pawlina had received a memorandum from Lt. Mark Rudewicz complaining about similar intimidating behavior by Plaintiff.  Exhibit 14 to the Fago Tr. (at COH 307). Because the Rudewicz and McClure memos independently complained of similar harassing behavior by Plaintiff, Pawlina "believed it necessary, and prudent, to expand" his inquiry beyond the incident described by McClure.  Exhibit 14 (at COH 307) to the Fago Tr.  During the course of his investigation, Pawlina received accounts from then-Sergeant Steven Miele, Lt. Harold Even, Captain Joseph Buyak, Jobes and Russell evidencing the type of behavior identified in the memoranda he received from Rudewicz and McClure.  Exhibit 14 to the Fago Tr.[2]  Pawlina concluded that "there is little question that Lt. Fago has established a pattern of harassing and intimidating conduct backed up by a history of violence in the work place." Exhibit 14 (at COH 392) to the Fago Tr.  Moreover, Pawlina's recommendation was to "give an unsatisfactory performance evaluation to Lt. Fago, who is a probationary employee, and to not allow him to continue as a lieutenant in the Hartford Police Department."  Exhibit 14 (at COH 392) to the Fago Tr.  Assistant Chief Jones agreed with Pawlina's recommendations and Plaintiff's performance was rated as needing improvement.  Fago Tr. at Exhibits 16-18. Thereafter, then-Chief Marquis, after considering Pawlina's investigation and the recommendations of Pawlina and Jones, decided that Plaintiff had not successfully completed the probationary period and should be returned to the rank of sergeant.  In making his decision,

---

[2] It should be noted that the Connecticut State Board of Labor Relations had previously found that Plaintiff had harassed and retaliated against a Radio Telephone Operator working under his supervision for her concerted protected activities.  Exhibit N.

Marquis looked at the totality of what he had learned and did not base his decision on any particular incident or circumstances. Marquis Tr. at 44-48, 68-69, 75, 102-104. Marquis wrote to the Personnel Director informing her of his conclusions. Exhibits 20-21 to the Fago Tr. Subsequently, Plaintiff was returned to the rank of sergeant.

Based on this set of facts, it is impossible to conclude that McClure, Jobes or Russell proximately caused Plaintiff to be returned to the rank of sergeant. First, as noted above, that power is reserved to the "appointing authority" (in this case, the Chief of Police). Rule IX §4 of the Personnel Rules and Regulations. Second, there is no cause and effect relationship at work in this case with regards to McClure, Jobes or Russell. Even if one were to assume that the actions of McClure, Jobes and Russell were somehow unconstitutional, such actions did not cause Plaintiff to be returned to the rank of sergeant.

Several events are superseding causes of Plaintiff's return to the rank of sergeant. See, Townes v. City of New York, 176 F.3d 138, 147 (2d Cir.), cert. denied, 528 U.S. 964 (1999) ("In the common law, '[a] superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.'"). First, Pawlina's expanded investigation was a superseding cause. See, Taylor, 143 F.3d at 687 ("Specifically, we believe that the independent investigations of the incidents involving [two students] and the other events culminating in the decision of the disciplinary hearing panel to suspend Taylor constitute a superseding cause of Rooney's injury, breaking the causal link between any racial animus

Rooney may have had and the suspension."). McClure wrote a memorandum to Pawlina documenting an incident. McClure wanted Plaintiff's intimidating behavior to stop. Independent of McClure's memorandum, Pawlina had received, during the previous summer, a memorandum from Rudewicz documenting intimidating behavior by Plaintiff. In Pawlina's view, the two memoranda concerning similar behavior on Plaintiff's part justified expanding his investigation beyond the stairwell incident. Thus, any ill motives that McClure allegedly had towards Plaintiff were superseded by Pawlina's decision to expand his investigation. Second, Pawlina's recommendation that Plaintiff not continue as a lieutenant was a superseding cause. Once the investigation was undertaken, McClure, Jobes and Russell were compelled to candidly answer questions posed to them by investigators. Neither McClure, Jobes nor Russell requested that Plaintiff be returned to the rank of sergeant--that conclusion was reached by Pawlina after others corroborated the type of intimidating behavior recounted in McClure's memo. Third, the recommendations of Pawlina and Jones, relied upon by Marquis, were superseding causes. Again, neither McClure, Jobes nor Russell requested that Plaintiff be returned to the rank of sergeant. Further, they were not consulted by Marquis. Additionally, it should be remembered that Pawlina never concretely confirmed that the stairwell incident occurred in the way McClure described it. Exhibit 14 (at COH 392) to the Fago Tr. Rather, he only believed that Plaintiff's actions were intentional when viewed in conjunction with the other testimony offered in the course of the investigation. Thus, the recommendations of Pawlina and Jones supersede any testimony or complaint offered by McClure, Jones or Russell.

Fourth, and perhaps, most importantly, Marquis' exercise of independent judgment that Plaintiff did not successfully complete his probationary period is a superseding cause for Plaintiff's return to the rank of sergeant. The very nature of the decision as to whether a probationary employee has successfully passed the probationary period is almost entirely subjective. Rule IX §4 to the Personnel Rules and Regulations. Moreover, this subjective determination is entrusted, with the approval of the Director of Personnel, to the Chief of Police. Id. In fact, a probationary employee is barred from the grievance procedure in contesting the Chief's decision. Therefore, the subjective nature of the determination is a superseding cause of Plaintiff's return to the rank of sergeant. In addition, however, Marquis has testified that he relied on the recommendations of Pawlina and Jones in making his determination and looked at the entirety of what he had learned through Pawlina's investigation and elsewhere in making his determination. Reilly noted that the decision did not rely on any one event or circumstance. Rather, Marquis was concerned about a pattern of behavior that did not fit the model of what he was looking for in his command staff. Therefore, even if McClure, Jobes and Russell had acted with an evil motive, their actions cannot be said to have caused Plaintiff's return to the rank of sergeant. Finally, the actions of the Director of Personnel in acting on Marquis' recommendation is a further superseding event precluding a finding of proximate cause between the actions of McClure, Jobes and Russell and Plaintiff's return to the rank of sergeant. See, Rule IX, §4 of the Personnel Rules and Regulations ("No employee shall

be removed from a position during his probationary period without the approval of the Director of Personnel.").

From the perspective of McClure, Jobes and Russell, this case is similar to Taylor, Townes, and Jeffries v. Harleston, 52 F.3d 9 (2d Cir.), cert. denied, 516 U.S. 862 (1995). In Taylor, individual defendant Rooney, a school principal, followed school board policy in reporting allegations of physical contact between a teacher (Taylor) and students. Thereafter, the school board's Director of Employee Relations undertook an investigation of such allegations. After investigation, the school board decided to initiate disciplinary charges against the teacher and a hearing panel decided that the teacher should be suspended without pay for one year. A subsequent appeal was rejected. After a jury found against Rooney, the Second Circuit determined that the events occurring after Rooney's report of the allegations against the teacher broke any causal link between racial animus and teacher's suspension. The Second Circuit stated, "there is no basis for concluding that any ill motives Rooney may have had impacted the decision to suspend Taylor." Id. at 687. In Townes, the Second Circuit noted that: "It is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment." Townes, 176 F.3d at 147 (trial judge's erroneous decision not to suppress unlawfully seized evidence was an exercise of independent judgment that avoided liability of the police officers who seized the evidence). In Jeffries, a black history professor sued the board of Trustees as well as the university President (Harleston) and Chancellor

(Reynolds) based on the Trustees' vote to limit his term as department head to one year (instead of the customary three) because of a controversial speech made by the plaintiff.  In reversing a jury finding of liability against the defendants, the Second Circuit stated, "elementary principles of causation compel the conclusion that Jeffries' First Amendment rights were not violated. . . . While Harleston and Reynolds were instrumental in putting the one-term issue on the board's agenda, . . . and may indeed have done so to punish Jeffries, the nine votes based on legitimate grounds constitute a superseding cause breaking the causal chain between the tainted motives (of Harleston and Reynolds) and the decision to limit Jeffries' term."  52 F.3d at 14.

In this case, the actions of Pawlina, Jones, the Director of Personnel and, especially Marquis, break any causal connection between any alleged evil motives of McClure, Jobes and Russell and Plaintiff's return to the rank of sergeant.  Consequently, summary judgment must enter in favor of McClure, Jobes and Russell on Counts One and Three.[3]

## 2.    Plaintiff's Equal Protection Claims Have No Merit.

In the event that Plaintiff's Constitutional claims survive the above personal involvement/causation analysis, summary judgment should enter in favor of McClure, Jobes and Russell on Count One of the complaint because Plaintiff cannot establish an equal protection violation.

---

[3] Count Two of the Complaint is limited to Defendants Marquis, Jones and Pawlina.  See, Fago Tr. at 522.  Thus, Plaintiff has not asserted a Due Process Claim against McClure, Jobes and Russell.

Plaintiff claims that his Fourteenth Amendment equal protection rights were violated because he "was not treated the same as similarly situated officers due to race." Second Amended Complaint at ¶34.[4] Indeed, the court has recognized that Plaintiff's equal protection claim is limited to race. In ruling on various discovery motions, Magistrate Judge Fitzsimmons stated, "The court agrees with defendants that the plaintiff's equal protection claim specifically alleges only that certain (white) officers within the department were demoted on the basis of race . . . ." December 29, 2003 Ruling. Further, during the pre-filing conference held by the court in connection with this motion, Plaintiff's counsel agreed that Count One was an equal protection claim based on race.

However, Plaintiff cannot offer one iota of evidence to suggest that McClure, Jobes or Russell intentionally denied Plaintiff the equal protection of the laws on the basis of his race. According to Plaintiff, McClure, Jobes, Russell and Plaintiff are white (or Caucasian). Fago Tr. at 487, 521. Plaintiff does not recall McClure, Jobes or Russell using racial epithets to disparage white people. Fago Tr. at 545. Further, a review of the transcript of Plaintiff's deposition makes it plain that Plaintiff has no evidence that McClure, Jobes or Russell were motivated by racial animus to undertake actions against him. Fago Tr. at 487-498, 505-515,

---

[4] It should be noted that, in Count One (his Equal Protection Claim) Plaintiff alleges that "The defendants made such false statements in retaliation for the plaintiff's testimony during the 'Sergeants' case.'" Second Amended Complaint, Count One at §27. The Second Circuit has not recognized any claim for retaliation under the equal protection clause. Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1998) ("we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination. Given the availability of Title VII, which Bernheim has chosen not to invoke, we see no reason to break new constitutional ground in this case."). Presumably, such retaliation allegations are pertinent to Count Three (the First Amendment Claim).

544-546; see specifically, 494, 496-498 (Plaintiff does not recall if he has any evidence that McClure, Jobes or Russell discriminated against him because he is white). Indeed, Plaintiff does not know whether he is contending that McClure, Jobes or Russell discriminated against on the basis of his race. Fago Tr. at 487, 496-497. In short, to the extent that Plaintiff is pursuing an equal protection claim against McClure, Jobes and Russell, Plaintiff relies solely on conjecture and surmise to support any such claims of racial discrimination.[5]

The Second Circuit has long recognized that: "In analyzing whether conduct was unlawfully discriminatory for purposes of §1983, we borrow the burden-shifting framework of Title VII claims." Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998) (citing, St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 n.1, 113, S. Ct. 2742 (1993)). Because Plaintiff alleges that he was improperly demoted based upon his race and he cannot present any direct evidence of illegal discrimination, he is first required to establish a prima facie case of discrimination by showing: (1) that he is a member of a protected class; (2) that he was performing his job satisfactorily; (3) that he was subjected to an adverse employment action; and (4) the decision occurred under circumstances giving rise to an inference of discrimination. Etienne v. Wal-Mart Stores, Inc., 186 F. Supp. 2d 129, 134 (D. Conn. 2001); see also, Stern v. Trustees of Columbia University, 131 F.3d 305, 311-12 (2d Cir. 1997). The burden on the

---

[5] It is readily apparent that Plaintiff's Equal Protection claim was directed at Marquis. Plaintiff alleges that after Plaintiff and another white lieutenant were found to have not satisfactorily completed their probationary periods, black males filled such lieutenants' positions. Second Amended Complaint at ¶¶35-36. Obviously, McClure, Jobes and Russell did not select who was promoted to such positions.

plaintiff at this prima facie stage is low.  Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203-204 (2d Cir. 1995).

> a.     Plaintiff Cannot Establish a Prima Facie Case.

For purposes of this motion only, the Three Defendants will assume that Plaintiff belongs to a protected class (white) and that he experienced an adverse employment action, in that he was returned to the rank of sergeant.[6]  However, McClure, Jobes and Russell did not subject Plaintiff to an adverse employment action.  The record also reveals that plaintiff did not satisfactorily perform his job duties.  See, Exhibits 14, 16-18 to the Fago Tr.  Moreover, as discussed above, there is no evidence to suggest that the actions undertaken by McClure, Jobes and Russell were motivated by illegal race discrimination.  As such, Plaintiff cannot even make out a prima facie case of discrimination against McClure, Jobes or Russell and summary judgment should enter in their favor on Count One of the Second Amended Complaint.

> b.     The Three Defendants Have Legitimate, Nondiscriminatory Reasons for their Actions.

In the event that the court finds that Plaintiff has established a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action.  Farias v. Instructional Systems, Inc., 259 F.3d 91, 98 (2d Cir. 2001).  "The defendant is not required to prove that the articulated reason actually motivated its actions."  Farias, 259 F.3d at 98.

---

[6] McClure, Jobes and Russell reserve the right to challenge any assertion that Plaintiff belongs to a protected class or that he has suffered a cognizable adverse employment action at trial.

In this case, as discussed above, McClure directed a memorandum to Pawlina regarding an incident in which Plaintiff admits that he made physical contact with her. While meeting with Pawlina, McClure related past incidents with Plaintiff that put her in fear of Plaintiff. Thereafter, Pawlina investigated Plaintiff's conduct based on McClure's memorandum and Rudewicz's memorandum. McClure submitted the memorandum to Pawlina out of concern for her own safety. McClure, Jobes and Russell were compelled to cooperate with the investigation. Then-Chief Marquis later made a determination that Plaintiff had not successfully completed his probationary period. In short, the actions of McClure, Jobes and Russell did not result in Plaintiff's return to the rank of sergeant. Therefore, Defendants have met their burden of production.

        c.      <u>Plaintiff Cannot Produce Evidence Sufficient to Support a Finding of Discrimination</u>.

"If the defendant bears its burden of production the presumption [of discrimination] drops out of the analysis . . . and the defendant 'will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.'" <u>Farias</u>, 259 F.3d at 98 (citations omitted). "Further, [i]f the plaintiff's evidence was barely sufficient to make out a prima facie case, it may not be sufficient to establish discrimination after the defendant has proffered a neutral rationale." <u>Stern</u>, 131 F.3d at 312 (citations omitted).

18

Evidence sufficient to establish the minimal prima facie case combined with evidence of falsity of the employer's proffered reason for the employment decision may not be sufficient to satisfy the plaintiff's burden.  James v. New York Racing Ass'n., 233 F.3d 149, 155-57 (2d Cir. 2000).  In other words, if Plaintiff can offer proof that the Three Defendants' stated reasons for their actions were false, a genuine issue of material fact is <u>not</u> necessarily created.  Indeed, proof of the falsity of a defendant's stated non-discriminatory reasons does not mean that the true reason was illegal discrimination based on race.  Thus, the Second Circuit "mandates a case-by-case approach, with a Court examining the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'"  Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2001) (citations omitted).  Thus, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove--particularly discrimination." James, 233 F.3d at 157.[7]  In analyzing that evidence, "a court is not to second-guess the defendant's judgment as long as it is not for a discriminatory reason."  Cunliffe v. Sikorsky Aircraft Corp., 9 F. Supp. 2d 125, 132 (D. Conn. 1998).

---

[7] The Second Circuit has determined that the Supreme Court's opinion in <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 120 S. Ct. 2097 (2000) does not overrule and, in fact, is in harmony with, Second Circuit precedent in this area, as set forth in <u>Fisher v. Vassar College</u>, 114 F.3d 1332 (2d Cir. 1997), <u>cert. denied</u>, 522 U.S. 1075 (1998).  <u>James</u>, 233 F.3d at 155-57; <u>Schnabel</u>, 232 F.3d at 89-91.

As stated above, there is absolutely no evidence to suggest that McClure, Jobes or Russell discriminated against Plaintiff on the basis of his race. Such an allegation makes absolutely no sense. Therefore, summary judgment should enter in favor of McClure, Jobes and Russell on Count One of the Second Amended Complaint.

        d.      <u>There Is No Hostile Work Environment</u>.

In Count One of the Second Amended Complaint (¶41), Plaintiff also alleges that the Defendants' actions promoted a hostile work environment for Plaintiff. This court has recognized a sexual harassment cause of action in the context of a §1983 claim and adopted the following test: "a violation under §1983 occurs when (1) the plaintiff was subject to intentional harassment, (2) based on sex, (3) under color of state law, and (4) sufficiently extensive to render the work environment hostile to a plaintiff." <u>Roberts-Goodell v. Killeen</u>, 3:94CV25 (AHN), 1997 U.S. Dist. LEXIS 19720 at *7 (D. Conn. Nov. 4, 1997), attached as Exhibit P. Presumably, the test would be similar for a hostile work environment claim based on race.

The Supreme Court has explained that "in order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787, 118 S. Ct. 2275 (1998); <u>Williams v. County of Westchester</u>, 171 F.3d 98, 100 (2d Cir. 1999) ("In order to recover on a claim of a racially hostile work environment in violation of Title VII, the plaintiff must establish that his workplace was permeated with instances of racially discriminatory conduct

such as 'discriminatory intimidation, ridicule and insult [citation omitted] such that the 'environment would reasonably be perceived, and is perceived, as hostile or abusive.'").  A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367 (1993).  In making this determination, courts are instructed to look at all of the circumstances, including the frequency of the alleged discriminatory conduct, its severity, whether it was physically threatening or humiliating, or a mere offensive utterance and whether it reasonably interferes with the employee's work performance.  Faragher, 524 U.S. at 787-88; Harris, 510 U.S. at 23.  "Simple teasing, offhand comments and isolated incidents" do not amount to discriminatory changes in the terms and conditions of employment.  Faragher, 524 U.S. at 788.  In short, conduct must be extreme to amount to a change in the terms and conditions of employment.  Id.

Once again, there is absolutely no evidence to suggest that McClure, Jobes or Russell took any objectionable actions against Plaintiff based on his race.  Moreover, their actions consisted of either writing a memorandum to Pawlina and/or complying with questions posed to them as part of Pawlina's investigation.  Thus, there is no evidence to suggest that they created a racially hostile work environment for Plaintiff.  Indeed, there is virtually no evidence that Plaintiff was subjected to a hostile work environment by anyone.  At a minimum, Plaintiff

cannot establish that McClure, Jobes or Russell created such an environment.  As a result, summary judgment must enter in favor of the Three Defendants on Count One.[8]

        3.      Plaintiff's First Amendment Claims Must Fail.

Summary judgment should enter in favor of McClure, Jobes and Russell because Plaintiff can offer no evidence to suggest that they retaliated against him based on his exercise of a First Amendment activity.

In the Second Amended Complaint, Plaintiff alleges that the individual defendants somehow denied him the right to seek redress and to associate[9] and testify in support of persons bringing claims against the defendants and the government.  Second Amended Complaint, Count Three, at ¶2.  Plaintiff further alleges that he was exercising protected speech when he testified during the trial of the "Sergeants' case" (i.e., the Amador case).  Second Amended Complaint, Count Three, at ¶4.  He further alleges that he was retaliated against by Jobes, Russell, McClure, Buyak, Rudewicz and Miele for his testimony in the sergeants' case.  Second Amended Complaint, Count Three, at ¶5.  Thus, Plaintiff's First Amendment retaliation claim against McClure, Jobes and Russell is based on his testimony in the Amador case.

---

[8] Further, it does not appear that Plaintiff was treated differently than any similarly situated officers.  Indeed, the only other officer similarly situated to Plaintiff, former lieutenant Daniel Albert, received the same treatment as Plaintiff--Marquis determined that both gentlemen failed to successfully complete their probationary periods as lieutenants.  As such, he cannot prevail on his equal protection claim.

[9] It does not appear that Plaintiff has pursued a First Amendment associational rights claim against McClure, Jobes and Russell.  Further, he does not know who he was allegedly prevented from associating with.  Fago Tr. at 312-314.

"In order to prove her First Amendment retaliation claim, plaintiff must show that (1) her speech was constitutionally protected; (2) she suffered from an adverse employment action; and (3) her speech was a motivating factor in the adverse employment determination regarding her." Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002). A government employee's speech is protected if the speech may be "fairly characterized as constituting speech on a matter of public concern." See, Sheppard v. Beerman, 317 F.3d 351, 355 (2d Cir.), cert. denied, 124 S. Ct. 135 (2003). "A government official may nonetheless fire an employee for speaking on a matter of public concern if the employee's speech is reasonably likely to disrupt the effective functioning of the office, and the employee is fired to prevent this disruption." Id In Connick v. Myers, 461 U.S. 138, 147, 103 S. Ct. 1684 (1983) (citations omitted), the Supreme Court explained:

> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the State.
>
> Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. n.7 [n.7: The inquiry into the protected status of speech is one of law, not of fact . . . .].

a.      Plaintiff's Testimony Did Not Constitute Speech on a Matter of Public
        Concern.

Thus, the first issue to be addressed is whether Plaintiff's testimony constituted speech

on a matter of public concern.  Unlike the Fifth and Third Circuits, the Second Circuit has not

adopted a blanket rule that truthful testimony provided at trial is per se a matter of public

concern."  Catletti v. Rampe, 334 F.3d 225, 229-230 (2d Cir. 2003) ("In the instant case,

however, we need not decide whether the trial context renders testimony of public concern

regardless of its content because the content of Catletti's testimony supports a finding that the

speech is of public concern.").  The court stated that "The Seventh Circuit . . . declined to hold

that trial testimony was automatically of public concern, noting that 'airing private gripes in the

form of a complaint or testimony cannot alter their status as private gripes.'"  Id. at 230

(quoting, Wright v. Illinois Dept. of Children & Family Servs., 40 F.3d 1492, 1505 (7th Cir.

1994)).  Thus, the content of Plaintiff's testimony must be analyzed to determine whether he

was speaking out on a matter of public concern.

In Amador, the plaintiffs sued the City over a sergeant's examination process that they

contended was infected by illegal gender discrimination.  Jobes and Russell were plaintiffs in

that case.  The City called Plaintiff to testify in its case.  Jobes and Russell are under the

impression that Plaintiff did not volunteer to testify in that case but was requested to do so by

his employer.  Jobes Aff't. at ¶12; Russell Aff't. at ¶7.  A review of the transcript of Plaintiff's

testimony (Exhibit 11 to the Fago Tr.) reveals that Plaintiff testified that he studied and worked

very hard to pass the sergeant's test.  <u>See</u>, Jobes Tr. at 22-23.  During the course of his testimony, Plaintiff did not testify with regard to any actions taken by Jobes or Russell and did not mention Jobes or Russell in his testimony.  <u>See</u>, Exhibit 11 to the Fago Tr.  Because Plaintiff was in the same position as the plaintiffs in that case, Plaintiff could not testify regarding the procedures put in place to make the test fair or irregularities in such procedures.  Rather, he could only testify as to his personal experience.

Given that his testimony concerned his own personal experience, Plaintiff's testimony should not be viewed as expression of an opinion on matters of public concern.  Rather, Plaintiff's testimony in the <u>Amador</u> case is more properly characterized as an expression of his personal experience or interest.  As such, Plaintiff's testimony in the <u>Amador</u> case does not address a matter of public concern and is not entitled to First Amendment protection.  Consequently, summary judgment should enter in favor of McClure, Jobes and Russell on Count Three.

<blockquote>b.     <u>Plaintiff's Evidence of Retaliation is Insufficient to Create a Genuine Issue of Material Fact</u>.</blockquote>

In the event that the court finds that Plaintiff's testimony in the <u>Amador</u> case qualifies for First Amendment protection, the Three Defendants will assume for purposes of this motion that Plaintiff suffered an adverse employment action when then-Chief Marquis determined that he had not successfully completed his probationary period and Plaintiff was returned to the

rank of sergeant.  However, McClure, Jobes and Russell contend that they did not subject

Plaintiff to an adverse employment action.

No reasonable jury could conclude that Plaintiff's testimony in the <u>Amador</u> case was a

motivating factor in then-Chief Marquis' decision.  First, Plaintiff cannot offer any evidence to

suggest that then-Chief Marquis sided with the plaintiffs in their case against the City.  Further,

Marquis was not a party to that case as he had just started his tenure as Chief of Police.  The

only logical inference to be drawn is that Marquis either was pleased that the City prevailed in

the case or did not care one way or the other.  There is no evidence to suggest that Marquis was

displeased as a result of Plaintiff's testimony in the <u>Amador</u> case.  Thus, Plaintiff cannot

establish that his testimony in <u>Amador</u> motivated Marquis' decision that Plaintiff had not

successfully completed the probationary period.  As discussed at length above, there is simply

insufficient proximate cause between the alleged displeasure of McClure, Jobes and Russell

over Plaintiff's testimony in <u>Amador</u> and Marquis' decision on the probationary period to

establish liability.

Further, however, Plaintiff cannot offer sufficient evidence that McClure, Jobes or

Russell retaliated against him through their contributions to Pawlina's investigation based on

his testimony in <u>Amador</u>.  First, McClure had no interest in the <u>Amador</u> case--she was not a

plaintiff in that case.  Further, Plaintiff has not produced any evidence that McClure allegedly

made false statements against him in retaliation for his testimony in the <u>Amador</u> case "other

than her personal relationship with Sergeant Jobes and Assistant Chief Jones and also her

friendship with the other defendants." Fago Tr. at 518-519, 547-551.  In other words,

Plaintiff's only evidence that McClure retaliated against him based on his testimony in <u>Amador</u>

is rank speculation and conjecture.

Unlike McClure, Jobes and Russell were plaintiffs in <u>Amador</u>.  However, it is difficult

to imagine that anyone would be motivated to retaliate against Plaintiff based on his testimony

in <u>Amador</u>.  Exhibit 11 to the Fago Tr.  Plaintiff simply testified as to his personal experience

before and during the testing process.  <u>Id</u>.  Plaintiff did not have anything negative to say about

Jobes or Russell.  <u>Id</u>.  Plaintiff's "evidence" that Jobes and Russell retaliated against him

because of his testimony in the <u>Amador</u> case is his assertion that they made false complaints

against him.  Fago Tr. at 518, 546-547.  Again, the assertion is based simply on speculation and

conjecture.  Therefore, summary judgment should enter in favor of McClure, Jobes and Russell

on Count Three of the Second Amended Complaint.[10]

---

[10] Plaintiff also contends that he has been retaliated against since the filing of his complaint in this action.  Second Amended Complaint, Count Three, ¶7.  In particular, he states that he has been continuously "harassed" and "threatened" with transfers.  This claim is infirm for several reasons.  First, Plaintiff's complaint is not expression on a matter of public concern but is a classic expression of personal interest.  Thus, the contents of the complaint are not protected by the First Amendment.  Further, McClure, Jobes and Russell do not have the power to transfer Plaintiff--only the Chief has the power to assign officers.  City Charter, Chapter X, §2 ("[The Chief of Police] shall assign all members of the department to their respective posts, shifts, details and duties.").  As to the alleged "harassment" by McClure, Jobes or Russell (Fago Tr. at 524-531), such conduct is so minor that it does not rise to the level of a constitutional violation.  <u>See</u>, <u>Dawes v. Walker</u>, 239 F.3d 489, (2d Cir. 2001) ("Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. Otherwise, the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection.").

4.    The Three Defendants Are Entitled to Qualified Immunity.

Qualified immunity protects government officials in their individual capacities when they are performing discretionary functions and when their conduct does not violate clearly established federal statutory or Constitutional rights of which a reasonable person would have known at the time in question.  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982).  Indeed, qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal [immunity] question."  Behrens v. Pelletier, 516 U.S. 299, 306, 116 S. Ct. 834 (1996); Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985).  In order to protect this entitlement, district courts are obligated to exercise their discretion to protect the substance of the qualified immunity defense.  Crawford-El v. Britton, 523 U.S. 574, 598, 118 S. Ct. 1584 (1998).

"A government agent enjoys qualified immunity when he or she performs discretionary functions if either (1) the conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that the conduct did not violate clearly established rights."  McCullough v. Wyandanch Union Free School District, 187 F.3d 272, 278 (2d Cir. 1999).

The first inquiry, of course, is to "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all . . . ."  Sound Aircraft Servs., Inc. v. Shoreline Aviation, Inc., 192 F.3d 329, 334 (2d Cir. 1999).  The resolution of that question depends on the resolution of the issues discussed above.

The next question is whether the right is clearly established.  In determining whether a right is clearly established for these purposes, "[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." McCullough, 187 F.3d at 278.  Thus, the Second Circuit has stated, "[t]he unlawfulness must be apparent." Id.  Moreover, district courts have been admonished to avoid defining the constitutional right at issue too broadly. Lewis v. Cowen, 165 F.3d 154, 166-67 (2d Cir.), cert. denied, 528 U.S. 823 (1999) ("The relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract, to 'freedom of speech,' but whether the defendants should have known that the specific actions complained of violated the plaintiff's freedom of speech.").

In this case, McClure submitted a memo to her superior concerning an incident in which Plaintiff admits he made physical contact with her.  In the memo, she expressed her concern over her personal safety based on past interactions with Plaintiff.  Thereafter, she met with Pawlina who instructed her to inform him of any unusual contact she had with Plaintiff. McClure complied with that directive.  None of these actions would appear, to the reasonable person to violate any clearly established constitutional right belonging to Plaintiff.  Thereafter, McClure was ordered to report to IAD and answer questions regarding Plaintiff.  Again, no reasonable officer would believe that such actions violated Plaintiff's clearly established constitutional rights.

Likewise, Jobes was obligated to respond to interrogatories sent to him by Pawlina. In responding to such interrogatories, Jobes specifically alerted Pawlina that there might be an appearance of bias regarding his responses because he was on the lieutenant's list. Thereafter, Jobes was ordered to report to IAD and answer questions regarding Plaintiff. As to Russell, he was simply ordered to go to IAD and answer questions regarding Plaintiff. Again, no reasonable officer in Jobes' position or Russell's position would believe that, by complying with lawful orders, he was somehow violating Plaintiff's clearly established constitutional rights.

Finally, the testimony provided by McClure, Jobes and Russell largely expresses their opinions regarding Plaintiff. While it is perfectly reasonable to assume that McClure, Jobes and Russell could have foreseen that Plaintiff would not like their opinions, no reasonable officer would believe that the expression of their opinions regarding Plaintiff in this context would somehow violate Plaintiff's constitutional rights or even result in his return to the rank of sergeant.

Therefore, summary judgment should enter in favor of McClure, Jobes and Russell on Counts One and Three of the Second Amended Complaint because the Three Defendants are entitled to the protections of qualified immunity.[11]

---

[11] To the extent that McClure, Jobes and Russell are named as defendants in their official capacities, such claims should be dismissed because a suit against individual defendants in their official capacities is construed as a suit against the municipality. Frank v. Relin, 1 F.3d 1317, 1326 (2d Cir.), cert. denied, 510 U.S. 1012 (1993). Since the City is currently a defendant in this case, the official capacity claims serve no purpose.

C.      Plaintiff's State Law Claims Are Infirm.

       1.      Plaintiff Cannot Establish a Viable Claim of Intentional Infliction of Emotional Distress.

Under Connecticut law, in order to prevail under a theory of intentional infliction of emotional distress, a plaintiff is obligated to prove that:

(1)     the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct;

(2)     the conduct was extreme and outrageous;

(3)     the defendant's conduct was the cause of the plaintiff's distress; and

(4)     the emotional distress sustained by the plaintiff was severe.

Harhay v. Blanchette, 160 F. Supp. 2d 306, 315 (D. Conn. 2001), aff'd. in part, reversed in part, 323 F.3d 206 (2003) (citing, Appleton v. Bd. Of Ed. of the Town of Stonington, 254 Conn. 205, 210, 757 A.2d 1059 (2000)).  The question of whether the defendant's conduct rises to the level of extreme and outrageous is initially a question for the court to determine.  Only where reasonable minds disagree does it become a question for the jury.  Id.  "Liability for intentional infliction of emotional distress requires conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind."  Id. (citing, Anacona v. Manafort Bros., Inc., 56 Conn. App. 701, 746 A.2d 184, 192 (2000)); Downing v. West Haven Bd. Of Ed., 162 F. Supp. 2d 19, 33 (D. Conn. 2001).  "Conduct on the part of the defendant that is merely insulting or displays bad

manners or results in hurt feelings is insufficient to form the basis for an action based upon

intentional infliction of emotional distress."  Appleton, 254 Conn. at 211.  Thus, while a

defendant's conduct may be distressing to the plaintiff, the distress experienced by the plaintiff

has no bearing on the inquiry of whether the conduct is extreme and outrageous.  See, Id.

        Courts have consistently rejected claims of intentional infliction of emotional distress

relating to adverse employment actions.  Thus, "the termination of employment, even when

accompanied by other aggravating factors, does not itself give rise to a claim for intentional

infliction of emotional distress."  Harhay, 160 F. Supp. 2d at 315 (employer alleged to have

denied plaintiff opportunity to return to work, failing to notify plaintiff when a position became

available and utilizing a long-term substitute in violation of her contractual rights); see also,

Huff v. West Haven Bd. Of Ed., 10 F. Supp. 2d 117, 123 (D. Conn. 1998) ("allegations of a

wrongful refusal to hire based on racial discrimination, without more, are insufficient to

support an intentional infliction of emotional distress claim"); DeLeon v. Little, 981 F. Supp.

728, 737-38 (D. Conn. 1997) (conduct was not sufficiently outrageous to state a claim for

intentional infliction of emotional distress where City supervisor allegedly ordered employee to

purchase illegal drugs, stand guard while supervisor ingested illegal drugs, perform personal

errands for supervisor, perform tasks for a private employer and where supervisor implemented

a discriminatory sick time policy, threatened to replace employee with a person of another race

and repeated degrading and humiliating criticism of employee in front of others); Appleton,

254 Conn. at 210-12 (intentional infliction of emotional distress claim of employee who was

forced to undergo psychiatric examinations, suspensions and to resign by employer, and who was escorted from a school by police failed to state a claim for intentional infliction of emotional distress); Muniz v. Kravis, 59 Conn. App. 704, 708-11, 757 A.2d 1207 (2000) (employees who lived on employer's premises and notified of their termination by an armed security guard and given 24 hours to vacate the premises did not state a claim for intentional infliction of emotional distress); Knight v. Southeastern Council on Alcoholism & Drug Dependency, 2001 Conn. Super. LEXIS 2732 at *8-15 (Sept. 24, 2001) (allegations that plaintiff was not promoted, was terminated and otherwise discriminated against on the basis of her race were insufficient to state a claim for intentional infliction of emotional distress); Hayes v. Yale New Haven Hosp., 48 Conn. Supp. 311, 343-344, 844 A.2d 258 (2001) (termination of employment accompanied by a supervisor banging his fist on a table and tossing papers is insufficient to state a cause of action for intentional infliction of emotional distress); Canty v. Rubenstein & Sendy, LLC, 2001 Conn. Super. LEXIS 1788 (June 29, 2001) (allegedly false allegations by employer of criminal conduct by employees, repeated in front of others, was insufficient to state a claim for intentional infliction of emotional distress); Scandura v. Friendly Ice Cream Corp., 1996 Conn. Super. LEXIS 1642 (Conn. Super. Ct. June 26, 1996) (requiring plaintiff to furnish daily sales projections, disallowing her from scheduling vacation, ridiculing her unjustifiably and obscenely, forcing her to share job duties and demoting her fails to state a claim for intentional infliction of emotional distress).

After discovery, the record clearly reveals that the Defendants engaged in no conduct that was extreme or outrageous under Connecticut law. Additionally, Plaintiff has not produced or adduced any evidence in the course of discovery to suggest that McClure, Jobes or Russell intended to inflict emotional distress upon Plaintiff.

Once again, McClure submitted a memo to her supervisor, Pawlina, regarding an incident in which Plaintiff admits that he made physical contact with her. Thereafter, at Pawlina's instruction, she reported any further unusual contact with Plaintiff to Pawlina. Jobes was ordered to respond to interrogatories propounded by Pawlina. Jobes complied with the order and even alerted Pawlina to the possibility that his responses might be considered by some to evidence an appearance of bias. Thereafter, McClure, Jobes and Russell were all ordered to report to IAD and answer questions regarding Plaintiff. In those sessions, they expressed their opinions regarding Plaintiff and his behavior. Nothing about the actions of McClure, Jobes or Russell would appear to be outrageous. Moreover, Plaintiff has not adduced any admissible evidence to suggest that either McClure, Jobes or Russell acted with an intention to inflict emotional distress on Plaintiff. They simply wanted his objectionable behavior towards them to stop. Finally, as in the §1983 context, Plaintiff cannot establish proximate causation between the acts of McClure, Jobes and Russell and Marquis' decision that Plaintiff had not successfully completed his probationary period. The cause of Plaintiff's alleged distress, obviously, was his return to the rank of sergeant, not the actions of McClure, Jobes and Russell.

Thus, plaintiff cannot establish the elements of an intentional infliction of emotional distress claim.  Therefore, summary judgment should enter on behalf of McClure, Jobes and Russell on Count Five of the Second Amended Complaint.

 2. Plaintiff Cannot Establish a Defamation Claim against the Three Defendants.

Plaintiff's defamation claims against McClure, Jobes and Russell must fail because such statements are:  privileged; statements of opinion; or true (to the extent that any such statements may be considered factual).

In order to maintain an action for defamation, "there must be an unprivileged publication of false and defamatory matter which is actionable per se or which results in special harm to another."  Britton Mfg. Co. v. Connecticut Bank & Trust Co., 20 Conn. Supp. 113, 115, 125 A.2d 315 (1956).  In Connecticut, a "communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  QSP, Inc. v. Aetna Casualty & Surety Co., 256 Conn. 343, 356, 773 A.2d 906 (2001) (quoting, 3 Restatement (Second) of Torts §559 at 156 (1977)).  "To establish a prima facie case of defamation, a plaintiff must demonstrate that:  (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement."  Id.

a.     The Statements At Issue are Privileged.

The Connecticut Supreme Court has long recognized that "there is an absolute privilege for statements made in judicial proceedings" and that the privilege applies to "statements made in pleadings or other documents prepared in connection with a court proceeding." Peytan v. Ellis, 200 Conn. 243, 245, 252, 510 A.2d 1337 (1986). "The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously." Id. at 246. "The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." Id.

This privilege has been extended to proceedings that are quasi-judicial in nature. "[L]ike the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative proceedings which are 'quasi-judicial' in nature." Id. at 246 (finding that responses to a form issued by the Employment Security Division were absolutely privileged). In reaching its conclusion, the Peytan court found that the administrative "fact-finding supplement" in that case "appears to serve the same function in the administrative proceedings before the unemployment security division as that of pleadings and similar documents in court proceedings." Id. at 252. Thus, the Court concluded, "The defendant therefore should be accorded the same absolute privilege . . . ." Id. at 252. Based on the reasoning of Peytan, courts have found that an absolute privilege attaches to statewide grievance committee

complaints and proceedings (<u>Lyons v. Heid</u>, 1995 Conn. Super. LEXIS 870 (Ct. Super. Court

March 22, 1995)(Maiocco, J.) and <u>Chester v. Willey</u>, 1991 Conn. Super. LEXIS 1409 (Ct.

Super. Ct. June 11, 1991) (M. Hennessey, J.)), statements to the EEOC and the CCHRO

(<u>Blake-McIntosh v. Cadbury Beverages, Inc.</u>, 1999 U.S. Dist. LEXIS 12801 (D. Conn. June 25,

1999)) and statements to the Connecticut Attorney General's Office (<u>Blake-McIntosh</u>).  This

privilege applies to statements made at a quasi-judicial proceeding and statements made in

preparation for such a proceeding.  <u>Kelley v. Bonney</u>, 221 Conn. 549, 565-66, 606 A.2d 693

(1992).

     Most notably, the Connecticut Appellate Court has held that "statements made in the

course of an internal affairs investigation against a Hartford police officer are sheltered by the

common-law doctrine of absolute immunity from actions of defamation."  <u>Craig v. Stafford</u>

<u>Construction, Inc.</u>, 78 Conn. App. 549, 560-61, 827 A.2d 793, <u>cert. granted</u>, 266 Conn. 916

(2003).[12]  In reaching that conclusion, the Appellate Court was guided by a public policy that:

> under defined circumstances such as quasi-judicial proceedings, 'the public
> interest in having people speak freely outweighs the risk that individuals will
> occasionally abuse the privilege by making false and malicious statements.  . . .
> This policy reflects the unspoken reality that, if there were no absolute
> immunity, good faith criticism of governmental misconduct might be deterred
> by concerns about unwarranted litigation.  The doctrine of absolute immunity is
> thus undergirded by the constitutional protection that we afford to free speech
> about matters of public concern."

---

[12] Certification for appeal was granted but limited to the following question:  "Did the Appellate Court properly
determine that an internal affairs investigation conducted by the Hartford police department is a quasi-judicial
proceeding so that statements made in the course of such a proceeding are entitled to an absolute privilege?"  266
Conn. 916.  To the knowledge of the undersigned, no decision has yet been rendered.

<u>Id</u>. at 557.

The same public policy considerations that undergird <u>Craig</u> support a finding that Pawlina's investigation was quasi-judicial.  Pawlina received a memo from McClure regarding Plaintiff's physical contact with her and what she perceived to be his harassment and threatening behavior.  Thereafter, he commenced an investigation of such behavior and characterized it as a sexual harassment investigation.  His investigation depended upon people speaking freely regarding Plaintiff's behavior.  In fact, Pawlina utilized the same IAD mechanism found to be quasi-judicial in <u>Craig</u>.  After gathering evidence, Pawlina passed his findings along to his superiors and then recommended that departmental charges be brought against Plaintiff.

Thus, statements made in McClure's memo[13] and the statements made in response to Pawlina's investigation are absolutely privileged and may not serve as the basis for a defamation claim. Accordingly, summary judgment should enter in favor of McClure, Jobes and Russell on Count Six of the Second Amended Complaint.

      b.     <u>The Statements Are Opinions</u>.

The defamatory statements attributed to McClure, Jobes and Russell are statements of opinion.  "It is well settled that expressions of pure opinion, as opposed to factual assertions, may not be the basis of a defamation action.  . . .  Pure opinion is a personal comment about

---

[13] "We have stated that allegations contained within a complaint in a quasijudicial proceeding are absolutely privileged."  <u>Kelley</u>, 221 Conn. at 571.

another's conduct, qualifications or character that has some basis in known or disclosed facts."

<u>Colon v. Town of West Hartford</u>, 2001 U.S. Dist. LEXIS 484 (D. Conn. Jan. 5, 2001), attached hereto as Exhibit Q.

In each instance cited by Plaintiff as to the alleged defamatory statements made by McClure, Jobes and Russell, the statements were statements of opinion.  As such, the statements are not actionable as defamation.  For instance, there is no question that there was physical contact between McClure and Plaintiff in the hallway on February 25, 2002.  The different characterizations of such physical contact are a matter of pure opinion.  Also, in the Pawlina investigation, McClure, Jobes and Russell were asked for their opinions or whether they would characterize Plaintiff's behavior as intimidating.  Because their compliance with Pawlina's investigation depended on their perception of various interactions with Plaintiff, their responses can only be characterized as their opinions.  As such, they cannot be held liable for defamation.  Consequently, summary judgment should enter in favor of McClure, Jobes and Russell as to Count Six of the Second Amended Complaint.

III.     <u>CONCLUSION</u>[14]

For the foregoing reasons, summary judgment should be granted in favor of Defendants

McClure, Jobes and Russell on all counts in which they are named as defendants.

DEFENDANTS,
NANCY MCCLURE, PATRICK JOBES AND
ROBERT RUSSELL


By_____
       Joseph W. McQuade, ct12121
       jmcquade@kemlaw.com
       Jennifer Lian Dixon, ct15914
       jdixon@kemlaw.com
       Kainen, Escalera & McHale, P.C.
       21 Oak Street, Suite 601
       Hartford, CT  06106
       Telephone (860) 493-0870
       Facsimile (860) 493-0871
       Their Attorneys

---

[14] McClure, Jobes and Russell hereby join in any arguments raised by the other individual defendants in this case to the extent that such arguments are applicable to McClure, Jobes and Russell.

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing Memorandum of Law in Support of

Motion for Summary Judgment by Defendants McClure, Jobes and Russell was sent via first

class U.S. mail on this the 30th day of April, 2004 to:

James S. Brewer, Esq.                    Charles L. Howard, Esq.
Erin I. O'Neil, Esq.                     Gregg P. Goumas, Esq.
Brewer & O'Neil, LLC                     Derek Mogck, Esq.
818 Farmington Avenue                    Shipman & Goodwin, LLP
West Hartford, CT  06119                 One American Row
                                         Hartford, CT  06103-2819


                                    _____
                                         Joseph W. McQuade

13783