UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **MICHAEL J. FAGO** | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:02CV1189 (AHN) |
| v. | : | |
| | : | |
| **CITY OF HARTFORD, ET AL.** | : | |
| Defendants. | : | APRIL 30, 2004 |
| | : | |

**LOCAL RULE 56(a)1 STATEMENT OF FACTS NOT IN DISPUTE
SUBMITTED BY DEFENDANTS MCCLURE, JOBES AND RUSSELL**

Pursuant to D. Conn. L. Civ. R. 56(a)1, Defendants Nancy McClure, Patrick Jobes and Robert Russell respectfully submit this Statement of Facts Not in Dispute in support of their Motion for Summary Judgment. The following facts are not in dispute:

The Parties

1. Plaintiff, Michael Fago, is a Caucasian male police officer employed by the City of Hartford since 1986. Transcript of the Deposition of Michael Fago ("Fago Tr."), relevant portions of which are attached hereto as Exhibit A, at 15-16, 487.

2. The City of Hartford is a municipality in Connecticut.

3. At times relevant to Plaintiff's Complaint, Bruce Marquis was the Chief of Police in Hartford. Second Amended Complaint, Count One, at ¶2.

4. During all times relevant to this action, Kevin Jones was employed as a police officer in the Hartford Police Department. In or around January of 1999, he was promoted to

the rank of Captain and, in July of 2001, he was promoted to the rank of Assistant Chief. Transcript of the July 30, 2003 Deposition of Kevin Jones ("Jones Tr."), relevant portions of which are attached hereto as Exhibit B, at 7.

5. At times relevant to this action, Mark Pawlina was a police officer employed in the Hartford Police Department and held the rank of Captain. Second Amended Complaint, Count One, at ¶4.

6. At all times relevant to this action, Joseph Buyak was a police officer employed in the Hartford Police Department. He attained the rank of Captain in or around May 13, 2001. See, Transcript of the September 17, 2003 Deposition of Joseph Buyak ("Buyak Tr."), relevant portions of which are attached hereto as Exhibit C, at 51.

7. At all times relevant to this action, Nancy McClure was a police officer employed in the Hartford Police Department and had attained the rank of lieutenant. Transcript of the January 29, 2003 Deposition of Nancy McClure ("McClure Tr."), relevant portions of which are attached hereto as Exhibit D, at 63.

8. Nancy McClure is a white female. Fago Tr. at 521.

9. At times relevant to this action, Mark Rudewicz was a police officer employed in the Hartford Police Department and held the rank of sergeant and, subsequently, lieutenant. See, Second Amended Complaint, Count One, at ¶7.

10.  At all times relevant to this action, Stephen Miele was a police officer employed in the Hartford Police Department and held the rank of sergeant.  Second Amended Complaint, Count One, at ¶8.

11.  At all times relevant to this action, Patrick Jobes was a police officer employed in the Hartford Police Department and held the rank of sergeant.  Transcript of the January 9, 2003 Deposition of Patrick Jobes ("Jobes Tr."), relevant portions of which are attached hereto as Exhibit E, at 7, 9.

12.  Patrick Jobes is a white male.  Fago Tr. at 521.

13.  Since 1983, Robert Russell has served as a police officer in the Hartford Police Department.  Affidavit of Robert Russell ("Russell Aff't."), attached hereto as Exhibit K, at ¶3.

14.  Robert Russell is a white male.  Fago Tr. at 521.

The Sergeants' Case

15.  Patrick Jobes and Robert Russell, along with a number of others, were plaintiffs in an action entitled, Amador et al. v. City of Hartford et al., 3:96CV01736 (PCD) (otherwise known as the "Sergeants' case").  The plaintiffs in that case alleged that they were discriminated against on the basis of their gender in a sergeant's promotional examination process.  The case went to trial and a jury found in favor of the defendants.  Jobes Tr. at 16-22; Russell Aff't. at ¶¶4-6.

16.  Nancy McClure was not a plaintiff in the Amador case.  Fago Tr. at 518.

17. Plaintiff was called to testify as a witness for the defendants in the Amador case. Plaintiff testified that he worked very hard to pass the sergeant's test and related his personal experience with that testing process. Fago Tr. at 156-57, 215-216, 516 & Exhibit 11 thereto (Transcript of Plaintiff's testimony in the Amador case); Jobes Tr. at 22-23; Russell Aff't. at ¶5.

18. In the Amador case, Plaintiff did not testify with regard to any actions taken by Jobes or Russell and did not mention Jobes or Russell in his testimony. See, Exhibit 11 to the Fago Tr. (Exhibit A).

19. Jobes and Russell believed that Plaintiff did not volunteer to testify in the Amador case but was called upon by his employer to testify as part of the City's case. Jobes Aff't. at ¶12; Russell Aff't. at ¶7.

The Labor Board Decision Regarding Plaintiff's Harassment

20. On August 22, 2000, the State Board of Labor Relations issued a Decision and Order finding that the City of Hartford, acting through Plaintiff, harbored an anti-union animus and retaliated against a Radio Telephone Operator for her union activities. The Labor Board ordered the City to "cease and desist from harassing or retaliating against Joyce Evoy for her participation in protected concerted activities." In the Matter of City of Hartford & Local 1716, Council 4, AFSCME, AFL_CIO, CLBLR, Decision No. 3785 (Aug. 22, 2000), attached hereto as Exhibit N.

Plaintiff's Promotion and Probationary Period

21. In or around May of 2001, Plaintiff was promoted to the rank of Lieutenant within the Hartford Police department by then-Chief of Police Bruce Marquis. Fago Tr. at 16-17, 166-168.

22. Under the City of Hartford's Personnel Rules and Regulations, all promotions are subject to a probationary period of three months to one year. Rule IX §2 of the City of Hartford's Personnel Rules and Regulations (Exhibit 10 to the Fago Tr.) see also, Fago Tr. at 165-168.

23. Plaintiff was required to serve a one-year probationary period. See, Fago Tr. at Exhibit 19 thereto.

The Hallway/Stairwell Incident

24. On or about February 25, 2002, an incident occurred in a hallway/stairwell in the HPD headquarters building. McClure Tr. At 37.

25. On that date, Lieutenant Nancy McClure was standing in the hallway speaking with other officers after she finished her shift. McClure Tr. at 71, 74-77; Fago Tr. at 410-411.

26. Plaintiff walked past Lieutenant McClure and made physical contact with her. Fago Tr. at 408-411.

27. Lieutenant McClure described such contact as being "shoved from behind with enough force to knock my handbag off of my shoulder." McClure Tr. at 69-72; Affidavit of

Nancy McClure ("McClure Aff't."), attached hereto as Exhibit L, at ¶4 and Exhibit 1 thereto (February 25, 2002 memo from McClure to Jones).

28.     At various points in time, Plaintiff described such physical contact as a "collision", "brushing" by her or "bumping into her." Fago Tr. at 409, 414 & Exhibit 3 thereto; see also, Fago Tr. at 274-75 & Exhibit 23 (in his grievance, Plaintiff described the physical contact with McClure as a "collision").

29.     Plaintiff did not stop walking after coming into contact with Lieutenant McClure. McClure Aff't. at Exhibit 1 thereto; Fago Tr. at 416.

30.     Plaintiff claims that he said "Excuse me" but admits that he uttered such words in a soft tone of voice and does not know whether McClure heard him. Fago Tr. at 415-416 & Exhibit 3 thereto.

31.     Lieutenant McClure did not hear Plaintiff say a word as he continued on his way. McClure Tr. at 70, 142; see also, Fago Tr. at 416 (Plaintiff does not know whether McClure heard him say "Excuse me.").

32.     After allegedly saying "Excuse me" to McClure during the hallway incident, Plaintiff never apologized to Nancy McClure for his physical contact with her. Fago Tr. at 417-419.

McClure's Memo to Pawlina

33. As a result of this incident, Lieutenant McClure wrote a memo (dated February 26, 2002 and entitled "Personnel Issue") to her supervisor, then-Captain Mark Pawlina. McClure Aff't. at ¶4 and Exhibit 1 thereto; Transcript of the February 9, 2004 Deposition of Mark Pawlina ("Pawlina Tr."), attached hereto as Exhibit F, at 66-67; see, McClure Tr. at 72.

34. In the memo, Lieutenant McClure recounted the incident and stated that she was making Pawlina "aware of the incident for several reasons, primarily my own safety." Exhibit 1 to the McClure Aff't.; McClure Tr. at 140, 147-149.

35. Lieutenant McClure wanted the behavior to stop. Exhibit 1 to the McClure Aff't.; see also, McClure Tr. at 83-84 ("I thought that I wanted him to stay away from me. I thought that I would notify my commanders of an incident that occurred, make them aware of it, and I wanted him to stay away from me."), 130, 141.

36. Lieutenant McClure submitted the memo, in part, because she was fearful for her safety. McClure Tr. at 96-97 ("I feel that if [Plaintiff] felt comfortable shoving me in the police department in front of people and thinking nothing of it, what else would he do."); Pawlina Tr. at 223-224.

37. Plaintiff was alerted by another officer that McClure intended to write a memo regarding this incident. Fago Tr. at 90-91.

38.     Plaintiff contacted Pawlina and reported to him that McClure was going to make a complaint against him.  Fago Tr. at 101-103.

Pawlina's Meetings with McClure and Plaintiff

39.     On or about March 1, 2002, Pawlina met with McClure.  McClure expressed her concerns about the stairwell incident and the problems that she has encountered with Plaintiff's behavior in the past.  Exhibit 14 to the Fago Tr. (at COH 304-305).

40.     At that time, Pawlina asked McClure to report any further incidents involving Plaintiff.  Exhibit 14 to the Fago Tr. (at COH 305).

41.     In compliance with Pawlina's instruction, McClure reported to Pawlina an incident in which Plaintiff drove by her slowly in the police headquarters parking lot, in what McClure felt was an intimidating manner.  Exhibit 14 to the Fago Tr. (at COH 305).

42.     On March 2, 2002, Plaintiff submitted a memo to Pawlina regarding Lieutenant McClure's alleged "Improper Conduct."  Fago Tr. at 417 & Exhibit 4 thereto.

43.     On March 4, 2002, Pawlina met with Plaintiff and Lieutenant McClure, instructed them on level of conduct expected of lieutenants and informed them that he intended to investigate the allegations thoroughly.  Fago Tr. at 118-119, 122 & Exhibit 6 thereto.

Pawlina's Investigation

44.     Pawlina commenced an investigation of the events recounted in Lieutenant McClure's memo.  Pawlina Tr. at 67-68, 86; see also, Fago Tr. at 517; Jones Tr. at 59.

45.   Obviously, neither McClure, Jobes nor Russell conducted this investigation. Fago Tr. at 517.

46.   During 2001, Pawlina had received a memorandum from then-Sergeant Mark Rudewicz complaining about similar harassing behavior by Plaintiff.  Exhibit 14 (at COH 307) to the Fago Tr.

47.   Based on the behavior independently documented by McClure and Rudewicz, Pawlina found it "necessary, and prudent, to expand this inquiry into the allegations against Lt. Fago to include those who worked closely with him in the Field Services Bureau."  Exhibit 14 (at COH 307) to the Fago Tr.

48.   During the course of his investigation, Plaintiff was advised by Pawlina that his investigation concerned issues beyond the hallway incident with McClure.  Fago Tr. at 63-65 & Exhibit 2 thereto.

49.   On or about March 11, 2002, Pawlina issued "Harassment/Intimidation/Violence in the Workplace Interrogatories" to approximately 25 Hartford police officers that asked, inter alia, whether they had "ever observed, witnessed, or been a victim of any type of harassment, intimidation, or violence in the workplace by Lieutenant Michael Fago?" and, if yes, to describe the circumstances.  Fago Tr. at 128-129 and Exhibit 14 thereto (at COH 405-406); Pawlina Tr. at 155-156.

50. Such interrogatories were directed to, inter alia, then-Sergeant Patrick Jobes. See, Fago Tr. at Exhibit 14 (COH 405-406); Jobes Tr. at 83-84; Pawlina Tr. at 156-157.

51. Because the interrogatories were specifically directed to him by a superior officer, Jobes was compelled to respond to such interrogatories in a truthful manner. Affidavit of Patrick Jobes ("Jobes Aff't."), attached hereto as Exhibit M, at ¶¶4-6 and Exhibit 1 thereto.

52. In responding to such interrogatories, Jobes alerted Pawlina to the possibility that his responses could be viewed as self-serving by some and thus, could present an appearance of bias. Jobes Aff't. at Exhibit 1 thereto.

53. Pawlina received interrogatory responses that corroborated the types of allegations made by McClure and Rudewicz from Jobes, then-Sergeant Steven Miele and Lt. Harold Even. Exhibit 14 (at COH 308) to the Fago Tr.

54. Based on the responses to the interrogatories, Pawlina "believed it necessary and prudent to have all parties named interviewed so that all the alleged conduct could be captured in detail to determine what the facts were, and what patterns of behavior, if any, were considered harassment or intimidation. Therefore, I requested assistance from the Internal Affairs Division to have tape recorded interviews of all the parties involved." Exhibit 14 (at COH 308) to the Fago Tr.

55. Plaintiff, McClure, Jobes and Russell were all ordered to report to the Hartford Police Department's Internal Affairs Division to answer questions in connection with Pawlina's

investigation. Fago Tr. at 386-387; McClure Aff't. at ¶¶5-7; Jobes Aff't. at ¶¶7-9; Russell Aff't. at ¶¶8-10; Jones Tr. at 65 ("Chief Marquis authorized IAD investigators to assist Captain Pawlina in an investigation of an incident that Lieutenant McClure--").

56.	Rudewicz, Sgt. Art Maglieri, Lt. Even, Miele and Captain Buyak were also interviewed by IAD. Exhibit 14 (at COH 308) to the Fago Tr.

Pawlina's Report

57.	On or about April 25, 2002, Pawlina submitted a memo to Assistant Chief Kevin Jones regarding his investigation and the conclusions he reached. Exhibit 14 to the Fago Tr. (Exhibit A). Included within his investigative package were documents produced in the course of the investigation. Exhibit 14 to the Fago Tr. (Exhibit A). See, Pawlina Tr. at 62-63, 75.

58.	In this memo to Jones, Pawlina concluded that "there is little question that Lt. Fago has established a pattern of harassing and intimidating conduct backed up by a history of violence in the work place." Exhibit 14 (at COH 392) to the Fago Tr.

59.	With respect to McClure's complaint about the stairwell incident, Pawlina concluded: "As far as the original complaint submitted by Lt. McClure, on the surface it cannot be determined absolutely if there was an intentional push or shove. But when this incident is put together with all the other reported incidents, it clearly shows a continued pattern of harassing and intimidating conduct on the part of Lt. Fago, and I believe the incident set forth by Lt. McClure did occur, and was intentional." Exhibit 14 (at COH 392) to the Fago Tr.

60. Pawlina's recommendation was to "give an unsatisfactory performance evaluation to Lt. Fago, who is a probationary employee, and to not allow him to continue as a lieutenant in the Hartford Police Department." Exhibit 14 (at COH 392) to the Fago Tr.

61. Neither McClure, Jobes nor Russell had requested that Plaintiff be demoted. McClure Aff't. at ¶9; Jobes Aff't. at ¶13; Russell Aff't. at ¶12.

62. Kevin Jones heard Plaintiff make strange noises and engaged in strange behavior while on duty. Jones Tr. at 89-91; see also, Jobes Tr. at 101.

Plaintiff's Probationary Performance Evaluations

63. Pawlina and Jones determined that Plaintiff's performance during his probationary period needed improvement. See, Exhibits 16-18 to the Fago Tr.; see also, Pawlina Tr. at 71-72, 266.

64. After receiving Pawlina's memo, Assistant Chief Reilly recalls discussing appropriate action with Assistant Chief Jones. The crux of the conversation was that "[t]he behavior identified with Lieutenant Fago in the investigative package did not--was not professional; it was not what was acceptable of a police officer." August 21, 2003 Deposition of William P. Reilly ("Reilly Tr."), relevant portions of which are attached as Exhibit G, at 11-12, 16-20.

Marquis' Decision Regarding Plaintiff's Probationary Status

65.     Prior to taking action regarding Plaintiff's probationary period, Chief Marquis orally consulted with Elizabeth Dunn (a Personnel employee who was about to become the Acting Personnel Director) regarding his options.  Transcript of the February 4, 2004 Deposition of Elizabeth Dunn ("Dunn Tr."), attached as Exhibit H, at 33-40.

66.     Under the City's Personnel Rules and Regulations, Rule IX, 4:  "At any time during the probationary period, the appointing authority may recommend in writing to the Director of Personnel the removal of an employee, if in his opinion the working test indicates that such employee is unable to or unwilling to perform the duties of the position satisfactorily or that his habits and dependability do not merit his continuance in the service."

67.     Plaintiff agrees that then-Chief Marquis was the relevant appointing authority. Fago Tr. at 168.

68.     Then-Chief Marquis also discussed the possible return of Plaintiff to the rank of sergeant with at least Assistant Chiefs Jones and Reilly prior to taking such action.  Reilly Tr. at 20-24; Jones Tr. at 93; see also, Transcript of the Deposition of Bruce Marquis ("Marquis Tr."), attached hereto as Exhibit I, at 68-69.

69.     Then-Chief Marquis testified:  "As a chief of police, I have to make a decision whether a person during a probationary period remain in that rank or not based on the totality of the things that I had learned, whether through the investigation or otherwise and based on

what I'm looking for in terms of creating a staff, a team management, if you will. It was my decision to demote Fago because of a pattern of events more or less." Marquis Tr. at 75.

70. Then-Chief Marquis decided to return Plaintiff to the rank of sergeant based on Pawlina's investigation and the subsequent recommendations of Pawlina and Jones. Marquis Tr. at 44-48. He found that Plaintiff had engaged in a pattern of behavior of intimidating folks. Marquis Tr. at 102-104.

71. Plaintiff's return to the rank of sergeant was not based on any individual incidents but, rather, based on his behavior as reflected in Pawlina's investigation. Reilly Tr. at 114-115, 121.

72. Then-Chief Marquis wrote to Patricia Washington, then-Director of Personnel, advising her that, in his opinion, Plaintiff had not successfully completed his probationary period, noting that the position of Lieutenant was not an appropriate placement for Plaintiff and requesting that Plaintiff be dismissed from the probationary status of lieutenant and returned to the rank of sergeant. Fago Tr. at Exhibits 20-21.

73. On May 16, 2002, Plaintiff was returned to the rank of sergeant. Exhibit 19 to the Fago Tr.; Fago Tr. at 17.

74. Then-Chief Marquis did not consult with any of the Three Individual Defendants in making his determination. Marquis Tr. at 113-114.

75. Plaintiff's return to the rank of sergeant was not a disciplinary action. Jones Tr. at 188.

Pawlina's Recommendation Regarding Disciplinary Charges

76. The Hartford Police Department maintains a Code of Conduct that, inter alia, provides for certain disciplinary charges that may be asserted against an officer. McClure Aff't. at ¶8 and Exhibit 2 thereto.

77. After Plaintiff was returned to the rank of sergeant, Pawlina forwarded to the Department Advocate, Richard Calderone, a request for consideration of charges under the Code of Conduct against Plaintiff. This request was specifically limited to the stairwell incident. Reilly Tr. at 48-50, 54; Jones Tr. at 102-104, 185-187, 211-214; see also, Exhibit 14 (at COH 392) to the Fago Tr.

78. Calderone recommended that disciplinary charges not be brought against Plaintiff for conduct unbecoming an officer based on the hallway incident. Transcript of the May 6, 2003 Deposition of Richard Calderone ("Calderone Tr."), relevant portions which are attached hereto as Exhibit J, at 223. Reilly signed off on Calderone's recommendation regarding the imposition of disciplinary charges against Plaintiff for the hallway incident. Reilly Tr. at 60, 82.

Plaintiff's Lack of Evidence of Racial Animus

79. Plaintiff has no evidence that Nancy McClure discriminated against him because he is white. Fago Tr. at 487-494, 505-513, 544-545.

80. Plaintiff has no evidence that Patrick Jobes discriminated against him because he is white. Fago Tr. at 494-497, 513-514, 544-546.

81. Plaintiff has no evidence that Robert Russell discriminated against him because he is white. Fago Tr. at 494-498, 514-515, 544-546.

82. After Plaintiff was returned to the rank of sergeant, white males were promoted to the position of lieutenant. Fago Tr. at 303.

83. Plaintiff does not recall McClure, Jobes or Russell using racial epithets to disparage white people. Fago Tr. at 545.

Plaintiff's Lack of Evidence of First Amendment Retaliation

84. Plaintiff does not have any knowledge that Nancy McClure made false statements against him in retaliation for his testimony in the Amador case "other than her personal relationship with Sergeant Jobes and Assistant Chief Jones and also her friendship with the other defendants." Fago Tr. at 518-519, 547-551.

85. Plaintiff's "evidence" that Jobes and Russell retaliated against him because of his testimony in the Amador case is his assertion that they made false complaints against him. Fago Tr. at 518, 546-547.

The Basis for Plaintiff's Intentional Infliction of Emotional Distress Claim

86.     Beyond the memos/complaints filed by McClure, Jobes and Russell and their contributions to Pawlina's investigation, Plaintiff is unaware of any other acts allegedly committed by McClure, Jobes and Russell that form the basis of his intentional infliction of emotional distress claim.  Fago Tr. at 531-532.

The Basis for Plaintiff's Defamation Claim

87.     Plaintiff claims that the following statements, allegedly made by Robert Russell, were defamatory: "He's not normal"; "He was just acting a little bit unusual . . . he'd walk by and flex his muscles and just started acting strange . . . ."; "The guy's, you know, like a time bomb waiting to go off."  Fago Tr. at 387-398; see also, Fago Tr. at 188 & Exhibit 9 thereto at Interrogatory 4.

88.     At his deposition, Plaintiff was not aware of any further defamatory statements allegedly made by Robert Russell.  Fago Tr. at 398.

89.     Plaintiff claims that the following statements, allegedly made by Patrick Jobes, were defamatory: "He'd bump into you.  Shove you a little bit . . . definitely as a means to intimidate"; "He had me crawl in a dumpster."; "Someone had written . . . kill in the snow across my deck of my car . . . Do I think it's him?  Yes I do."; "[He] threatened to kill Maglieri. He threatened, he challenged Steve Miele to fight a few times . . . when he was working out he used to go kill Miele, kill Miele."; "I don't put it past him to shoot me."; "He's that unstable.";

17

"Him bumping into you, leaning on you, the looks, getting into your personal space you know, the whole bit he's got a problem."  Fago Tr. at 398-404 and Exhibit 9 thereto at Interrogatory 4.

90.     At his deposition, Plaintiff was not aware of any further defamatory statements allegedly made by Patrick Jobes.  Fago Tr. at 403-404.

91.     Plaintiff claims that the following statements, allegedly made by Nancy McClure, were defamatory:  "I was shoved from behind.  Just shoved.  Turned my head and it was Lt. Fago who shoved me and he just walked up the stairs and said nothing.  He's constantly harassing me.  He distributed those fliers and then laughed about it because he knew he wasn't going to get in trouble.  He tries to intimidate, physically intimidate you by folding his arms and he does this chicken like thing--I don't know how else to describe it like a bird in a barn where he walks past you--he knew I was pissed when he shoved me.  He's nuts.  He's crazy.  He tried to intimidate you.  He walks past you.  He looks at you.  I mean he creates this hostile work environment every day."  Fago Tr. at 405-407 & Exhibit 9 thereto at Interrogatory 4.

92.     At his deposition, Plaintiff was not aware of any further defamatory statements allegedly made by Nancy McClure.  Fago Tr. at 407.

DEFENDANTS,
NANCY MCCLURE, PATRICK JOBES AND
ROBERT RUSSELL


By_____
       Joseph W. McQuade, ct12121
       jmcquade@kemlaw.com
       Jennifer Lian Dixon, ct15914
       jdixon@kemlaw.com
       Kainen, Escalera & McHale, P.C.
       21 Oak Street, Suite 601
       Hartford, CT  06106
       Telephone (860) 493-0870
       Facsimile (860) 493-0871
       Their Attorneys

## **CERTIFICATION OF SERVICE**

      This is to certify that a copy of the foregoing Local Rule 56(a)1 Statement of Facts Not in Dispute by Defendants McClure, Jobes and Russell was sent via first class U.S. mail on this the 30th day of April, 2004 to:

| | |
|---|---|
| James S. Brewer, Esq. | Charles L. Howard, Esq. |
| Erin I. O'Neil, Esq. | Gregg P. Goumas, Esq. |
| Brewer & O'Neil, LLC | Derek Mogck, Esq. |
| 818 Farmington Avenue | Shipman & Goodwin, LLP |
| West Hartford, CT  06119 | One American Row |
| | Hartford, CT  06103-2819 |

                                                                         Joseph W. McQuade

11914