Exh A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICHOLAS O. RUSSO, JR. | : | CIVIL ACTION NO. |
| Plaintiff | : | 3-97-cv-2380 (JCH)(Lead Case) |
| | : | 3-00-cv-2382 (JCH) |
| v. | : | 3-00-cv-1794 (JCH) |
| | : | |
| CITY OF HARTFORD, ET AL | : | MAY 7, 2004 |
| Defendants | | |

### RULING ON DEFENDANTS' JOINT COMBINED MOTION FOR SANCTIONS (DKT. 351-2)

Pending before this court is a motion for sanctions directed toward plaintiff's counsel, James Brewer, for allegedly unprofessional and obstructionist behavior during discovery, in violation of the court's Orders.  See Defendants' Joint Combined Motion to Compel and for Sanctions (Dkt. No. 351-2)[1] at 18; see also Defendants' Memorandum in Support (Dkt. No. 352)(hereinafter "Defts' Memo. I").[2]  Jointly filing the Motion are all remaining defendants:  Joseph Croughwell, Jeffrey Flaherty, David Kenary, Daryl Roberts, Christopher Lyons, Robert Lawlor, James Rovella, Charles Lilley and Robert Rudewicz (together, "Police defendants"); the City of Hartford ("City"); and Lawrence Reynolds, Michael Wood, Thomas Hardwick and the Hartford Police Union (together, "Police Union

---

[1]  The defendants' Motion is a combined motion to compel and for sanctions.  (Dkt. No. 351).  The court granted the Motion to Compel (Dkt. No. 351-1) on May 13, 2003.
References to docket numbers are to Case No. 3-97-cv-2380.  At the time the pleadings relevant to this motion were filed, that was the lead case of the three consolidated cases.

[2]  Unless otherwise indicated, the references to docket entries ("Dkt.") are to those in the lead case, Russo v. Hartford, 3:97cv2380.

defendants"). Subsequently, defendants supplemented their motion by filing a further

memorandum in support, citing to additional, allegedly unprofessional and obstructionist

behavior of Attorney Brewer subsequent to the filing of their Motion and the court's Order

of October 8, 2002. Supplemental Memorandum (Dkt. No. 360) (hereinafter "Defts'

Memo. II"). Plaintiff filed a memorandum in opposition to the Motion for Sanctions on

January 29, 2003 (Dkt. No. 378).

The court heard argument on the Motion on March 10, 2004. Despite notice,

Attorney Brewer did not attend. The court issued an Order on March 11, 2004, providing

Attorney Brewer notice of the court's consideration of sanctions and giving him until March

21, 2004 to show cause why it should not enter sanctions against him. Order (Dkt. No.

471). No response was filed.

## I. BACKGROUND

This litigation involves federal civil rights actions brought pursuant to 42 U.S.C. §

1983 by the plaintiff, Hartford Police Detective Nicholas Russo ("Russo"), against now-

dismissed state criminal prosecutors, Hartford police officers and supervisors, the Hartford

Police Union and union officers, and the City of Hartford. Russo alleges several federal

constitutional and state law violations arising out of his drug testing, arrest on December

16, 1997, and suspension from prior police duties. Russo filed three related lawsuits,

Russo v. City of Hartford, et al. (3:97cv2380 (JCH)), Russo v. Bailey, et al. (3:00cv1794

(JCH)), and Russo v. Marquis, et al. (3:00cv2382 (JCH)), which had been previously

consolidated for purposes of discovery.[3]

The court, however, stayed discovery during the state criminal proceedings involving

Russo.  Endorsement Order (6/23/98)(Dkt. No. 25).  On August 15, 2000, the

Connecticut Superior Court granted Russo's motion to suppress, finding that Russo had

the requisite expectation of privacy necessary to assert a challenge to the admissibility of his

prescription records, regardless of the fact that the records were obtained from a third party.

State v. Russo, 2000 WL 1228004, at *5 (Conn. Super. Aug. 15, 2000).   The State then

made a motion to dismiss the charges against Russo, which the Superior Court granted.

Transcript, September 14, 2000, Mem. of Law in Supp. of Mot. to Dismiss (Dkt. No. 78),

Ex. C at 15-37.  The State filed an appeal, which was decided by the Connecticut Supreme

Court on February 19, 2002.  State v. Russo, 259 Conn. 426 (2002).  The Supreme Court

reversed the dismissal of the charges, holding that Russo's rights had not been violated by

the seizure of his pharmacist's records.[4]

_____

[3] Russo also filed a proposed class action, Russo v. CVS Pharmacies, Inc., et al.
(3:00cv1852 (JBA)), stemming from the seizure of his pharmaceutical records, but naming
different defendants and raising different issues.  This court refused to consolidate that action.
Endorsement Order (12/5/00) (Dkt. No. 56).

[4] At a hearing on March 10, 2004, counsel reported that Russo has now been convicted on
these charges.

-3-

After the Supreme Court reversed the dismissal, this court again stayed discovery, Order (Dkt. No. 220), until it held a telephone status conference on June 10, 2002, at which time this court ordered on the record that discovery could continue.

Thereafter, on June 12, 2002, counsel for the Police defendants began deposing Mr. Russo. There were problems with his deposition, including his leaving it for health reasons. The court then held a status conference to address issues concerning the taking of depositions. Attorney Brewer was not present for that conference; other counsel appearing for Russo were present. As a result of what occurred at the initial session of Russo's deposition, the court entered an order concerning the conduct of depositions in these cases. Order (6/20/02) (Dkt. No. 237 )("Order I"). The terms of Order I were initially placed on the record, and the court requested that plaintiff's counsel present in court convey them to Attorney Brewer because the written version would not likely be received by counsel for several days.[5] The court issued Order I in writing on June 20, 2002.

---

[5] The transcript of the June 18 deposition of Sgt. Christopher Lyons reveals that Attorney Forest spoke to Attorney Brewer before the deposition about the court's verbal Order. See Appendix A, Lyons Depo. at 4/14. (In citing to depositions, the court will cite the name of the deponent, the date of the deposition (if more than one session), and page/line or page. The cited-to page/line or page is that shown in the ASCII-disc format. See Appendix C.) Attorney Brewer did not appear to comprehend that Order. The court will therefore not consider any conduct of Attorney Brewer that occurred before the issuance of the written June 20, 2003 Order ("Order I").

However, Attorney Brewer's conduct at that deposition is revealing. There is a lengthy discussion about who should be the focus of the videotaping. Attorney Brewer insisted that the camera be focused on the witness: he had noticed the deposition as a video deposition and wanted the camera on the witness. Id. at 5/10-11. However, all other counsel advised him correctly that a videotape record of counsel's conduct during any deposition was required by the court's verbal

Russo's deposition then continued, on June 28 and July 2, 2002.  There were continuing problems with those sessions, including but not limited to the assertion of Federal Rule of Criminal Procedure 6(e) as a ground not to answer questions put to him by Attorney Howard, counsel for the Police defendants.  Those refusals were the subject of the defendants' Motion to Compel which was combined with the pending Motion for Sanctions.  (Dkt. No. 351-1).  The court granted the Motion to Compel.  Ruling (1/13/03)(Dkt. No. 366-1).  After Russo's depositions, a large number of other depositions were taken by both sides.

In response to continuing difficulties with the depositions, the court issued a second Order on October 8, 2002, in which it set out (in an attachment) the procedures for the conduct of depositions in the Russo cases.  Order (10/8/04)(Dkt. No. 371)("Order II").  Further depositions followed Order II, and defendants supplemented their record on their Motion for Sanctions by filing a Supplemental Memorandum on December 18, 2002 (Dkt. No. 360).  The plaintiff filed an Opposition (Dkt. No. 378), and defendants replied (Dkt. No. 386) and later supplemented again.  (Dkt. No. 469).

---

Order (as later memorialized on June 20, 2002 as Order I.)  Attorney Brewer, who was not in court when the Order was first entered on the record, described the court's Order as "stupid."  Id. at 7/3.  He resisted the other counsel's efforts to comply with the order by saying, "I've never heard of that before.  I've heard of judges ordering videotaping but not of lawyers and, frankly, it invades my privacy.  I don't intend to be videotaped."  Id. at 5/23-6/2.

In their Motion for Sanctions, defendants seek, <u>inter alia</u>, monetary sanctions against Attorney Brewer for his conduct, including the costs of preparing the Joint Combined Motion and an unspecified monetary sanction.[6]  Defendants allege that Attorney Brewer repeatedly engaged in argumentative and abusive conduct, made unprofessional remarks, and otherwise obstructed the depositions in violation of the court's Orders.  The conduct which is the focus of the court's consideration in connection with the Motion for Sanctions occurred at depositions taken after the entry of Order I and Order II.

## I. DISCUSSION

### A. <u>Applicable Rules and Orders</u>

Federal Rule of Civil Procedure 83©) provides, in part, that:

> [A] judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and local rules of the district.  No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local district rules unless the alleged violator has been furnished . . . with actual notice of the requirement.

---

[6] Defendants' Joint Combined Motion to Compel and for Sanctions sought other remedies, related to Russo's assertion of Rule 6(e) as a grounds to refuse to testify, including reimbursement of the defendants for the June 28 and July 2 Russo depositions, preclusion orders with regard to proof of various allegations, and an order establishing various matters for purposes of these lawsuits.  The court declines to grant these as appropriate sanctions against Attorney Brewer or any sanctions against Mr. Russo at this time.  Sanctions against Mr. Russo are inappropriate, as he appears to have been following, in good faith, his counsel's instructions, <u>albeit</u> Attorney Brewer had little ground to so instruction his client.

In connection with their Motion for Sanctions against Attorney Brewer, defendants

specifically rely on two Orders entered in this case and on Civil Rule 16(g)(1)[7] of the Local

Rules of the United States District Court for the District of Connecticut (hereinafter "Local

Rule 16(g)(1)").  Local Rule 16(g)(1) provides:

> It shall be the duty of counsel to promote the just, speedy, and
> inexpensive determination of every action.  The Court may
> impose sanctions directly against counsel who disobey an order
> of the Court or intentionally obstruct the effective and efficient
> administration of justice.

This Local Rule is notice to all attorneys who practice before this court that conduct in

violation of a court order may be sanctioned.

Defendants rely on two written orders of this court concerning the conduct of

depositions in these cases.  On June 20, 2002, the court entered Order I which provided in

pertinent part as follows:

> 5.    Counsel will not engage in any argument during a deposition.  Deposing
> counsel will ask questions of the witness.  Witness's counsel will object
> succinctly by citing the appropriate federal rule or evidence doctrine.  Any
> comments or argument outside these limits will result in monetary sanctions
> against counsel.  Further, if deposing counsel's conduct substantially violates
> this Order, then the court will likely deny any request to continue a
> deposition.  On the other hand, if the conduct of witness's counsel
> substantially violates this Order, then the court will likely grant as many
> continuances as necessary to complete a deposition.

---

[7] The defendants' Memorandum refers to Local Rule 31(a).  However, the District Court
has recently renumbered its Local Rules and former Local Rule 31(a) is now Local Rule 16(g)(1).

6.    Deposed witnesses will not argue with deposing counsel. The witness will answer questions posed by deposing counsel, after any objection. Any comments or argument outside these limits will result in monetary or other sanctions against the witness.

7.    All depositions must be videotaped.

   a)    The tapes do not have to be certified or professionally recorded.

   b)    Costs for this videotaping shall be shared by each (set of) attorney(s) representing a party or group of parties paying a pro rata share (e.g., Attorneys Howard and Goumas of Shipman & Goodwin, representing defendants Joseph Croughwell, Jeffrey Flaherty, David Kenary, Daryl Roberts, Christopher Lyons, Robert Lawlor, James Rovella, Charles Lilley, and Robert Rudewicz, will be assigned one share; Attorneys Brewer, Forrest, and O'Neil-Baker, representing the plaintiff, will be assigned one share; etc.). The attorneys and parties will be jointly and severally liable for the costs.

   c)    The video should focus on attorneys, not the witness, except that during the plaintiff's deposition, the video shall focus on the plaintiff and the attorneys.

8.    Any motion with regard to a deposition must attach the relevant videotape as an exhibit.[8]

Order I, at p. 3-4. (Dkt. No. 237).

_____

[8] Defendants submitted videotapes of depositions cited in their original and supplemental memoranda. See Appendix A to this Ruling. The court has watched all the videotapes submitted and relies in this Ruling primarily on those depositions. Viewing the depositions gave the court the ability not only to hear the words spoken, but also the tone, and to observe related conduct. Defendants submitted transcripts of these and other depositions. See Appendix B to this Ruling.
    The court then requested defense counsel to submit to Chambers the depositions in ASCII-disc format. Defendants promptly complied. The court orders the Clerk to docket in CA No. 3-97-cv-2380 the submitted ASCII-discs; the discs of Russo's deposition should be filed under seal.

Entered on October 8, 2003, Order II incorporated a 3-page "Procedures for the

Conduct of Depositions in the Russo Cases."  Because of issues that had arisen at some

depositions, the court created this separate document so that it could be given to deponents

in order that they would be informed of the court's requirements for the conducting of

depositions.  These procedures also governed counsel.  The Order II procedures provided:

> Any deponent who objects to these procedures must file with the court a Motion for Protective Order in advance of his/her deposition.

1.    Deposing counsel will only ask questions of the witness.  Deposing counsel will not argue with, threaten or berate the witness.

2.    Witness counsel's objections should be succinct, stating the basis of the objection by citing the appropriate federal rule or evidence doctrine and nothing more.  Witness's counsel will not suggest an answer in the objection. If he/she has a clear basis to do so (e.g., privilege, harassment, no conceivable basis for discovery), witness's counsel may instruct the witness not to answer. If so, there will be no argument or discussion; deposing counsel will then ask another question.

3.    Counsel will not engage in any argument or name calling during a deposition.

4.    The witnesses will not argue with deposing counsel.  The witness will answer questions posed by deposing counsel, after any objection, and unless instructed not to do so.

5.    Any comments, behavior, or argument outside these limits will result in monetary sanctions against counsel or the witness.  Further, if deposing counsel's conduct substantially violates this Order, then the court will likely deny any request to continue a deposition.  On the other hand, if the conduct of witness's counsel or the witness substantially violates this Order, then the court will likely grant as many continuances as reasonably necessary to complete a deposition.

6.    If a witness is instructed to, and does not, answer a question, the deposing counsel may move to compel an answer. If that motion is granted, the deponent's counsel who gave the instruction will be sanctioned. If the motion is denied, the deposing counsel who asked the question and moved to compel will be sanctioned.

7.    All depositions must be videotaped.

   a)    The tapes do not have to be certified or professionally recorded.

   b)    Costs for this videotaping shall be shared by each (set of) attorney(s) representing a party or group of parties paying a pro rata share (e.g., Attorneys Howard and Goumas of Shipman & Goodwin, representing defendants Joseph Croughwell, Jeffrey Flaherty, David Kenary, Daryl Roberts, Christopher Lyons, Robert Lawlor, James Rovella, Charles Lilley, and Robert Rudewicz, will be assigned one share; Attorneys Brewer, Forrest and O'Neil-Baker, representing the plaintiff, will be assigned one share; etc.) The attorneys and parties will be jointly and severally liable for the costs.

   c)    The video must focus on all attorneys, not the witness, except that during the plaintiff's deposition, the video shall focus on the plaintiff and the attorneys. Any motion with regard to a deposition must attach the relevant videotape as an exhibit.

Order II (Dkt. No. 371). These Orders applied to all depositions taken after their entry.

Defendants' counsel submitted portions of 24 depositions for the court's review in connection with their pending Motion for Sanctions.[9],[10] The court has watched each one of

_____

   [9] The videotapes of certain depositions, listed in Appendix A, were submitted by defendants to Chambers and are ordered to be docketed in CA No. 3-97-cv-2380 by the Clerk; the Russo deposition tapes shall be filed under seal.

   [10] Appendix B lists each deposition by deponent, party noticing, and date(s) on which taken.

the videotaped depositions in its entirety, and read portions or all of the submitted transcripts.

### B. Attorney Brewer's Conduct

Overall, Attorney Brewer's conduct during the depositions is appalling and in gross violation of the Orders of this court. His conduct wasted an inordinate amount of time and money. On hundreds of occasions, he violated specific provisions of the court's Order I and Order II, as well as the duty imposed upon all counsel in Local Rule 16(g)(1) "to promote the just, speedy and inexpensive determination of every action." He repeatedly engaged in argument, made insulting and discourteous remarks to counsel and witnesses, threatened people, and otherwise obstructed the conduct of the depositions.

Without in any way attempting to be exhaustive, the court will identify some of the most egregious conduct of Attorney Brewer during the depositions.

1. **"Shut up"**. While in the abstract, telling some one to "be quiet" or to "shut up" may not be the worst conduct Attorney Brewer engaged in, the frequency and tone with which he did so is staggering. In one deposition, he told opposing counsel to "shut up" 12 times. Hajdasz Depo. at 48/1, 66/1 and 4-5; 124/23; 131/15; 131/24; 132/11; 138/10; 162/12 and 14; 229/14 and 44.[11] In the same deposition, he told opposing counsel to "keep

---

[11] In citing to depositions, the court will cite the name of the deponent, the date of the deposition (if more than one session), and page/line or page. The cited-to page/line or page is that shown in the ASCII-disc format. See Appendix C.

your mouth shut" 5 times. Id., at 47/6 and 10-11; 48/4; 66/10; 165/17-18. Further, in the

same deposition, he told opposing counsel to "be quiet" on 6 occasions. Id. at 65/4; 88/16;

129/18; 136/23; 137/18; 153/3. While this deposition appears to be the most egregious

with regard to this particular verbal conduct, it is not the only deposition in which Attorney

Brewer spoke in this manner. At other depositions, he told counsel to "shut up," Rovella

Depo. at 86/19; 87/23, and to "keep their mouth shut," Glasser Depo. at 129/17-18. At

still other depositions, he employed a demeaning "be quiet." See Rovella Depo. at 86/15 ,

89/10 &12; Rudewicz Depo. at 16/10, 21/15; Kenary Depo. at 44/21 and 24; Lawlor

Depo. at 52/2. See also Kline Depo. (repeatedly ordering opposing counsel "be quiet" ).

This conduct clearly violated Order I and Order II. In Order I, deposing counsel

were ordered to merely "ask questions of the witness." Order I at para. 5. "Any comments

or argument outside these limits will result in monetary sanctions against counsel." Id.

Order II provided the same, with the addition of one word: "only ask questions of the

witness." Order II at para. 1.

In addition to violating specific provisions of the court's Orders, this conduct also

violates Local Rule 16(g)(1) because Attorney Brewer's conduct certainly did not effect "the

just, speedy and inexpensive determination" of this action. Almost every time he utilized the

language described above, it triggered more commentary, by opposing counsel, and then

responses by himself, which wasted time and impeded the completion of the depositions.

2. <u>Threats</u>.  Attorney Brewer also engaged in a form of comments that the court can best describe as threatening.  For example, he told an opposing counsel, "You're (sic) clients are going to jail."  Hajdasz Depo. at 47/20-21.  He stopped questioning a witness to state that he would move for contempt against the witness's attorney and for sanctions against that attorney and the witness.  Thomas Depo at 17/2-6; <u>see</u> <u>also</u> Croughwell Depo at 58/23, 59/6, 230/20-21 (going to move for sanctions); Russo Depo.(6/28/02) at13/17; 19/20; 22/24; 23/24-24/1 (same); Castagna Depo at 25/13-16 (threatens attorney with contempt).  These threats violated this court's Orders and were abusive.  They were not intended to advance the discovery process.  Indeed, there were occasions when the parties were in disagreement as to how to proceed, and another attorney suggested they try to reach the court for a ruling, Attorney Brewer refused to call the court.  <u>See</u>, e.g., Skinner at 9/16-10/20 (refusing counsel's suggestion to call the court, Brewer aborts deposition because deponent, a state employee, refused to give his home street address).

It is unduly harassing and improper to threaten to proceed against a person.  It appears that Attorney Brewer sought to control the deposition, the witness, and opposing counsel by this tactic.  However, the court's Orders and the Federal Rules of Civil Procedure and the Local Rules are meant to do that, and nowhere in them are Attorney Brewer's threats authorized.  Indeed, they are expressly prohibited by this court's Orders.

-13-

3. **Speaking Objections.** Having noticed and taken numerous depositions in which he repeatedly reminded opposing counsel of the court's Orders not to say anything other than an objection and the basis therefore, see, e.g., Hajdasz Depo at 19/8-10; 230/8-10; Glasser Depo at 93/16-17; 140/18-19, Attorney Brewer engaged in speaking objections in depositions when he was not the questioning counsel. See, e.g., Glasser Depo. at 101/14-15; 102/12-16; 102/24-25; 103/7-10; 11-12; 19-21. These extraneous portions of his objections are in direct violation of the court's orders. Order I, para. 5; Order II, para. 5.

4. **Commentary/Speeches.** In depositions noticed by the plaintiff, Attorney Brewer engaged in commentaries or speeches, often lengthy, in violation of the Orders I and II. See e.g., Hadjasz Depo. at 44/14-18; 63/5-12; 84/14; 95/18; 96/15-16; 99/10-11; 232/19-20; 232/23-24; 240/12-15; Glasser Depo at 171/1-2; 175/12-13; 180/20-181/4; 189/16-19; 194/20-23; 197/1 and 3-5; Lilley Depo. at 160; 202; Lawlor Depo. at 35; 46; Venary Depo. at 75-76; Rovella Depo. at 97-98; 129; Rudewicz Depo. at 32-35; 170-171; Reynolds Depo. at 36; 37; 84-85; 97; Braunsdorf Depo. at 77/15-16; Castagna Depo at 24/19-23; 25/5-6; 33/15-16; Smith Depo. at 42/19-20; 43/3-4. In one incident, he invited the videographer to make an objection. Hadjasz Depo. at 89/8.

This type of verbal conduct was exactly what the court intended to prevent by issuing Order I. When there appeared to be continuing difficulties with the conduct of the depositions in these cases, the court issued Order II so that the rules concerning attorney behavior would be unquestionably clear. As the court reviewed the videotapes, it became

-14-

clear that its efforts, and its Orders, had no effect upon Attorney Brewer.

     5. **Disrespectful Conduct**.  In addition to the above-described violations of the

court's Orders and Local Rule 16(g), Attorney Brewer violated the Orders and Rule on

other occasions and on which occasions he treated the witness, opposing counsel, or the

court with disrespect.  While the Orders do not explicitly proscribe disrespectful conduct, the

conduct discussed in this section certainly exceeded the limits of verbal conduct permitted

under the court's Orders (question, brief objection).  For example, in the Rovella deposition,

while questioning the witness, he engaged in comments, in violation of the Orders, which

communications were insulting to opposing counsel.

> Q     You couldn't tell me or you don't recall?
> A     I could guess for you.
> MR. HOWARD:  I have instructed the Witness not to guess.
> MR. BREWER:  All right, Chuck, knock it off.
> MR. HOWARD:  If he wishes to testify, he may do so.
> MR. BREWER:  Chuck, the Judge said not to do that garbage. Go ahead.  He
> knows he's not supposed to guess, you've already told him that about five times,[12] just
> because he uses that semantics.
> BY MR. BREWER:
> Q     Give me your best estimate.
> MR. HOWARD:  I object to these comments.
> MR. BREWER:  Yes, I know you do.
> MR. HOWARD:  I object to the question.

---

[12] While the witness had repeatedly used the word "guess" in his answers, see Rovella Depo. at 13/25; 14/2; 15/20; 16/17; 20/18; 20/25; 41/23; 49/2; 57/5; 94/7, up to this point in the transcript defending counsel had instructed the witness on the record on one occasion, in effect, not to guess. "Well, if he has a reasonable basis to testify, he'll answer." Id. at 25/33-34; see also id. at 16/15-16.  Defending counsel had otherwise properly and succinctly objected to the form of questions in which Attorney Brewer used the word "guess." See, e.g., id. at 29/22.

      MR. BREWER:  I object to this whole case.  Go ahead.  This whole corruption in this whole case.

      MR. BREWER:  What's that face for?

      MR. GOUMAS:  I looked at John, is that okay, Jim?

      MR. BREWER:  No, it isn't.

      MR. GOUMAS:  Okay, I'll keep my eyes on the paper.

      MR. BREWER:  That's right. You keep your eye on the paper.

      MR. GOUMAS:  Thanks

      MR. BREWER:  And quit acting like a 2-year old.

      MR. HOWARD:  These comments are  inappropriate.

      MR. BREWER:  Yes, I know.  Well, luckily, Chuck, you don't get to appoint the Judge in this case.

      MR. HOWARD:  Ask questions.

      MR. BREWER:  And she has a life tenure.

      THE WITNESS:  I couldn't give you an estimate, sir.

Rovella Depo. at 97/14-99/10.  Earlier in the same deposition, Attorney Brewer called an attorney "ridiculous" because he made an objection to a question.  Id. at 21/18-19("What is the objection, because you know what, you're ridiculous.").  At the Thomas deposition, where he threatened attorneys with contempt of court and insulted them, he wasted an enormous period of time because he wanted to question a witness about any prescription drugs the witness had ever taken.  In the course of his diatribe, Attorney Brewer insulted opposing counsel, apparently unprovoked by anything that attorney did at the time, by calling the attorney a "2-year old."  Thomas Depo. at 12/6-7; see also id. at 9/22-13/2.  Responding to an attorney who asked Attorney Brewer if he could "move on" because the question has been previously asked, Attorney Brewer retorted, "Don't start that garbage."  Reynolds Depo. at 96/21.

Attorney Brewer's conduct was perhaps most uncontrolled in the depositions of Lt. Stephen Hajdasz (see discussion, supra at p. 10-13) and Assistant United States Attorney James Glasser. The Glasser deposition is replete with Attorney Brewer's violations of the court's Orders. One of the more egregious is his demeaning treatment of an opposing counsel, who joins another attorney in an objection to comments of Attorney Brewer. In response, Attorney Brewer mockingly says, "Oh, Jill joins. Jill, who is a rookie, joins." Glasser Depo. at 142/4-5. When three attorneys move to strike the remark, including the attorney who is the target of the inappropriate comment, Attorney Brewer, rather than apologize, adds, "You are a rookie kid, . . . , because you haven't been in this case." Id. at 142/11-12 and 14-15.

Earlier in that same deposition, Attorney Brewer was obstructive and insulting to the witness. Attorney Brewer interrupted the witness's answer to the question of another attorney, claiming not to be able to hear the witness's answers. Another attorney suggested that Attorney Brewer could move to closer to the witness, as others could hear the witness fine. The witness then points out that there were 2 chairs closer to him. Id. at 92/21-22.

> THE WITNESS: Well, there are two chairs closer to me.
> MR. BREWER: Excuse me, Mr. Glasser, I'm not talking to you.
> THE WITNESS: No, you were talking to me.
> MR. BREWER: No, I'm talking to Chuck right now.
> THE WITNESS: You indicated --
> MR. BREWER: Stop right now.
> THE WITNESS: You indicated you couldn't hear me.
> MR. BREWER: You know, you're not in charge here. You're not in your courtroom. This is a deposition in Russo's case.

MR. HOWARD:  Let's remember --

MR. BREWER: So speak up so I can hear  you, okay?

MR. HOWARD:  Let's remember the Court's Order.

MR. BREWER:  I remember the Court's Order.

MR. HOWARD:  We'll go back to the question.

MR. BREWER:  That's why he's supposed to keep his mouth shut, too.

MR. HOWARD:  I believe you HAD interrupted Mr. Glasser --

MR. BREWER:  No, I didn't interrupt him, I couldn't hear.

MR. HOWARD:  -- in response to his answer.

MR. BREWER:  If you repeat his answer for me, Louise, I'd appreciate it when he mumbled something about Russo leaking.

(The last answer by the Witness was read by the Court Reporter.)

MR. HOWARD: If you'd like to finish your answer, please.

THE WITNESS:  That we weren't having any further dealings with Mr. Russo.

Id. at 92/24-94/11.

Attorney Brewer's conduct at the Glasser deposition was outrageous, provocative, and in blatant violation of the Orders of this court and Local Rule 16(g)(1).  In that deposition, defending counsel also seemed unmindful of, or chose to disregard, the court's Orders: he engaged in comments with Attorney Brewer outside the scope of what the court's Orders permitted.  In addition, he made two extremely inappropriate and unprofessional comments directed to Attorney Brewer, calling him an "a-hole" and stating that "no one has to put up with this horses--t."  Glasser Depo. at 131/15-16 and 23.  No matter how provoking Attorney Brewer's conduct was, and it was, this conduct was inappropriate.  The court notes, however, that this attorney apologized, on the record, to Attorney Brewer before the deposition ended.  Id. at 201/2-4.  In contrast, the court is aware of no apology by Attorney Brewer for any of his conduct at the depositions in this case.

During the deposition, before the outburst involving the attorney defending the deposition, the witness was being questioned by counsel who noticed the deposition. During that questioning, Attorney Brewer often interposed objections which had added commentary, in violation of the court's Orders. <u>See</u>, <u>e.g.</u>, Glasser Depo. at 101/12-15; 102/11-15; 102/24-25; 103/7-10; 103/19-21; 110/13-14; 124/8-11. Attorney Brewer then commenced his examination. Within a matter of minutes, in response to a question about the witness's authority, defending counsel said, "If you know." <u>Id.</u> at 129/6. This comment, which violated the court's Orders, seems to have been a trigger for Attorney Brewer, leading to a heated exchange with defending counsel, eventually resulting in the latter's inappropriate name calling. <u>See</u> <u>supra</u> at 18. At that point, Attorney Brewer got out of his chair and came around the very large conference table, to confront defending counsel in a threatening manner, repeatedly asking, "What did you call me?" <u>Id.</u> at 131/24 and 132/1. Attorney Brewer then made remarks such as, "I don't know who you think you are, you piece of dirt," and "Get your punk a__ out of here. Go back to New Hampshire." <u>Id.</u> at 132/20-21 and 11-12. At this point on the videotape, it is clear that Attorney Brewer is physically confronting the witness and his attorney, and threatening them, indeed, seemingly taunting them into a physical fight.[13]

---

[13] The transcript, not surprisingly, does not capture all that is said or any of the physical movements during this time period. The court here relies on the videotape.

Nothing opposing counsel did justifies or excuses Attorney Brewer's responsive conduct. His conduct was far removed from that required of a member of the federal bar, with a responsibility to represent his client professionally and to accord fellow members of the bar respect, even when they may not act appropriately.

## C. Plaintiff's Response

In response to the defendants' Motion for Sanctions, counsel for plaintiff (other than Attorney Brewer) filed a brief response. Opposition (Dkt. No. 378). In essence, this opposition argues that, because other attorneys violated the court's Orders, Attorney Brewer should not be sanctioned.[14] At the noticed hearing on the defendants' sanctions motion, plaintiff's counsel argued that Attorney Brewer should not be sanctioned because the deponents were uncooperative and evasive. Further, she argued that the depositions were "tense" situations, where Attorney Brewer "had to use whatever method" he could.

The court finds these arguments disturbing and frivolous. First, other counsel did occasionally put on the record more than what was strictly permitted under the court's Orders. If that is all Attorney Brewer had done, the court would have summarily denied the pending motion for sanctions. However, Attorney Brewer's conduct violated the court's Orders in a manner, and to a degree, unmatched by any other counsel. His conduct was

---

[14] Moving counsel in response correctly point out that plaintiff failed to cite to any place in the record where defense counsel violated the court's Orders. However, the court, having viewed and reviewed the depositions in question, is aware of instances where such violations by defense counsel occurred.

flagrant, extreme, and repeated.  He conducted himself as if the court had not addressed the issue of attorney and witness conduct at depositions, although he was quick to chastise other attorneys and witnesses when they made any comment beyond the strictures of the court's Orders.

The proffered justification that the atmosphere at these depositions was "tense" is analogous to that of the murderer of his parents who asks for mercy from the court because he is an orphan.  The depositions were tense because of Attorney Brewer's conduct.  It was he who inevitably began the unnecessary dialogue and hurled insults and threats at counsel and the witness.  To argue that Attorney Brewer was entitled to use "any device," even ones that violated the court's Orders and rules, suggests that we should return to trial by battle[15] in place of the rule of law and competent counsel.  This court will not accept the invitation of plaintiff's counsel to settle for the view that "anything goes" in litigation.  If only a tiny fraction of counsel in cases pending in this district were to emulate Attorney Brewer, "civil justice would be paralyzed."  "Ruling on Motion for Sanctions" (12/15/92)(Smith, M.J.) at 32, Utica Mutual Ins. Co. v. Denwat Corp., Civ. No. 2:91CV135 (AVC).

**D.  Legal Discussion**

The basis for sanctions in this case is violation of the court's Orders and the Local Rule.  Even though the Local Rules are authorized by Federal Rule of Civil Procedure 83,

---

[15]  Charles Rembar, The Law of the Land (Simon and Schuster 1980) at 110-111.

the court views the imposition of sanctions in this case generally as an exercise of its inherent power.  Generally, when imposing sanctions pursuant to its inherent power, a district court must make a specific finding that the sanction is in response to 1) the willful disobedience of a court order or 2) actions taken in bad faith vexatiously, wantonly, or for oppressive reasons.  Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991); see also Dawson v. United States, 68 F.3d 886, 895 (5th Cir. 1995); Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986).

In this case, where the bases for the sanctions sought are court Orders and a local rule, and the attorney's conduct was not undertaken for the client's benefit, sanctions may be justified absent any finding of bad faith, under the court's inherent power "'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'" U.S.A. v. Seltzer, 227 F.3d 36, 41 (2d Cir. 2000)(quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)); see also In re: Sanctions for Failure to Comply with a Court Order, 58 B.R. 560, 568 (D. Conn. 1985)(Cabranes, J.)(the court determined that "some finding that counsel's conduct constituted . . . bad faith may be necessary where the court is acting solely pursuant to its inherent authority but not where . . . the court also acts under a validly adopted rule of court").[16]  This situation is distinguishable from circumstances where there is

---

[16] The In Re: Sanctions court was applying formerly-numbered Local Rule 31, now Civil Rule 16(g)(1) of the Local Rules.

-22-

an allegation that the sanctioned attorney's violation of a court order or other misconduct was undertaken for the client's benefit.  Seltzer, 227 F. 3d at 42.

In addition, when sanctions against an attorney are under consideration, the attorney is entitled to appropriate due process.  In Seltzer, the Second Circuit vacated the decision of the district court because the "exact factual basis that the district court relied upon in imposing sanctions" was not apparent from the record.  227 F.3d at 42.  The court ordered that, on remand, the district court must provide Seltzer with "specific notice of conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on the matter," and the attorney must be "forewarned of the authority under which sanctions are being considered, and given a chance to defend [herself] against specific charges."  Id. (quoting 60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities, Inc.), 218 F.3d 109, 117 (2d Cir. 2000)).

Further, sanctions should not enter for "mistake, inadvertence or error of judgment." In re Sutter, 543 F.2d 1030, 1035 (2d Cir. 1976).  The conduct of Attorney Brewer cannot be described as any of these three.

While recognizing that sanctions should be applied with reservation, the court finds that they are appropriate in this case.  First, the conduct of Attorney Brewer described above was not undertaken for Mr. Russo's benefit and was in wilful and knowing violation of the

court's Orders, as well as the Local Rule.[17]

Second, Attorney Brewer was afforded notice and due process requirements. Unlike the attorney in Seltzer, who did not have an opportunity to respond to the imposition of sanctions with an awareness of the source of the authority for the sanctions or with knowledge of the standard governing imposition of sanctions, in this case Attorney Brewer was aware of Civil Rule 16(g)(1) of the Local Rules of the United States District Court for the District of Connecticut.[18] Additionally, the court issued Order I and Order II for the express purpose of prescribing appropriate conduct in the taking of depositions for the three cases before this court and Attorney Brewer had knowledge of those Orders. Both the Local Rule and the Orders gave Attorney Brewer specific notice that failure to conduct himself in accordance with those Orders or the Rule would result in sanctions.

Further, Attorney Brewer had notice of the defendant's Motion for Sanctions, in which defendants seek, inter alia, the costs of preparing their motion and court-ordered monetary sanctions. Def's' Memo. I at 30-31 (Dkt. No. 352). Defendants clearly rested

---

[17] Although the court does not have to find Attorney Brewer's actions to have been taken in bad faith in order to justify a sanction, the court does find they were. A party shows bad faith by disrupting the litigation or by hampering the enforcement of a district court order. Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991) (quoting Hutto v. Finney, 437 U.S. 678, 689 n.14 (1978)). Attorney Brewer did that here, and did so repeatedly, that the court can only conclude it was in bad faith.

[18] Admission to the bar of this court requires an affidavit by the applicant that, inter alia, he has "studied carefully . . . the Local Rules." Local Rule 83.1(b) (D. Conn). This requirement has been in the Local Rules since at least January 1, 1984. Attorney Brewer was admitted in 1993.

-24-

their Motion on the court's Order and the Local Rule.  Id. at 9 and 18.  The court held oral

argument on the Motion and then gave Attorney Brewer further notice of the court's

consideration of the entry of attorneys' fees and monetary sanctions.  See Order to Show

Cause (3/11/04)(Dkt. 471).  Thus, Attorney Brewer has had ample notice of the conduct

alleged to be sanctionable, the basis for any sanction, the sanction under consideration, the

court's consideration of sanctions, and he had an opportunity to be heard on the matter.

### E. Sanctions

The court determines that the most appropriate sanction is a monetary fine against

Attorney Brewer.  Surely his client should not be penalized for his counsel's behavior as

described above.  Indeed, the prompt and efficient disposition of Russo's cases has certainly

been hindered by his counsel's conduct.  Although an award of fees to defendants for the

cost of bringing the instant motion would appropriately compensate them, it is more the

integrity of this court in its supervision of the discovery process that has been harmed by

Attorney Brewer's conduct.  In discussing an award of fees as a proper sanction, the

Chambers Court stated that, "The imposition of sanctions in this instance transcends a

court's equitable power concerning relations between the parties and reaches a court's

inherent power to police itself, thus serving the dual purpose of 'vindicating judicial

authority without resort to the more drastic sanctions available for contempt of court . . . .'"

501 U.S. at 46 (quoting Hutto, 437 U.S. at 689 n.14).

There then remains the question of the appropriate amount.  Mindful that Attorney

Brewer practices in a small office and handles, <u>inter alia</u>, civil rights cases, and the fact that

defendants' counsel on some occasions violated the court's Orders, the court concludes that a

sanction in the amount of $5,000 is appropriate.  It pales in amount to the expense he

caused by his conduct.  Indeed, a much higher sanction would, in this court's view, be fully

justified and appropriate.[19]  However, the court concludes it is a sizeable sanction.  The fine

is intended to punish Attorney Brewer, and hopefully deter him in the future from

continuing to conduct himself as he did during depositions in this case.  However, if he fails

to be deterred, this court concludes that it would be important for any other court

considering his conduct to be aware of this Ruling.  <u>See</u> <u>generally</u>, <u>Roadway Express v.</u>

<u>Piper</u>, 447 U.S. 752, 763-765 (1980).  The court, therefore, orders him to file a copy of this

Ruling with any court which, in the next 10 years, considers a sanction against him for his

conduct at a deposition.

## II. CONCLUSION

The court in this District has generally been reluctant in the past to impose sanctions

upon attorneys.  Indeed, it is the undersigned's experience that attorneys infrequently seek

---

[19] Judge Cabranes, in imposing a $2,000 sanction on counsel for failing to produce
documents after the Bankruptcy Court ordered him to do so, surveyed sanctions then-recently
imposed in the District.  <u>In Re Sanctions</u>, 58 B.R. 560, 571 and n.18 (D. Conn 1985).  The
amounts there suggest that, even with modest inflation, a $5,000 sanction is appropriate, especially
when it is considered that those sanctions were imposed for conduct which appears to have been
less pervasive and ongoing than that of Attorney Brewer.

sanctions, and the court rarely grants them.  However, in these cases, there were difficulties early on in the deposition phase.  The court became involved, addressed counsel, and issued two written orders governing the taking of depositions and advising counsel of the consequences of failing to conduct themselves properly.  This was all done by the court in an effort to accomplish the fair and efficient completion of discovery in these cases.

Attorney Brewer violated those Orders and the Rules of this court in a manner and to a degree that the court would be unable to comprehend, but for the ability to observe his conduct on videotapes.  It is beyond the ability of this court to understand why Attorney Brewer has conducted himself as he has.  However, the court has the authority and discretion to sanction him, which it exercises.  Without a sanction in these cases, Attorney Brewer would consider himself free to harass, obstruct, and frustrate the conduct of litigation, adding large expense to the civil justice process for all parties, preventing the prompt resolution of cases, and engendering disrespect for the court.

Therefore, in these 3 consolidated cases, the court imposes upon Attorney James Brewer a monetary sanction of $5,000 (total), payable to the Clerk no later than June 1, 2004.  Further, it orders him to submit a copy of this Ruling to any court which, in the next 10 years, considers a sanction against him for his conduct at a deposition.

Accordingly, the defendants' Joint Combined Motion for Sanctions (Dkt. 351-2) is granted in part and denied in part.  The Clerk is further directed to docket various material relied on by the court as set forth supra, in footnotes 8 and 9.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 7th day of May, 2004.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

# APPENDIX A
## (Videotapes of Depositions)
### Russo v. City of Hartford
3-97-cv-2380 (JCH)
3-00-cv-2382 (JCH)
3-00-cv-1794 (JCH)

| DATE | DEPONENT | LOCATION |
|------|----------|----------|
| 6/28/02 | Nicholas Russo, Jr. (4 tapes) | Office of Shipman & Goodwin One American Row, Hartford |
| 8/6/02 | State's Attorney James E. Thomas (1 tape) | Office of Attorney General 110 Sherman St., Hartford |
| 8/28/02 | Lt. Stephen Hajdasz (3 tapes) | Office of Jim Brewer, Esq. 818 Farmington Ave., W. Hartford |
| 9/17/02 | Assistant U.S. Atty. James Glasser (2 tapes) | Office of Shipman & Goodwin One American Row, Hartford |
| 10/21/02 | Norberto Huertas (3 tapes) | No indication on tapes of location |
| 11/21/02 | Kevin Kline (4 tapes) | No indication on tapes of location |
| Various dates | **Excerpts** from depositions of Russo, Thomas, Hajdasz, Glasser & Huertas | |
| 9/4/03 & 9/5/03 | Excerpts from deposition of Nicholas Russo | |

# APPENDIX B

**(Deposition Transcripts  Submitted as Exhibits to Defendants'
Joint Combined Motion to Compel and for Sanctions [Dkt. No. 351 & 352])
and
Supplemental Memorandum [Dkt. No. 360]**

**Russo v. City of Hartford
3-97-cv-2380 (JCH)
3-00-cv-2382 (JCH)
3-00-cv-1794 (JCH)**

| DATE | DEPONENT | LOCATION |
|---|---|---|
| 6/28/02 | Nicholas Russo, Jr. (Volume II) | Office of Shipman & Goodwin One American Row, Hartford |
| 7/2/02 | Nicholas Russo, Jr. (Volume III) | Office of Shipman & Goodwin One American Row, Hartford |
| 6/28/02 | Excerpts from Nicholas Russo, Jr. deposition | |
| 9/17/02 | Assistant U.S. Atty. James Glasser | Office of Shipman & Goodwin One American Row, Hartford |
| 6/18/02 | Condensed Transcript of Sargent Christopher Lyons (Pages 1-8; pages 109-112) | Office of Shipman & Goodwin One American Row, Hartford |
| 6/18/02 | **Excerpts** from Christopher Lyons deposition | |
| 6/18/02 | **Excerpts** from Croughwell deposition | |
| 7/1/02 | **Excerpts** from Lilley deposition | |
| 7/3/02 | **Excerpts** from R. Lawlor deposition | |
| 7/16/02 | **Excerpts** from D. Kenary deposition | |

| | | |
|---|---|---|
| 7/17/02 | Excerpts from J. Rovella deposition | |
| 7/19/02 | Excerpts from R. Rudewicz deposition | |
| 7/30/02 | Excerpts from L. Reynolds deposition | |
| 8/8/02 | Excerpts from M. Braunsdorf deposition | |
| 8/16/02 | Excerpts from M. Castagna deposition | |
| 8/21/02 | Excerpts from R. Goodwin deposition | |
| 8/22/02 | Excerpts from L. Skinner deposition | |
| 8/27/02 | Excerpts from R. Clark deposition | |
| 8/27/02 | Excerpts from E. Maloney deposition | |
| 9/6/02 | Excerpts from M. Hall deposition | |
| 9/18/02 | Excerpts from A. Smith deposition | |
| 9/25/02 | Excerpts from J. Rovelli deposition | |
| 8/6/02 | Partial Deposition of James Thomas | Office of Attorney General<br>110 Sherman St., Hartford, CT |
| 8/28/02 | Lt. Stephen Hajdasz | Office of Jim Brewer, Esq.<br>818 Farmington Ave., W. Hartford |
| 10/21/02 | Norberto Huertas<br>(Pages 1-12 only) | Office of Jim Brewer, Esq.<br>818 Farmington Ave., W. Hartford |
| 11/21/02 | Special Agent Kevin Kline | U.S. Attorney's Office<br>970 Broad St., Newark, NJ |
| 11/21/02 | Excerpts from K. Kline deposition | |
| 11/19/02 | John Durham | Office of Shipman & Goodwin<br>One American Row, Hartford |

| 9/4/03 | Excerpts from Nicholas Russo deposition | |
| 9/5/03 | Excerpts from Nicholas Russo deposition | |

**APPENDIX C**
(Computer disks containing ASCII files
for depositions submitted pursuant to Court request)
Russo v. City of Hartford
**3-97-cv-2380 (JCH)**
**3-00-cv-2382 (JCH)**
**3-00-cv-1794 (JCH)**

| Date | Deponent |
|------|----------|
| 6/18/02 | Christopher Lyons |
| 6/24/02 | Joseph Croughwell |
| 6/28/02 | Nicholas Russo |
| 7/1/02 | Charles Lilley |
| 7/2/02 | Nicholas Russo |
| 7/3/02 | Robert Lawlor |
| 7/16/02 | David Kenary |
| 7/17/02 | James Rovella |
| 7/19/02 | Robert Rudewicz |
| 7/30/02 | Larry Reynolds |
| 8/6/02 | James Thomas |
| 8/8/02 | Mark Braunsdorf, M.D. |
| 8/16/02 | Mark Castagna |
| 8/21/02 | Robert Goodwin, M.D. |
| 8/22/02 | Lawrence Skinner |
| 8/27/02 | Eileen Maloney |
| 8/27/0/2 | Robert Clark |
| 8/28/02 | Stephen Hajdasz |
| 9/6/02 | Mark Hall, M.D. |
| 9/17/02 | James Glasser |
| 9/18/02 | Anna Smith |
| 9/25/02 | Jeff Rovelli |
| 10/21/02 | Norberto Huertas |