Albert was also disciplined for his alleged conduct, id. at ¶ 112, whereas Fago was not. Fago therefore cannot show that he was treated differently (for the worse) from any similarly situated officer, let alone because of his race.

Indeed, the undisputed evidence refutes Fago's claim that Marquis replaced him with African-Americans. In particular, the Chief of Police appoints Lieutenants from a list of eligible candidates ("Promotional List") and is required to make these appointments based on the candidate's ranking within the Promotional List. Id. ¶¶ 16, 116, 119, 120. On July 28, 2002, Marquis appointed four Lieutenants from a list of six eligible candidates: Daniel DePinto, Jr.; Daryl Roberts; Mark Rudewicz; and G. Malik Merritt. Id. ¶ 117. DePinto and Rudewicz are white, Roberts and Merritt are African-American. Id. On December 15, 2002, Marquis appointed Henry Martin, an African-American, from a list of three eligible candidates, two of whom were African-American and one of whom was white. Id. ¶ 121. There is therefore no support for Fago's Equal Protection claim, and Marquis, Jones, and Pawlina are entitled to summary judgment on Count One.[11]

### 2. Fago Also Cannot Show That Marquis, Jones or Pawlina Were Improperly Motivated or That They Acted Arbitrarily.

Even assuming arguendo that he could identify a similarly situated group, Fago cannot show that Marquis, Jones, and Pawlina "singl[ed him] out and discriminat[ed] against" him. (Compl. Count One ¶ 42). In particular, Fago cannot show that he was demoted for an improper reason.

---

[11] The racial composition of the group of Lieutenants Marquis appointed on May 27, 2001—the date on which Fago was appointed—also shows that Fago's claim is baseless. In particular, five of the six candidates selected, including Fago, were white and one was African-American. Id. ¶ 15; cf. Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2nd Cir 1997) (when the same person hires and later takes an adverse employment action against the plaintiff, "one cannot logically impute to that person an invidious intent to discriminate against the" plaintiff).) Here, Marquis appointed Fago and later recommended his demotion. It is therefore illogical and wrong to impute to Marquis "an invidious intent to discriminate against" Fago because he is white.

16

Fago testified that he does not know if Pawlina investigated him because he is white or if either Pawlina or Jones recommended his demotion for that reason. Defs.' 56(a)1 ¶ 88, 142. Although he claims that Marquis demoted him because he is white, (Fago Dep. Vol. III 307, App. A, Tab 3), <u>Fago also testified that he has no evidence that any of the defendants were motivated by his race</u>. Defs.' 56(a)1 ¶ 142; <u>cf.</u> Marquis Dep. Vol. I 43-44, App. D, Tab 5 (promotions and discipline not based on employee's race), 56 (denies Fago's demotion based on his race), Marquis Dep. Vol. II 38-40, App. D, Tab 6 (promotions based on HPD's promotional lists; race irrelevant); 78 (denies treating employees different based on race); Jones Dep. 107-08, App. B, Tab 4 (Marquis did not favor black officers in promotions), 118 (race not a factor in promotions), 121 (same). There is therefore no evidence that Marquis recommended that Fago be demoted because Fago is white.

Similarly, there is no evidence that Marquis recommended that Fago be demoted because of ill will or personal animosity. Indeed, Fago does not claim that Marquis, Jones or Pawlina were biased against him before the Stairwell Incident. Defs.' 56(a)1 ¶ 22; <u>cf. id.</u> at ¶ 23 (no confrontations with Jones before the Stairwell Incident); <u>id.</u> at ¶ 29 (Fago testified that he had a professional relationship with Pawlina before the Stairwell Incident and that he believed that Pawlina would conduct a fair and thorough investigation). Pawlina also took no action in connection with the prior complaint about Fago that he received from Rudewicz. <u>Id.</u> ¶ 20.

Instead, Fago was demoted because of what Marquis believed were his unsatisfactory human relations, or interpersonal skills, a conclusion with which Jones and Pawlina agreed. <u>Id.</u> ¶ 93—95. "Human Relations" is one of the three areas in which probationary employees, including probationary HPD Lieutenants, are evaluated. In particular, the City's probationary

17

employee performance evaluation states: "Ability to work in harmony with co-workers at all levels. Courtesy and patience required of all City Employees in dealing with the public." Id. ¶ 74. There is therefore no basis for Fago's equal protection claim and the Court should grant summary judgment in favor of Marquis, Jones, and Pawlina on Count One.

     **B.**    **The Police Defendants Did Not Create a Hostile Work Environment for Fago (Counts One and Two).**

Fago alleges, in both the First and Second Counts, that the "[d]efendants' actions promoted a hostile work environment for" him. (Compl. Count One ¶ 41, Count Two ¶ 9.) Although there is a cause of action under the Fourteenth Amendment's Equal Protection Clause for a hostile work environment, see, e.g., Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 143-44 (2nd Cir. 1993), Fago must show that his alleged harassment is based on his membership in a protected class, like race. See, e.g., Richardson v. Metro. Dist. Comm'n, Civ. Action No. 3:00-cv-1062(JCH), 2003 U.S. Dist. LEXIS 12757, at *9-10 (D. Conn. July 23, 2003), App. D, Tab 17; cf. Richardson v. New York State Dep't of Correction Serv., 180 F.3d 426, 440 (2nd Cir. 1999) ("It is axiomatic that a plaintiff "must produce evidence that he was discriminated against because of his race."). To do so "the workplace [must be] permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment." Howley v. Town of Stratford, 217 F.3d 141, 153 (2nd Cir. 2000) (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).

Here, Fago bases his hostile work environment claim on (1) the Police Defendants' failure to act on or inform superiors about documents that Fago claims refuted the claims against him ("Fago Documents") and (2) their allegedly false statements during their IAD interviews. Defs.' 56(a)1 ¶ 143.

18

Viewed objectively, Pawlina's decision to omit the Fago Documents from his Investigative Packet did not create a hostile work environment. Cf. Terry v. Ashcroft, 336 F.3d 128, 128 (2nd Cir. 2003) (test of whether alleged harassment was sufficiently severe or pervasive considers both objective and subjective perspectives). These documents were not included because they did not prove or disprove McClure's allegation about the Stairwell Incident or allegations by other HPD officers of Fago's harassing conduct, and Fago cannot prove otherwise. Defs.' 56(a)1 ¶¶ 62, 63. Similarly, Buyak, Miele, and Rudewicz's IAD statements were neither harassing nor abusive. Further, as discussed above, there is no evidence that any of the Police Defendants allegedly harassed Fago because of his race, or any other protected classification. Id. ¶ 142; cf. Compl. Count One ¶¶ 34-37 (alleging Police Defendants' acted because of Fago's race), Count Two ¶ 1 (incorporating Count One's allegations). The Police Defendants are therefore entitled to summary judgment on Counts One and Two insofar as they purport to state hostile work environment claims.

### C. Fago Received All the Process to Which He Was Entitled and Failed to Exhaust His Administrative Remedies (Count Two).

Fago next claims that Marquis, Jones, and Pawlina deprived him "of due process of law by demoting him to Sergeant without first reviewing his probation and based upon an incomplete investigation and false accusations." (Compl. Count Two ¶ 2; see also id. at Count Two ¶ 4 (alleging that defendants denied Fago "his procedural due process rights.") As a preliminary matter, however, the Court should dismiss this claim against Jones and Pawlina because it is undisputed that Marquis—and Marquis alone—had the authority to recommend the demotion of a probationary employee. Defs.' 56(a)1 ¶ 70.

19

1.   **Fago's Procedural Due Process Claim Must Fail Because He Received All the Process to Which He Was Due.**

Fago cannot prevail on his procedural due process claim because he received all the process to which he was entitled. "A procedural due process claim under the Fourteenth Amendment raises the questions of: (1) whether the plaintiff has a protected liberty [or property] interest; (2) what process was due to the plaintiff; (3) whether the plaintiff was provided with this constitutional minimum in the case under review." Alba v. Ansonia Bd. of Educ., 999 F. Supp. 687, 690 (D. Conn. 1998) (citing Narumanchi v. Board of Trustees, 850 F. 2d 70, 72 (2nd Cir. 1988)).

The Collective Bargaining Agreement between the City and the Union ("CBA") defines Fago's rights as a probationary Lieutenant. In particular, the CBA states that "no probationary employee in any promotional classification shall have access to the grievance procedure where the issue is one of their demotion." Defs.' 56(a)1 ¶ 7. Instead, the CBA provides that "[p]robationary status shall be as provided in the Personnel Rules and Regulations ("Personnel Rules")." Id. ¶ 8.

Rule IX of the Personnel Rules ("Rule IX") addresses HPD employees' probationary period. Chin Decl. ¶ 5, App. B, Tab 1; id. at Exh. A at Rule IX §§ 1-5.) In particular, Section 4 of Rule IX allows the Chief of Police to remove a probationary employee if "in his opinion" the employee will not or cannot continue to perform in the probationary rank or if the employee's "habits and dependability do not merit his [or her] continuance in the service." Id. ¶ 10. If the Chief does so, he must give the probationary employee both two weeks notice and a copy of his recommendation to the Director of Personnel. Id. ¶ 13

At the May 16, 2002 meeting at which he was demoted, Fago received copies of two May 15, 2002 memoranda that Marquis sent to Patricia Washington, the City's Personnel

20

Director. Id. ¶ 98. He also received pay as a Lieutenant through May 30, 2002. Id. ¶ 99. Fago therefore received all the process to which he was entitled and the Court should dismiss his procedural due process claim in Count Two.

### 2. Even If They Were Properly Stated, Fago's Other Procedural Due Process Claims Also Fail.

Even assuming arguendo that he properly stated a Fourteenth Amendment procedural due process claim, Fago cannot show that Marquis did not review his probation. (Cf. Compl. Count Two ¶ 2 (alleging that the defendants "demot[ed] him to Sergeant without first reviewing his probation and based upon an incomplete investigation and false accusations").) In particular, Pawlina based his recommendation on his findings of Fago's conduct during his probationary period, (Defs.' 56(a)1 ¶ 66), and Marquis based his decision principally on Pawlina's report. Id. ¶ 94. Before doing so, however, Marquis even considered whether to extend Fago's probationary period. Id. ¶ 89. There is therefore no support for Fago's allegation.

Fago also cannot show that Pawlina's investigation was materially incomplete. (Cf. Compl. Count One ¶ 28 (claiming that Pawlina and Jones "maliciously omitted pertinent witness statements and documents from their report."); id. at Count Two ¶ 2 (alleging that Pawlina's investigation was "incomplete"); see also Fago. Dep. Vol. II 238-40, App. A, Tab 2 (claiming that the Fago Documents should have been included).) Indeed, Fago concedes that Pawlina accepted the Fago Documents, (Fago Dep. Vol. I 70, App. A, Tab 1), and it is undisputed that Pawlina reviewed these documents. He did not include them in his Investigative Packet, however, because none of these statements or documents contains information about whether Fago intentionally made physical contact with McClure in the

21

Stairwell Incident,[12] Defs.' 56(a)1 ¶ 62; Pawlina therefore interpreted them as Fago's attempt to generally discredit McClure. Id. ¶ 63.

### D. Marquis, Jones, and Pawlina Did Not Violate Fago's Right to Substantive Due Process (Count Two).

Fago also alleges in Count Two that Marquis, Jones, and Pawlina violated his Fourteenth Amendment right to substantive due process. (Compl. Count Two ¶ 3.) Again, as described above, only Marquis could, and did, decide to recommend demoting Fago. Defs.' 56(a)1 ¶¶ 70, 93, 94. Jones and Pawlina are therefore entitled to summary judgment on Count Two because they did not make the decision to demote Fago. (Cf. Compl. Count Two ¶ 2 ("the defendants violated plaintiff's constitutional rights by depriving him of due process of law <u>by demoting him to Sergeant</u> without first reviewing his probation and based upon an incomplete investigation and false accusations") (emphasis added).)

"Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.'" Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2nd Cir. 1995) (internal citation omitted). "The protections of substantive due process are available only against egregious conduct which goes beyond merely 'offending some fastidious squeamishness or private sentimentalism' and can fairly be viewed as so 'brutal and offensive

---

[12] These documents also do not contradict the statements that Buyak, Rudewicz, Miele, and others gave to IAD investigators about Fago's alleged prior acts of harassment and intimidation or contain information showing that any of the Police Defendants harassed Fago following the Stairwell Incident. (Cf., e.g., Fago Dep. Vol. I 113, App. A, Tab 1 (Fago doesn't know who put a note reading "Beat up any girls lately? Fuck you asshole" in his mailbox), Fago Dep. Vol. III 310, App. A, Tab 3 (Fago testified "I don't know if they did" in response to a question asking whether he had "any facts or knowledge to indicate that . . . Marquis, Jones, Pawlina, Jones, Buyak, Miele, Rudewicz prepared or delivered any of" the notes put in his mailbox).) The Fago Documents are therefore immaterial to Pawlina's investigation.

22

to human dignity' as to shock the conscience." Smith v. Half-Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 173 (2nd Cir. 2002) (internal citation omitted).

"To establish a violation of either substantive or procedural due process, [a] plaintiff must initially show [he] was deprived of a property or liberty interest." Parsons v. Pond, 126 F. Supp. 2d 205, 215 (D. Conn. 2000) (internal citation omitted) aff'd 25 Fed. Appx. 77 (2nd Cir. 2002) cert. denied by 537 U.S. 881 (2002). Further, "where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing those claims.'" Russo v. City of Hartford, 184 F. Supp. 2d 169, 184 (2002) (citing Albright v. Oliver, 510 U.S. 266, 273 (1994)).

Nothing about Marquis' decision to recommend Fago's demotion shocks the conscience. The undisputed facts show that the decision whether a probationary HPD employee successfully completes his or her probationary service is entirely within the Chief of Police's discretion. Defs.' 56(a)1 ¶ 70. Human relations, or interpersonal skills, were among the criteria on which Fago's probationary performance was to be evaluated. Id. ¶ 74. As discussed above, Marquis decided to recommend Fago's demotion based on an investigation by and the recommendations of his subordinates. In particular, Pawlina's investigation revealed claims that Fago had physically bumped into, harassed or otherwise intimidated several HPD officers, including during Fago's probationary service as a Lieutenant. Id. ¶¶ 64-66. Pawlina concluded that these claims were credible, including McClure's concerning the Stairwell Incident, id. ¶ 66, and recommended that Fago not continue as a Lieutenant. Id. ¶ 68. Marquis drew his own conclusions, based on the totality of the circumstances and Fago's apparent pattern of harassing and/or intimidating conduct, id. at ¶ 94, as well as Pawlina's

conclusion, see id., and exercised his discretion in recommending Fago's demotion. The Court should therefore dismiss Fago's substantive due process claim in Count Two.

Moreover, even assuming arguendo that he had properly stated such a claim, Fago's Complaint shows that each of Marquis, Jones, and Pawlina's alleged acts discussed below support a claim under other explicit Constitutional protections, specifically the First Amendment and the Fourteenth's Amendment's equal protection and procedural due process clauses. (See Compl. Count One ¶¶ 34-37 (Fourteenth Amendment) Count Three ¶ 2 (First Amendment). Under Albright, therefore, the Court should not evaluate these claims under the "more generalized notion of substantive due process." Id.

Moreover, even if it did, Pawlina's investigation was not materially incomplete. Even assuming arguendo that Pawlina's investigation was somehow incomplete, this too fails to support a substantive due process claim. First, Fago cannot show that Pawlina maliciously omitted the Fago Documents. Second, none of these documents addressed the Stairwell Incident, contradicted claims about Fago's other alleged acts of harassment and intimidation or connected the Police Defendants to alleged acts of retaliation and harassment against Fago. Rather, the documents were of unknown origin or designed to discredit McClure. Omitting such documents was not incorrect or ill advised, let alone conscious shocking. Fago's substantive due process claim must therefore fail.

### E. The Police Defendants Did Not Retaliate against Fago in Violation of His First Amendment Rights (Count Three).

The Police Defendants are also entitled to summary judgment on Fago's First Amendment retaliation claim because the undisputed facts show either that the Constitution does not protect his conduct or that there is no causal connection between his purportedly protected activities and his demotion.

24

Fago claims that he sought redress through and was thereafter retaliated against for (1) a 1996 sexual harassment complaint against McClure, (2) a May 15, 2002 grievance, and (3) this lawsuit. Defs.' 56(a)1 ¶ 144. Fago cannot, however, show that the Police Defendants denied him his right to seek redress, to associate or to testify in other lawsuits. (Cf. Compl. Count Three ¶ 2) (alleging denial of rights to seek redress, associate, and testify).

A public employee must support his First Amendment retaliation claim by showing, by a preponderance of the evidence, that: "(1) his [activity] was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his [activity] and the adverse employment determination against him, so that it can be said that his [activity] was a motivating factor in the determination." Gorman-Bakos v. Cornell Cooperative Extension, 252 F.3d 545, 553 (2nd Cir. 2001).[10]

### 1. Fago's Efforts to Seek Redress Were Solely Personal and There Is No Evidence of Retaliation by the Police Defendants.

Fago's claimed efforts to seek redress cannot support his First Amendment retaliation claim because they did not involve a matter of public concern and he cannot show any connection between his alleged efforts to seek redress and any action by the Police Defendants. "Whether employee speech addresses a matter of public concern must be determined by the content, form and context of a given statement." Russo v. City of Hartford, 184 F. Supp. 2d 169, 183 (D. Conn. 2002) (quoting Rankin v. McPherson, 483 U.S. 378, 384-85 (1987)). "The Second Circuit has held that, even if speech touches on a matter of public concern, it will not be protected if 'the employee's motive for the speech is private and personal.'" Id. (quoting Blum v. Schlegel, 18 F.3d 1005, 1012 (2nd Cir. 1994). "The determinative question is whether that

interest arises from the speaker's status as a public citizen or from the speaker's status as a public employee." Id.

Fago's efforts to seek redress, including his 1996 complaint against McClure and his May 15, 2002 complaint against Carlson, were entirely personal. The Constitution does not protect such actions. In particular, Fago testified that he has filed between 50 and 70 grievances against either the City or HPD during his career and all of them were personal in nature. Defs.' 56(a)1 ¶ 145. For example, his 1996 sexual harassment complaint concerned only McClure's allegedly mispronouncing his last name as "Fag-o", id. at ¶ 147, and his May 15, 2002 grievance concerned only Carlson's allegedly "unprofessional, demeaning, and embarrassing" announcement about Fago at a daily roll call. Id. ¶ 148.

There is also no evidence of retaliation by the Police Defendants. Indeed, Fago testified that he did not know how separate incidents involving Buyak and Rudewicz "related to the filing of the complaint against McClure in 1996." Id. ¶ 149. In fact, Marquis thereafter appointed Fago to the rank of Lieutenant. Similarly, Carlson is not a defendant in this case, and Fago cannot show that any of the Police Defendants were involved in Carlson's announcement.

This lawsuit is also entirely personal. Here, Fago challenges his demotion, the internal HPD investigation on which it was based, and the defendants' allegedly harassing conduct. (Compl. Count One ¶¶ 25, 30, Count Two ¶ 9, Count Three ¶ 7; see also Fago Dep. Vol. I 141, App. A, Tab 2 ("[W]e are going to trial, so other people can" conclude that Fago had not intentionally made physical contact with McClure during the Stairwell Incident).) Further,

---

[10] Courts apply the same test to First Amendment retaliation claims based on either the exercise of free speech or a petition to the government for redress. See e.g., Heil v. Santoro, 147 F.3d 103, 109-110 (2nd Cir. 1998); White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2nd Cir. 1993).

26

Fago filed this lawsuit <u>after</u> both his demotion and Pawlina's recommendation that Fago be disciplined for the Stairwell Incident and Fago was never actually disciplined. <u>See id.</u> at ¶¶ 93, 103, 104. Fago's retaliation claim must therefore fail insofar as it is based on his efforts to seek redress.[13]

### 2. Fago Cannot Prevail on His Claim That the Police Defendants Denied Him His First Amendment Right to Association.

Fago's retaliation claim must also be dismissed insofar as he claims that the Police Defendants denied him his First Amendment right to association. (<u>Cf.</u> Compl. Count Three ¶ 2.) The First Amendment protects two forms of association: expressive and relational. <u>Roberts v. United States Jaycees</u>, 468 U.S. 609, 617-18 (1984); <u>see also</u> <u>Adler v. Pataki</u>, 185 F.3d 35, 42 (2nd Cir. 1999). Expressive associations are those supporting the exercise of First Amendment rights to speech, assembly, petition for redress of grievances, and the exercise of religion. <u>See, e.g., Oliver v. Cutler,</u> 968 F. Supp. 83, 89 (E.D.N.Y. 1997). Relational associations include marriage, childbirth, raising and educating children, and living with relatives. <u>Bd. of Dirs. Rotary Int'l v. Rotary Club</u>, 481 U.S. 537, 545 (1987).

Here, Fago cannot show that the Police Defendants denied him his right to associate, or even identify the persons with whom he was allegedly prevented from associating. (Fago. Dep. Vol. III 312-14, App. A, Tab 3.) At most, the undisputed facts show that his duty assignment limited his interaction with fellow HPD employees—a situation that does not violate the First Amendment. <u>Cf.</u> <u>Russo v. City of Hartford</u>, 184 F. Supp. 2d 169, 183 (D. Conn. 2002)

---

[13] Similarly, the Police Defendants' allegedly unfair investigation and Pawlina's allegedly improper failure to include the Fago Documents in his Investigative Packet cannot support Fago's retaliation claim. (<u>Cf.</u> Fago Dep. Vol. 311-12, App. A, Tab 3) (denial of right to seek redress based on alleged failure to have "fair and objective investigation" and to "submit for command review the reports that would exonerate [Fago].") Both claims involve Fago's demotion, which is not a matter of public concern and involves only Fago's status as a public employee.

(Constitution does not protect plaintiff's conduct as public employee). The Court should therefore dismiss Fago's claims in Count Three.

### 3. The Police Defendants Did Not Retaliate against Fago for His Testimony in Other Lawsuits.

Similarly, Fago cannot show a causal connection between his demotion and his testimony in other lawsuits. In particular, Fago claims that in 1999 or 2000 he testified for the plaintiff in Murdock v. City of Hartford and that his testimony was harmful to the City. Defs.' 56(a)1 ¶ 151. Marquis, however, was unaware of Fago's testimony, id. at ¶ 152, and Fago testified that he has no evidence that the Police Defendants retaliated against him because of this testimony. Id. ¶¶ 153, 154.

Fago further claims that he testified on the City's behalf in Armador v. City of Hartford, which is also known as the "Sergeants' Case." Id. ¶ 155. None of the Police Defendants, however, were plaintiffs in that case. Id. ¶ 156. The only bases for his claim that the Police Defendants retaliated against him for this testimony are Jones' alleged friendship with Russell, Jones' prior relationship with McClure, and Jones' prior assignment as Jobes' supervisor. Id. ¶ 157. Fago further alleges that these relationships motivated Marquis to recommend his demotion. (Fago Dep. Vol. I 163-64, App. A, Tab 1.) He cannot show, however, that Jones influenced or directed Pawlina's investigation, see id. at 164-65, or that Marquis was influenced by these relationships. Id. at 175-78; Defs.' 56(a)1 ¶ 94, 158; cf. Marquis Dep. Vol. I. 75, 103, App. D, Tab 5 (Fago demoted based on totality of circumstances of alleged harassment, intimidation, pattern of behavior), 123 (Marquis had no agenda for which to retaliate against Fago); Marquis Dep. Vol. II 34-36, App. D, Tab 6 (Fago demoted based on pattern of conduct). Moreover, it is illogical that Marquis, Jones or Pawlina, as members of the HPD command staff, would retaliate against Fago for his testimony in the Sergeants' Case

because that testimony was <u>favorable</u> to the HPD. (Compl. Count Three ¶ 5; Fago Dep. Vol. I 157, App. A, Tab 1.)

Fago also alleges that he "is a witness in <u>Russo v. City of Hartford, et al.</u>, Docket #'s [sic] 3:97CV02380, 3:00CV01794, and 3:00CV02382 [("<u>Russo</u> cases")]." Defs.' 56(a)1 ¶ 160. Fago, however, first testified at a deposition in the <u>Russo</u> cases in either September or October 2003—almost one and a half years after his demotion. <u>Id.</u> ¶ 161. Not only could the Police Defendants not have retaliated against him in 2002 for his 2003 deposition testimony, but Fago has no evidence that any of the Police Defendants thereafter learned that he was a named witness in the <u>Russo</u> cases. <u>Id.</u> ¶ 162; <u>cf.</u> Marquis Dep. Vol. I 127, App. D, Tab 5 (unaware that Fago was a witness in <u>Russo</u> cases). Fago therefore cannot show that the Police Defendants retaliated against him.[14]

### 4. The Police Defendants Also Did Not Retaliate against Fago for Filing This Lawsuit.

The Court should also dismiss Count Three because Fago cannot show that the Police Defendants retaliated against him for filing this lawsuit. For example, although Fago claims that Pawlina recommended that he be disciplined after Fago filed this lawsuit, (<u>see</u>, <u>e.g.</u>, Fago Dep. Vol. I 131, App. A, Tab 1), it is undisputed that Pawlina stated in his April 25, 2002 report that he would recommend that Fago be disciplined for the Stairwell Incident, and that he then did so on June 20, 2002. Defs.' 56(a)1 ¶ 71, 101.

Similarly, although he claims that he was retaliated against through proposed transfers on July 15 and 25, 2003 to "Patrol/Booking" and Communication, respectively, (Compl. Count

---

[14] Although Fago also testified for the plaintiff in <u>Stack v. City of Hartford et al.</u> No. 3:01cv260(JBA) (Fago Dep. Vol. IV 586-90, App. A, Tab 4), the only purported retaliation or harassment he identified was Jones' allegedly staring at him in a federal courthouse and later saying good morning as they passed each other in a hallway at HPD headquarters. <u>Id.</u> at 603-04. These claims do not rise to the level of a Constitutional violation and therefore cannot support Fago's retaliation claim.

Three ¶¶ 7(b), (c)), Fago concedes that he was not actually transferred on either date, Defs.' 56(a)1 ¶ 163, and testified that he did not consider the July 25, 2002 proposed transfer to be a threat. Id. ¶ 164. These proposed transfers were not adverse employment actions[15] and Fago cannot show that Marquis, Jones or Pawlina's involvement in these decisions, if any, was retaliatory.[16] See, e.g., Savino, 199 F.3d at 932 n.8. Finally, Fago has no evidence that the Police Defendants were involved in making or distributing the allegedly harassing notes or other acts following the Stairwell Incident. Defs.' 56(a)1 ¶ 166. The Court should therefore dismiss Count Three.

### F. The Police Defendants Are Entitled to Qualified Immunity (Counts One, Two, and Three).

Even assuming arguendo that there were evidence supporting his allegations, the Police Defendants are qualifiedly immune. Qualified immunity shields government officials from the burden of trivial lawsuits and protects them from liability for civil damages when they are sued in their personal capacity as a result of their discretionary acts. Lennon v. Chief William P. Miller of Troy, 66 F.3d 416, 420 (2nd Cir. 1995) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In particular, government officials are protected in their discretionary acts "insofar as

---

[15] See Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2nd Cir. 2001) ("We have defined adverse employment action broadly to include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand [in addition to certain] lesser actions."); cf. Mormol v. Costco Wholesale Corp., Docket No. 03-7409, 2004 U.S. App. LEXIS 6472, at *10-12 (2nd Cir. Apr. 8, 2004) (citing with approval, in considering hostile work environment claim, Savino v. C.P. Hall Co., 199 F.3d 925, 932 n.8 (7th Cir. 1999) (stating that "[a] tangible employment action has to cause a substantial detriment to the plaintiff's employment relationship," and that "reassignment to a comparable office is neither sufficiently adverse nor significant")), App. D, Tab 17; Scott v. Bell Atlantic Mobile, 98 Civ. 7245 (LMM), 2002 U.S. Dist. LEXIS 6357, at *17 (S.D.N.Y. Apr. 10, 2002) (same), App. D, Tab 17.

[16] Fago similarly cannot base his First Amendment retaliation claim on his early 2004 transfer to HPD's Booking Division for two reasons: (1) he has no evidence that his reassignment was motivated by his lawsuit, (cf. Defs.' 56(a)1 ¶ 165); and (2) his transfer to a comparable position was therefore not an adverse employment action. Savino, 19 F.3d at 932 n.8.