of lieutenant. Id.; Pawlina Dep. 244, App. D, Tab 8 (officers made reports "all independent of each other, all at various different times . . . none of them having any real connection with each other.").

67.    While he could not "determine[] absolutely" that Fago intentionally shoved McClure with enough force to knock her pocketbook from her shoulder, Pawlina concluded in his report that, "put together with all the other reported incidents, it clearly shows a continued pattern of harassing and intimidating conduct on the part of Lt. Fago, and I believe the incident set forth by Lt. McClure did occur, and was intentional." Id. at ¶ 6; id. at Exh. A at Pawlina 121.

68.    In the Investigative Packet, Pawlina recommended that Fago receive an unsatisfactory final probationary performance evaluation and that he not be allowed to continue as a Lieutenant. Id.

69.    Pawlina based his recommendation on his findings of Fago's conduct during his probationary period. Pawlina Dep. 231-32, 242, 259, App. D, Tab 8.

70.    The ultimate decision whether to recommend that Fago, a probationary employee, be demoted belonged to the Chief of Police, Marquis. Marquis Deposition Transcript, April 3, 2003 ("Marquis Dep. Vol. I") at 65, App. D, Tab 5;[3] Jones Dep. 117, App.

---

[3] The deposition transcripts of Bruce Marquis are attached in Appendix D. The transcripts are as follows: Vol. I – April 3, 2002; Vol. II – September 12, 2003.

D, Tab 4; Carlson Dep. 47, 48, 188, App. D, Tab 7; see also Chin Decl. ¶ 5, App. B, Tab 1; id. at Exh. A (Personnel Rules & Regs).

71.     In his Investigative Packet, Pawlina indicated that he would also prepare disciplinary charges against Fago concerning the Stairwell Incident.  Pawlina Decl. ¶ 6, App. C, Tab 1; id. at Exh. A at Pawlina 121.

### Fago's Second Interim Probationary Performance Evaluation

72.     Rule IX of the City's Personnel Rules and Regulations requires supervisors to complete interim and final probationary employee performance evaluations.  Chin Decl. ¶ 5, App. B, Tab 1; id. at Exh. A at Rule IX.3.

73.     Exhibit B to the Declaration of Joyce Chin of the City's Personnel Department is a true and accurate copy of the second interim probationary employee evaluation ("Second Interim Evaluation") as it appeared when Fago first received it on May 16, 2002.  Id. at ¶ 6; id. at Exh. B.

74.     One of the categories on which probationary employees are evaluated is his or her "[a]bility to work in harmony with co-workers at all levels.  Courtesy and patience required of all City Employees in dealing with the public."  Id.

75.     On March 22, 2002, Pawlina initially rated Fago's performance as satisfactory for the period ending February 22, 2002 on the Second Interim Evaluation.  Pawlina Dep. 240,

App. D, Tab 8; cf. Jones Dep. 169, App. D, Tab 4 (Jones received Interim Evaluation showing satisfactory rating).)

76.    Pawlina did so despite the investigation he had started but not yet finished because the Stairwell Incident occurred after February 22, 2002—the end of the period to which the Second Interim Evaluation applied.  Pawlina Dep. 241, App. D, Tab 8.

77.    Pawlina forwarded the Second Interim Evaluation to Jones who, on April 2, 2002, rated Fago as needing improvement.  Chin Decl. ¶ 6, App. B, Tab 1; id. at Exh B; Jones Dep. 162-64, App. D, Tab 4.

78.    As Pawlina's superior, Jones was entitled to rate Fago differently than Pawlina had.  Marquis Dep. Vol. II 72-73, App. D, Tab 6; Pawlina Dep. 264, App. D, Tab 8; cf. Carlson Dep. 178, App. D, Tab 7 (permissible to amend evaluation forms if new information learned since evaluation initially completed).

79.    Marquis signed the Second Interim Evaluation on April 2, 2002.  Chin Decl. ¶ 6, App. B, Tab 1; id. at Exh. B; Jones Dep. 177, App. D, Tab 4.

80.    Sometime between April 2 and 25, 2002, Pawlina concurred with Jones' rating after learning of Fago's allegedly harassing and intimidating conduct during period of time corresponding to the Second Interim Evaluation.  Pawlina Dep. 242, 246, 259-60, 263, App. D, Tab 8.

81.    Instead of completing a new evaluation form to show that he, too, believed Fago's performance needed improvement, Pawlina showed his agreement with Jones' rating by 1) crossing out the "X" he had put in the Second Interim Evaluations "satisfactory" box on March 22, 2002 and 2) writing his initials "M.P." next to the "X" Jones put in the "needs improvement" box on the Second Interim Evaluation. Chin Decl. ¶ 6, App. B, Tab 1; id. at Exh. B; Pawlina Dep. 267-68, App. D, Tab 8.

82.    Pawlina decided to use the same form, instead of completing a new evaluation form, "because we didn't want to hide anything. We didn't want to take this form, throw it out. . . [both he and] Jones felt it was important to use this form to show what exactly had happened and why it happened." Pawlina Dep. 267-68, App. D, Tab 8.

83.    Fago did not receive a copy of the Second Interim Evaluation indicating that his performance was satisfactory; the only version he received reflected that Pawlina and Jones had rated his performance as needing improvement. Fago Deposition Transcript, August 7, 2003 ("Fago Dep. Vol. II") 242, 243, App. A, Tab 2; Fago Deposition Transcript, January 22, 2004 ("Fago Dep. Vol. III") 256, App. A, Tab 3.

84.    Carlson wrote "see the April 25, 2002 memo from Capt[.] Pawlina to [Assistant Chief] Jones and attachments" on the Second Interim Evaluation. Declaration of Robert Carlson ("Carlson Decl.") ¶¶ 4, 5, App. D, Tab 3; Carlson Dep. 160, App. D, Tab 7; Chin Decl. ¶ 6, App. B, Tab 1; id. at Exh. B.

19

85.    Carlson's writing on the Second Interim Evaluation was intended to respond to its instruction that a reviewer should use a separate sheet if necessary to explain the basis for an unsatisfactory rating.  Carlson Decl. ¶ 5, App. D, Tab 3; Chin Decl. ¶ 6, App. B, Tab 1; id. at Exh. B.

### Consideration of Fago's Probationary Performance

86.    Marquis discussed Fago's possible demotion with his senior staff—Jones, Assistant Chief William Reilly ("Reilly"), Assistant Chief Lester McCoy, ("McKoy") and Rae Ann Palmer ("Palmer"), a civilian who was then responsible for, among other things, HPD's youth initiatives and was Fago's immediate supervisor.  Reilly Dep. 20, 23, App. D, Tab 10; Palmer Deposition Transcript ("Palmer Dep.) 9, 30-31, 32, 37-38, App. D, Tab 12.

87.    Based on Pawlina's Investigative Packet, Jones recommended to Marquis that Fago not pass his probationary period.  Jones Dep. 93, 94-97, 146, App. D, Tab 4.

88.    Fago testified that he does not know if Pawlina investigated him because he is white or if either Pawlina or Jones recommended his demotion for that reason.  Fago Dep. Vol. III  306-07, App. A, Tab 3.

89.    Marquis discussed with Palmer and Elizabeth Dunn of the City's Personnel Office the possibilities of demoting Fago or proposing to extend his probationary period. Palmer Dep. 44, App. D, Tab 12; Dunn Deposition Transcript ("Dunn Dep.") at 33-34, App. D, Tab 11.

## May 16, 2002 Meeting Regarding Fago's Demotion

90.     Exhibit G to the Declaration of Colleen Kenton is a true and accurate copy of the final City of Hartford Probationary Employee Evaluation ("Final Evaluation") contained in Fago's HPD Personnel file.  Kenton Decl. ¶ 29, App. B, Tab 1; id. at Exh. G.

91.     Exhibit H to the Declaration of Colleen Kenton is a true and accurate copy of a letter dated May 15, 2002 from Marquis to Fago ordering Fago to attend a May 16, 2002 meeting and contained in Fago's HPD Personnel file.  Id. at ¶ 30; id. at Exh. H.

92.     On May 15, 2002, Jones and Pawlina completed the Final Evaluation indicating that Fago's performance needs improvement.  Id. at ¶ 29; id. at Exh. G.  Also on May 15, 2002, Marquis wrote to Fago, ordering him to attend a May 16, 2002 meeting.  Id.

93.     During the May 16, 2002 meeting among Marquis, Jones, Carlson, Fago, and the Union President, Marquis told Fago that Marquis had determined that Fago's probationary performance was unsatisfactory and that he was returning Fago to his rank of Sergeant.  Fago Dep. Vol. III 256, 265-70, App. A, Tab 3.

94.    Marquis recommended Fago's demotion based on the totality of the circumstances and a pattern of alleged harassing and/or intimidating conduct by Fago.  Marquis Dep. Vol. I 75, App. D, Tab 5, 103; Marquis Dep. Vol. II 34-36, App. D, Tab 6.

95.    Pawlina and Jones agreed with Marquis' conclusion to recommend Fago's demotion. Pawlina Decl. ¶ 8, App. C, Tab 1; Jones Dep. 94-97, 146, App. D, Tab 4; Carlson Dep. 55, 59, App. D, Tab 7.

96.    Exhibit R to the Declaration of Colleen Kenton is a true and accurate copy of a May 16, 2002 letter from Marquis to Fago, stating in part that Fago would receive Lieutenant pay through May 30, 2002.  Kenton Decl. ¶ 38, App. B, Tab 2; id. at Exh. R.

97.    Exhibits I and J to the Declaration of Colleen Kenton are true and accurate copies of two memoranda dated May 15, 2002 from Marquis to the City's then-Personnel Director, Patricia Washington ("Washington"), recommending Fago's demotion.  Id. at ¶ 31; id. at Exhs. I, J.

98.    At the May 16, 2002 meeting, Fago received copies of two May 15, 2002 memoranda that Marquis sent to Washington.  Fago Dep. Vol. III 270-71, App. A, Tab 2.

99.    Fago received pay as a Lieutenant through May 30, 2002.  Kenton Decl. ¶ 38, App. B, Tab 2; id. at Exh. R.

**Pawlina's Recommended Discipline of Fago**

100.    Exhibit B to the Declaration of Acting Chief and then-Captain Pawlina is a true and accurate copy of the recommended discipline form, or Form 90, that Pawlina prepared in connection with the Stairwell Incident.  Pawlina Decl. ¶ 9, App. C, Tab 1; id. at Exh. B.

101.    On June 20, 2002, Pawlina submitted a HPD recommended discipline form, or Form 90, to Jones, who approved of and forwarded it to Reilly.  Id.; Jones Dep. 211-13, App. D, Tab 4; Calderone Dep. 70, App. D, Tab 9.

102.    By submitting a Form 90, Pawlina initiated HPD's disciplinary process, focused solely on McClure's allegation involving the Stairwell Incident, which was separate from the decision about whether Fago had successfully completed his probationary service.  Reilly Dep. 37-38, 46, App. D, Tab 10; Jones Dep. 187-88, App. D, Tab 4; Calderone Dep. 35, 77, 163-64, 189, 209, App. D, Tab 9.

103.    Fago was not disciplined in connection with the Stairwell Incident.  Calderone Dep. 223, App. D, Tab 9.

104.    On July 11, 2002, Fago filed his original complaint in this case.  Compl. Count Three ¶ 6.

105.    To support his equal protection claim that he was treated differently because he is white, Fago claims that the following HPD officers were similarly situated: "Lt. Antonio Cancel; Off. Tracey Carter; Det. Baez/F. Ortiz; Lt. Jose Lopez; Off. Nestor Caraballo; Capt. Buyak; Sgt. O'Donnell; Acting Chief Rudewicz; Dep. Chief Casati; Lt. Kemmett; Sgt. Cherniak; Capt. Jesse Campbell; Assist./Chief Vega; Assist/Chief McKoy; Det. Lawlor/Edelwich." Fago Dep. Exh. 9 at no. 9, App. D, Tab 14.

106.    Fago also claims that four other African-American HPD officers—John Jones, Paul West ("West"), Chris White ("White"), and Lieutenant Henry Martin ("Martin")—were similarly situated. Fago Deposition Transcript, February 4, 2004 ("Fago Dep. Vol. IV") at 508, 551-52, 575-77, 581, 598-99, App. A, Tab 4.

107.    At the time of his demotion, Fago, a white male, was a probationary Lieutenant. Compl. Count One ¶ 35.

108.    Marquis recommended Albert's demotion around the same time as he recommended that Fago be demoted. Compl. Count One ¶ 35; Chin Decl. ¶ 8, App. B, Tab 1; id. at Exh. D; Marquis Dep. Vol. I 82, App. D, Tab 5; Carlson Dep. 45, App. D, Tab 7; Jones Dep. 101, App. D, Tab 4.

109.    Exhibit K to the Declaration of Colleen Kenton is a true and accurate copy of a City of Hartford Probationary Employee Performance Evaluation appearing in Albert's HPD personnel file. Kenton Decl. ¶ 32, App. B, Tab 2; id. at Exh. K.

110.    Albert, during his probationary service at the rank of Lieutenant, reported to Captain Heslin. Kenton Decl. ¶ 32; id. at Exh. K.

111.    Exhibit C to the Declaration of HPD Advocate Lieutenant Andrew Nelson is a true and accurate copy of a Letter of Notification/Routine Process dated May 10, 2002 from HPD Lieutenant Dennis Dowd to Jones regarding discipline affecting Albert. Declaration of Andrew Nelson ("Nelson Decl."") ¶ 7, App. C, Tab 2; id. at Exh. C.

112.    Albert was disciplined for taking newspapers from a Hartford convenience store, reading them, and returning them without paying for them. Id. at ¶¶ 7, 8; id. at Exh. C.

113.    Buyak, O'Donnell, Rudewicz, Casati, Kemmett, Cherniak, Lawlor, and Edelwich are white. C. Kenton Decl. ¶¶ 11—16, 20, 21, App. B, Tab 2.

114.    After Fago's demotion, Marquis promoted both white and black Sergeants to the rank of Lieutenant. Fago Dep. Vol. III 303, App. A, Tab 3.

115.    Exhibit B to the Declaration of Colleen Kenton is a true and accurate copy of the Certification List from which Marquis appointed HPD Lieutenants on July 28, 2002 ("July 28, 2002 Certification List"). C. Kenton Decl. ¶ 23, App. B, Tab 2; id. at Exh. B.

116.    Pursuant to City of Hartford and HPD policy and practice, Marquis reviewed the list of eligible Sergeants on the July 28, 2002 Certification List and appointed them to the rank of Lieutenant based on their order of appearance on the Certification List: he would select or

not select the first individual listed, continuing down the list, until he had appointed a number

of individuals equal to the number of positions available.  Carlson Decl. ¶¶ 6,7, App. D, Tab 3.

117.    On July 28, 2002, Marquis appointed four Lieutenants from a list of six eligible

candidates: Daniel DePinto, Jr.; Daryl Roberts; Mark Rudewicz; and G. Malik Merritt.  Id. at ¶

23; id. at Exh. B.  DePinto and Rudewicz are white, Roberts and Merritt are African-American.

Id. at ¶ 23.

118.    Exhibit C to the Declaration of Colleen Kenton is a true and accurate copy of the

Certification List from which Marquis appointed HPD Lieutenants on December 15, 2002 .  Id.

at ¶¶ 24, 25; id. at Exh. C.

119.    Pursuant to City of Hartford and HPD policy and practice, Marquis reviewed the

list of eligible Sergeants on the July 28, 2002 Certification List and appointed them to the rank

of Lieutenant based on their order of appearance on the Certification List: he would select or

not select the first individual listed, continuing down the list, until he had appointed a number

of individuals equal to the number of positions available.  Carlson Decl. ¶¶ 6,7, App. D, Tab 3.

120.    Pursuant to City of Hartford and HPD policy and practice, Marquis reviewed the

list of eligible Sergeants ("Certification List") and appointed them to the rank of Lieutenant

based on their order of appearance on the Certification List: he would select or not select the

first individual listed, continuing down the list, until he had appointed a number of individuals

equal to the number of positions available.  Id.

121.    On December 15, 2002, Marquis appointed Henry Martin, an African-American, to the rank of Lieutenant from a list of three eligible candidates, two of whom were African-American and one of whom was white.  Kenton Decl. ¶¶ 24, 25, App. B, Tab 2; id. at Exh. C.

122.    At the time of Fago's demotion, Pawlina, Jones, and Marquis were Fago's supervisors.  Compl. Count One ¶ 14; Fago Dep. Vol. III 308-09, App. A, Tab 3.

123.    Cancel, Carter, Baez, Ortiz, Lopez, Caraballo, and Campbell did not serve in probationary ranks under Chief Marquis.  C. Kenton Decl. ¶¶ 5—10, 17, App. B, Tab 2.

124.    Fago alleges that Vega used slurs relating to other officers' sexual orientation.  Fago Dep. Vol. II 226-27, App. A, Tab 2.

125.    McKoy allegedly passed through a tollbooth without paying a toll.  Marquis Dep. Vol. I 140-44, App. D, Tab 6.

126.    Vega and McKoy completed probationary periods in the rank of Assistant Chief of Police under Marquis.  C. Kenton Decl. ¶¶ 18, 19, App. B, Tab 2.

127.    Fago testified that he has no evidence that Vega or McKoy's allegedly similar acts occurred or that they occurred during their probationary periods.  Fago Dep. Vol. II 226-27, App. A, Tab 2.

128.    Exhibits L and M to the Declaration of Colleen Kenton are true and accurate copies of the job descriptions for the ranks of HPD Lieutenant and Assistant Chief, respectively.  C. Kenton Decl. ¶ 33, App. B, Tab 2; id. at Exhs. L, M.

129.    West and White are probationary police officers, and John Jones is a police cadet.  Fago Dep. Vol. IV 598-99, App. A, Tab 4.

130.    Exhibit C to the Declaration of Acting Chief and then-Captain Mark Pawlina is a true and accurate copy of the  Memorandum dated April 1, 2004, with attachments, from Pawlina to McKoy concerning the issuance of discipline to John Jones.  Pawlina Decl. ¶ 10, App. C, Tab 1; id. at Exh. C.

131.    John Jones' allegedly similar conduct is backing a HPD car into another vehicle. Fago Dep. Vol. IV 551, App A, Tab 4.

132.    John Jones received an oral reprimand for this incident.  Pawlina Decl. ¶ 10, App. C, Tab 1; id. at Exh. C at 2.

133.    West's allegedly similar conduct was spitting on a Windsor Lieutenant's unmarked police car and stating that he would lie under oath to help his sister defend a murder charge.  Fago Dep. Vol. IV 508, 551, App. A, Tab 4; Marquis Dep. Vol. II 178, App. D, Tab 6.

134.    Exhibit B to the Declaration of Lieutenant Andrew Nelson is a true and accurate copy of a memorandum dated July 22, 2003 from HPD Captain Neil Dryfe ("Dryfe"),

Commander of HPD's IAD, to Marquis concerning an alleged incident involving West. Nelson Decl. ¶ 6.

135.    Dryfe found that West had spit on a Windsor Lieutenant's unmarked police car. Id. at ¶ 6; id. at Exh. B; Exh B at 57 ("ALLEGATION: SUSTAINED"); see also id. at ¶ 5; cf. Fago Dep. Vol. IV 552, App. A, Tab 4 (West was suspended for 30 days).

136.    Exhibit C to the Declaration of Joyce Chin is a true and accurate copy of Officer Paul West's Interim Probationary Employee Performance Evaluation, with an attachment, as such evaluation exists in the files of the City's Personnel Department. Chin Decl. ¶ 7, App. B, Tab 1; id. at Exh. C.

137.    Exhibit A to the Declaration of Lt. Neil Dryfe is a true and accurate copy of the memorandum dated December 1, 2003 from Marquis to Dryfe regarding and HPD IAD investigation involving White. Declaration of Neil Dryfe ("Dryfe Decl.") ¶ 5, App. D, Tab 1; id. at Exh. A.

138.    HPD's IAD is currently investigating the incident leading to White's November 30, 2003 arrest involving an alleged domestic dispute. Id. at Exh. A.

139.    Fago alleges that Martin's similar conduct is his use of sick leave during his probationary period. Fago Dep. Vol. IV 576-577, App. A, Tab 4.

29

140.    Exhibit N to the Declaration of Colleen Kenton is a true and accurate copy of an interim City of Hartford Probationary Employee Performance Evaluation appearing in Martin's HPD personnel file.  C. Kenton Decl. ¶ 34, App. B, Tab 2; id. at Exh. N.

141.    Martin received an unsatisfactory interim probationary employee evaluation for using 31 sick days during a seven-month period.  Id.

142.    Fago testified that he has no evidence that any of the defendants were motivated by his race.  Fago Dep. Vol. IV 600-01, 602-03, App. A, Tab 4.

143.    Fago bases his hostile work environment claim on (1) the Police Defendants' failure to act on or inform superiors about documents that Fago claims refuted the claims against him ("Fago Documents") and (2) their allegedly false statements during their IAD interviews.  Fago Dep. Vol. III 308-10, App. A, Tab 3.

144.    Fago claims that he sought redress through and was thereafter retaliated against for (1) a 1996 sexual harassment complaint against McClure, (Compl. Count Four ¶ 5(a)), (2) a May 15, 2002 grievance, id. at Count One ¶ 29, and (3) this lawsuit.  Id. at Count Three ¶ 6.

145.    Fago testified that he has filed between 50 and 70 grievances against either the City or HPD during his career and all of them were personal in nature.  Fago Dep. Vol. I 25-26, App. A, Tab 1.