146. Exhibit O to the Declaration of Colleen Kenton is a true and accurate copy of a 1996 harassment complaint filed by Fago. C. Kenton Decl. ¶ 35, App. B, Tab 2; id. at Exh. O.

147. Fago's 1996 sexual harassment complaint concerned only McClure's allegedly mispronouncing his last name as "Fag-o." Id.

148. Fago's May 15, 2002 grievance concerned only Carlson's allegedly "unprofessional, demeaning, and embarrassing" announcement about Fago at a daily roll call. Compl. Count One ¶ 29.

149. Fago testified that he does not know how separate incidents involving Buyak and Rudewicz "related to the filing of the complaint against McClure in 1996." Fago Dep. Vol. III 346, App. A, Tab 3.

150. Fago testified that he filed the present lawsuit so other people would conclude that he had not intentionally made physical contact with McClure during the Stairwell Incident. Fago Dep. Vol. I 141, App. A, Tab 1.

151. Fago claims that in 1999 or 2000 he testified for the plaintiff in Murdock v. City of Hartford and that his testimony was harmful to the City. Fago Dep. Vol. I 8-9, 150-51, App. A, Tab 1; Fago Dep. Vol. II 281, App. A, Tab 2.

152. Marquis was unaware of Fago's testimony in Murdock v. City of Hartford. Marquis Dep. Vol. I 127, App. D, Tab 5.

153. Fago testified that he has no evidence that the Police Defendants retaliated against him because of this testimony. Fago Dep. Vol. I 154-55, App. A, Tab 1.

154. Fago does not know whether Marquis, Jones or Pawlina read the transcripts of his either deposition or trial testimony in the Murdock case. Id. at 14-15.

155. Fago claims that he testified on the City's behalf in Armador v. City of Hartford, which is also known as the "Sergeants' Case." Fago Dep. Vol. I 156, App. A, Tab 1; Fago Dep. Vol. II 215-16, App. A, Tab 2.

156. None of the Police Defendants was a plaintiff in Armador. Cf. Fago Dep. Vol. I 156, 159, 175, App. A, Tab 1 (defendants Jobes and Russell were plaintiffs in the Sergeants Case).

157. The only bases for Fago's claim that the Police Defendants retaliated against him for his testimony in Armador are Jones' alleged friendship with Russell, Jones' prior relationship with McClure, and Jones' prior assignment as Jobes' supervisor. Fago Dep. Vol. I 159-64, App. A, Tab 1.

158. Fago has no evidence that Jones' alleged friendship with Russell, Jones' prior relationship with McClure, and Jones' prior assignment as Jobes' supervisor influenced Marquis. Fago Dep. Vol. I 175-78, App. A, Tab 1.

159. Fago testified that he has no evidence that Jones influenced or directed Pawlina's investigation. Fago Dep. Vol. I 164-65, App. A, Tab 1.

160. Fago claims that he "is a witness in Russo v. City of Hartford, et al., Docket #'s [sic] 3:97CV02380, 3:00CV01794, and 3:00CV02382 [("Russo cases")]." Compl. Count One ¶ 20.

161. Fago first testified at a deposition in the Russo cases in either September or October 2003. Fago Dep. Vol. III 378-79, App. A, tab 3.

162. Fago testified that he has no evidence that any of the Police Defendants thereafter learned that he was a named witness in the Russo cases. Id. at 337-38.

163. Fago was not transferred on either July 15 or 25, 2002. Id. at 335.

164. Fago testified that he did not consider the July 25, 2002 proposed transfer to be a threat. Id. at 332-33.

165. Fago's early 2004 transfer was based on a HPD reorganization placing Fago's former subordinates under HPD's district commanders. Pawlina Dep. 19-22, App. D, Tab 8.

166. Fago testified that he has no evidence that the Police Defendants were involved in making or distributing allegedly harassing notes or other acts following the Stairwell Incident. Fago Dep. Vol. I 113, App. A, Tab A; Fago Dep. Vol III 310, App. A, Tab 3.

167. Fago testified that he does not know whether he filed a complaint with the EEOC or the Connecticut Commission on Human Rights and Opportunities ("CHRO"), and his counsel stipulated that "there is nothing filed with the EEOC or CHRO for [Fago's] sexual harassment retaliation" or racial complaints. Fago Dep. Vol. III 339-40, App. A, Tab 1.

168. Tab 3 to Appendix B hereto is a true and accurate copy of the City Charter in effect during 2001 and 2002. See Letter from Daniel M. Carey, Town and City Clerk, certifying accompanying copy of City Charter, App. B, Tab 3.

169. Although Marquis was vested with the authority to effect personnel decisions and administer discipline, he was not delegated with final policy-making authority in the personnel area. Id. at Ch. X § 2.

170. Marquis's powers as Chief were expressly limited by the scope of the Charter of the City (the "Charter"). Id.

171. The Charter vests final policy-making authority regarding the organization, the conduct, and the operation of all City departments (including the creation of personnel policy) with the City Council. Id. at Ch. I § 14.

172. Chapter XVI Section 12 of the Charter provides that "no person in the classified service of the city or seeking admission thereto shall be appointed, promoted, reduced, removed or in any way favored or discriminated against because of his race, his national origin or his political or religious opinions or affiliations." Id. at Ch. XVI § 12.

173.  Chapter XVI Section 2(e) of the Charter grants the Director of Personnel the authority to "prepare and recommend to the personnel board rules to carry out the provisions of this chapter." Id. at Ch. XVI § 2.

174.  The City's Personnel Board is granted the authority to adopt or amend rules recommended by the Director. Id. at Ch. 16 § 5(b).

175.  The Charter withholds from the Chief of Police the power to create policy with respect to employment decisions. In particular, Chapter X, Section 2 provides:

> The chief of police shall ... subject to the provisions of Chapter XVI of this charter ... appoint and remove all other officers and employees of the department. He shall assign all members of the department to their respective posts, shifts, details and duties. He shall make rules and regulations, in conformity with the ordinances of the city, concerning the operation of the department and the conduct of all officers and employees thereof.

Id. at Ch. X § 2 (emphasis added).

176.  Exhibit P to the Declaration of Colleen Kenton is a true and accurate copy of the City's Affirmative Action and Equal Employment Opportunity Policy. Kenton. Decl. ¶ 36, App. B, Tab 2; id. at Exh. P.

177.  In recommending to the Personnel Director that Fago be returned to the rank of sergeant, Marquis was also bound by the anti-discrimination provisions embodied in the policy statements embodied in the City's Affirmative Action and Equal Employment Opportunity Policy and the Personnel Rules. Id. at ¶¶ 27, 36; Exhs. E, P.

178. The City's Affirmative Action and Equal Employment Opportunity Policy states that "it is the policy of the City of Hartford ... to uniformly apply criteria for recruitment, selection, assignment, evaluation, compensation, promotion, discipline and other personnel actions without regard to race, color, sex, religion, national origin, age, mental or physical disability, sexual orientation, marital status or ancestry." Id. at ¶ 36, App. B, Tab 2; id. at Exh. P.

179. Personnel Rule XIV(4) provides that "[n]o person in the classified service of the City or seeking admission thereto shall be favored or discriminated against in any way because of his race, color, national origin, marital status or political or religious opinions." Chin Decl. ¶ 5, App. B, Tab 1; id. at Exh. A at Rule XIV(4).

180. On March 31, 2004, this Court dismissed the plaintiff's claims against the City and various police officials in Perodeau v. City of Hartford, Case No. 3:99-cv-807 (AHN). Ruling on Summary Judgment, Perodeau v. City of Hartford, Case No. 3:99-cv-807 (AHN), App. D, Tab 15.

181. On April 27, 2004, the Connecticut Supreme Court affirmed the judgment of the trial Court setting aside a jury verdict in favor of the plaintiff, John Murdock, and rendering judgment for the defendant notwithstanding the verdict. Murdock v. Croughwell, SC 16987, April 27, 2004, App. D, Tab 16.

182. Nicholas O. Russo, Jr. has three lawsuits currently pending against the City of Hartford and various police officials. Russo v. City of Hartford, Civil No. 3:97-cv-2380, Russo

36

v. Bailey, Civil No. 3:00-cv-1794(JCH), and Russo v. Marquis, Civil No. 3:00-cv-2382(JCH). Summary judgment motions are pending in all three cases. See Court Docket.

183.   Fago's intentional infliction of emotional distress claim is actually against Buyak, Miele, and Rudewicz only. See Nov. 22, 2002 Pl.'s Resps. To City's/Defs.' First Set of Interrogs. ("Fago's Interrogatory Responses") No. 11, App. D, Tab 14.

184.   Fago bases his defamation claim against the Police Defendants on Buyak, Rudewicz, and Miele's IAD statements. Compl. Count Six ¶ 3; App. D, Tab 14 (Fago's Interrogatory Responses No. 11).

185.   Fago saw Dr. Mark Hall, a psychologist, six times between June and November 2002. This is the only treatment Fago sought for his claimed emotional distress. Fago Dep. Vol. II 229, App. A, Tab 2.

186.   Exhibit A to the Declaration of Gregg Goumas contains true and accurate copies of medical records received from Dr. Mark Hall pursuant to an authorization to release medical information signed by Fago. Declaration of Gregg Goumas ("Goumas Decl.") ¶¶ 4, 5, App. D, Tab 2; id. at Exh. A.

187.   Over the course of their six sessions, Dr. Hall described Fago's apparent and reported symptoms as "mild". Id. at ¶ _; id. at Exh. A at Hall 3-4. He also noted that Fago did not "report symptoms of significant depression [or] suicidal thoughts," and that Fago had,

because of his "changing schedule[,] some long-standing sleep problems." Id. at Exh. A at Hall 3.

188. Before his demotion, Fago saw Dr. Kenneth Selig, a psychiatrist, in response to Marquis' order that Fago undergo a fitness for duty examination. Fago Dep. Vol. II 273-74, App. A, Tab 2.

189. Exhibit B to the Declaration of Gregg Goumas contains true and accurate copies of portions of medical records received from Dr. Kenneth Selig pursuant to an authorization to release medical information signed by Fago. Goumas Decl. ¶¶ 6, 7, App. D, Tab 2; id. at Exh. B.

190. Dr. Selig observed that there was no "evidence of major mental illness . . . [or] depression, or undue anxiety." Id. at Exh. B at Selig 12.

191. The only bases for Fago's defamation claim are that "each defendant made statements to [IAD investigators] that [Fago] was intimidating, harassing and physically threatening." Compl. Count Six ¶ 3; Fago Dep. Vol. III 354-57, 367-68, App. A, Tab 3.

DEFENDANTS, CITY OF HARTFORD,
BRUCE MARQUIS, KEVIN JONES,
MARK PAWLINA, JOSEPH BUYAK, MARK
RUDEWICZ AND STEPHEN MIELE

By: _____
Charles L. Howard
Federal Bar No. CT 05366
Gregg P. Goumas
Federal Bar No. CT 19095
Derek L. Mogck
Federal Bar No. CT 23688
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103-2819
Tel: (860) 251-5000
Fax: (860) 251-5599

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing Local Rule 56(a)1 Statement was mailed via first class mail, postage prepaid, on this 30th day of April, 2004, as follows:

James S. Brewer, Esquire
Erin O'Neil, Esquire
818 Farmington Avenue
West Hartford, CT 06120

Joseph W. McQuade, Esquire
Jennifer L. Dixon, Esquire
Kainen, Escalera & McHale, P.C.
21 Oak Street, Suite 601
Hartford, CT 06106

With Chambers Copy to:

The Honorable Alan H. Nevas
Chambers
United States District Court
915 Lafayette Blvd.
Bridgeport, CT 06604

Derek L. Mogck

369596 v.02