**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **MICHAEL J. FAGO** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **3:02CV1189 (AHN)** |
| **v.** | : | |
| | : | |
| **CITY OF HARTFORD, ET AL.** | : | |
| **Defendants.** | : | **AUGUST 6, 2004** |
| _____ | : | |

### PLAINTIFF'S LOCAL RULE 56(a)2 STATEMENT IN  RESPONSE TO STATEMENT BY CITY OF HARTFORD, BRUCE MARQUIS, KEVIN JONES, MARK PAWLINA, JOSEPH BUYAK, MARK RUDEWICZ AND STEPHEN MIELE (POLICE DEFENDANTS)

Pursuant to Local Civil Rule 56(a)1 of the United States District Court for the District of Connecticut, defendants City of Hartford ("City"), Bruce Marquis, Kevin Jones, Mark Pawlina, Joseph Buyak, Mark Rudewicz, Stephen Miele (the "Police Defendants") respectfully submit this Statement of Facts Not in Dispute in support of their Motion for Summary Judgment.

1.      Admit.

2.      Deny in part.  Admit that over fifteen years ago the plaintiff was involved in a physical confrontation with another officer, but the defendant's transcript citation does not include any facts concerning the fact that the other officer was unconscious.  Instead, it

demonstrates that the other officer struck Fago in the head with a radio.  Deposition of Michael

Fago at 20-21("Fago Dep.")(Exh. 1).

3.    Admit.


4.    Admit.


5.    Denied.  On May 27, 2001, Fago began a probationary period at the rank of

Lieutenant, the exact duration of the period was never communicated to him. Affidavit of

Michael Fago at ¶ 4 ("Fago Affid.")(Exh. 6). See also Rule IX §2 of the City of Hartford's

Personnel Rules and Regulations (Exh. 8); Fago Dep. at 165-168 (Exh. 1).


6.    Admit.


7.    Admit.


8.    Admit.


9.    Admit.

10.     Admit.

11.     Admit.

12.     Admit.

13.     Admit in part. Plaintiff admits that this is the policy but denies that plaintiff received two week notice, in fact, plaintiff was notified of the demotion the day it was effective. On that date plaintiff lost all responsibilities and duties related to the position of lieutenant.  In fact, the date Fago was notified was less than two weeks prior to the end of a yearly probationary period.  Fago Affid. at ¶ 11 (Exh. 6).

14.     Admit.

15.     Admit.

16.     Denied.  Marquis did not describe this process in his deposition, instead he describes personality traits and other standards such as loyalty, professionalism, and

communication skills that lead to his decision on who to promote to lieutenant. 4/3/03

Deposition of Bruce Marquis at 15: 5-22 ("Marquis Dep.")(Exh. 11).

17.     Deny.  Marquis became chief on or about December 2000 at which time the

plaintiff and Albert were not probationary employees.  Affidavit of Daniel Albert at ¶3 ("Albert

Affid."); Fago Affid. at ¶12.

18.     Admit.

19.     Deny. Rudewicz wrote a memorandum containing such allegations, but denies

their validity.  Fago Dep. at 310:4 (Exh.1).  "I have been close to people.  I have hummed.  I

have walked by people closely.  Nothing of this was in attempt to harass other[s]…just in the

course of life" Id. at 65:12-18.

20.     Admit no action was taken. Deny that it was a report.

21.     Admit.

### The February 25, 2002 Stairwell Incident

22.     Deny.  Defendants have misconstrued this passage, in which Fago states that he does not know whether or not they were biased against him.   Fago Dep. at 44, 47-49 (Exh. 1).

23.     Deny.  Defendant's characterization of this passage is patently incorrect. In this excerpt Fago describes several incidents and disagreements with Jones. Id. at 41-44, 591.

**Pawlina's Investigation**

24.     Admit in Part.  McClure wrote this memorandum. Deny the false allegations therein: "I remember accidentally the two of us, myself and Lieutenant McClure, bumping into each other in the hallway." Id. at 67:1-4.  Scott Sansom witnessed the incident and "did not believe the contact was intentional." Id. at 109:17-24. It was nothing of any significance, nothing different than if you pass someone in a grocery store in an aisle" Id. at 409:16-18. Detective Zemienieski, who witnessed the incident said he did not witness the bag being knocked off of her shoulder, and also said he believed that it was not in anyway purposeful. Memo from Pawlina to Vega (COH 403)(Exh. 12).

25.     Admit in part.  Plaintiff does not recall the force of the brush-like contact was enough to knock McClure's handbag off of her shoulder. Fago Dep. at 448:16-19. "It was nothing of any significance, nothing different than if you pass someone in a grocery store in an

aisle" Id. at 409:16-18.  Detective Zemienieski, who witnessed the incident said he did not

witness the bag being knocked off of her shoulder, and also said he believed that it was not in

anyway purposeful.  Memo from Pawlina to Vega (COH 403)(Exh. 12).

26.    Deny, McClure's allegations. See generally Transcript of Fago's Interview by

Pawlina at 4-6 ("Fago/Pawlina Trans.")(Exh. 17).

27.    Admit.

28.    Deny,  McClure's allegations. Fago took the precaution of having Sgt. Kevin

Martin with him.  Sgt. Martin agreed that he had eye contact with Fago throughout this alleged

event and did not witness the events alleged by McClure.  Fago/Pawlina Trans. at 4 (Exh. 17).

See also Martin Report attached to Fago Memo to Pawlina (Exh. 15)(COH 569-70).  In

addition, plaintiff admits that Pawlina wrongfully expanded the scope of the investigation

beyond the false accusations regarding the Stairwell incident; however, plaintiff denies that

Rudewicz and McClure's actions were independent of each other, or that Pawlina had sufficient

reason to expand the investigation based merely on McClure's false accusations. Pawlina

Investigative Packet at COH 306-307 (Exh. 13); Fago/Pawlina Trans. at 13-14 (COH 387-

8)("[t]hey obviously talked to each other")(Exh. 17).

29.     Deny, that the plaintiff believed Pawlina conducted a fair investigation after receiving Pawlina's Investigative Packet. "I don't know what Captain Pawlina was doing with that investigation. That investigation is so deplorable and incomplete.  I don't know what he's doing" Fago Dep. 306:25-307:3.


30.     Deny.  It is unclear what is being asserted in this paragraph. Deny further, see Police Defendants Statement Not In Dispute # 33.


31.     Pawlina did not conduct his investigation pursuant to this policy. Fago Affid. at ¶6 (Exh. 6).  Furthermore, Pawlina violated the *Garrity* Rights by propounding vague and ambiguous questions instead of the required narrowly tailored questioning. Id. at 13. Plaintiff admits that Pawlina performed an investigation with the help of IAD staff, but denies the fact that the HPD's anti-harassment policy gave him this authority.  Anti-Harassment Policy (Exh. 24).

32.     Admit.


33.     Admit.


34.     Deny, McClure's allegations. Fago/Pawlina Trans. 4-6 (Exh. 17).

35.     Admit.

36.     Admit in part.  Plaintiff admits that Pawlina made this claim, but denies that his stated reasons were sufficient for the expansion of this investigation beyond its scope in violation of the Garrity rules. Deposition of Mark Pawlina at 67-68, 86 ("Pawlina Dep.")(Exh. 14); Fago/Pawlina Trans. at 5 (COH 379)(Exh. 17).

37.     Admit in part.  Plaintiff admits that interrogatories are a standard HPD investigative tool used by the IAD.  Deny, interrogatories are to be narrowed to specific direct questions and are not to be vague and overreaching in scope.  Pawlina improperly sent out overreaching and broad questions. Richard Calderone Deposition Transcript at 21 ("Calderone Dep.")(Exh. 7).

38.     Admit, these questions are overbroad in violation of the Garrity rules. Id.

39.     Admit in part.  Plaintiff admits that Jobes and Miele made these reports, but denies the validity of their statements. Fago/Pawlina Trans. at 6-8 (Exh. 17).

40.     Deny.  Even specifically states that he did not witness any of these incidents, and reports them only as hearsay.  Pawling Investigative Packet at COH 350-353 (Exh. 13).

41.     Admit.

42.     Admit.

43.     Admit.

### IAD Interviews

44.     Admit in part. Plaintiff admits that Rudewicz made these statements but denies the validity of the allegations therein. Fago/Pawlina Trans. at 6 (Exh. 17). Fago Dep. at 309:25-310:7 (Exh. 1).

45.     Admit.

46.     Admit in Part. Plaintiff admits that Rudewicz made these statements but denies the validity of the allegations therein. Fago/Pawlina Trans. at 4-6 (Exh. 17); See also Fago Dep. at 309:25-310:7 (Exh. 1).

47.     Admit in Part. Plaintiff admits that Rudewicz made these statements but denies the validity of the allegations therein. Fago/Pawlina Trans. at 4-6 (Exh. 17); <u>See also</u> Fago Dep. at 309:25-310:7 (Exh. 1).

48.     Admit in Part. Plaintiff admits that Buyak made these statements but denies the validity of the allegations therein. Fago Dep. at 309:8-12. ("That's totally ridiculous and absurd")(Exh. 1). The plaintiff was in a dating relationship with Buyak's sister and would not speak about her in t hat manner. Fago Affid. at ¶ 14 (Exh. 6).

49.     Admit in Part. Plaintiff admits that Buyak made these statements but denies the validity of the allegations therein. <u>Id</u>. at 65:12-18 ("I have been close to people.  I have hummed. I have walked by people closely.  Nothing of this was in attempt to harass other[s]…just in the course of life").

50.     Admit in Part. Plaintiff admits the Buyak made these statements but denies the validity of the allegations therein. <u>Id</u>. at 309:8-12 ("That's totally ridiculous and absurd").

51.     Admit in Part. Plaintiff admits the Miele made these statements but denies the validity of the allegations therein.  Id. at 65:12-18, 309:17-20.

52.     Admit in Part. Plaintiff admits the Miele made these statements but denies the validity of the allegations therein.  Id. at 65:12-18, 309:17-20.

53.     Admit in Part. Plaintiff admits the Miele made these statements but denies the validity of the allegations therein.  Fago/Pawlina Trans. at 8 (Exh. 17).

54.     Admit in Part. Plaintiff admits the Russell made these statements but denies the validity of the allegations therein.  Id. at 9-11. Fago Dep. at 396:12-398:8 (Exh. 1).

55.     Admit in Part. Plaintiff admits the Jobes made these statements but denies the validity of the allegations therein. Fago/Pawlina Trans. at 11, 7 ("Pat Jobes is a liar")(Exh. 17) .

56.     Admit in Part. Plaintiff admits the Jobes made these statements but denies the validity of the allegations therein.  Id. at 11, 13-14 ("Jobes has an ulterior motive").

57.     Admit in Part. Plaintiff admits the Jobes made these statements but denies the validity of the allegations therein. Id. at 11, 13-14 ("Jobes has an ulterior motive").

58.    Admit in Part. Plaintiff admits the McClure made these statements but denies the validity of the allegations therein.  At the time of the alleged parking lot incidents, Fago took the precaution of having Sgt. Kevin Martin with him.  Sgt. Martin agreed that he had eye contact with Fago throughout this alleged event and that the events alleged by McClure did not occur.  Fago/Pawlina Trans. at 4 (Exh. 17). See also Martin Report attached to Fago Memo to Pawlina (Exh. 15)(COH 569-70).

59.    Admit.

60.    Admit.

**Pawlina's Report**

61.    Admit.

62.    Denied.  Pawlina excluded exculpatory evidence.  The omission of exculpatory evidence, including the other interrogatory responses from the investigative package was a serious violation of IAD protocol as well as improper and unethical. Calderone Dep. at 24-25, 49 (Exh. 7).  See also Fago Dep. at 306:25-307:3 ("That investigation is so deplorable and

incomplete"); 308:19-23 ("He wasn't looking to do an impartial investigation.  He certainly did not present all the facts")(Exh. 1).

63.     Deny.  Fago Affid. at ¶¶ 6, 7, 8, 13.(Exh. 6).  Calderone found a lot of "mistakes and errors and problems with" Pawlina's investigation. Calderone Dep. at 26, 39. (characterizing Pawlina's investigation as "Shoddy at best")(Exh. 7).  Department Advocate Calderone explained that when completing an investigation all interrogatory responses and other exculpatory evidence must be included; he characterized Pawlina's omissions as "improper", "unethical" and potentially "illegal".  Id. at 24:14-24, 26:7-12 (Exh. 7).


64.     Admit in part.  Plaintiff admits that Pawlina's report included these statements, but, denies that this was his true motivation for improperly expanding his investigation.  Fago Affid. at ¶¶ 6, 7, 8, 13(Exh. 6).  See also Fago Dep. at 306:25-307:3 ("That investigation is so deplorable and incomplete"); 308:19-23 ("He wasn't looking to do an impartial investigation. He certainly did not present all the facts")(Exh. 1).


65.     Admit in part.  Plaintiff admits that Pawlina's report included these statements, but denies that the evidence supported this conclusion. Fago Affid. at ¶¶6, 7, 8, 13 (Exh. 6).

66.     Admit in part.  Plaintiff admits that Pawlina's report included these statements, but denies that the evidence supported this conclusion. Fago Affid. at. ¶¶ 6, 7, 8, 13 (Exh. 6). Department Advocate Calderone also believed that there was a great deal of hearsay and history that should not have been included in the packet. Calderone Dep. at 41 ("it was unequivocally clear that this was an insignificant incident that was puffed up and blown out of proportion")(Exh. 7).

67.     Admit in part.  Plaintiff admits that Pawlina's report included these statements, but denies that the evidence supported this conclusion. Fago Affid. at. ¶¶6, 7, 8, 13 (Exh. 6). Calderone's investigation determined that "the actions did not occur at all." Calderone Dep. at 31 (Exh. 7). In addition, Calderone did not believe that McClure was credible. Id at 81-2.

68.     Admit.

69.     Deny.  Pawlina's investigative package included an array of historical and hearsay information that should not have been included. Id. at 41.  The fact that this information was included in the packet demonstrates that Pawlina gave it undue weight in his conclusions.

70.    Admit.

71.    Admit.

**Fago's Second Interim Probationary Performance Evaluation**

72.    Admit.

73.    Admit.

74.    Admit.

75.    Admit.

76.    Deny. Going back and changing an evaluation "would not be kosher" Deposition of Richard Hogan at 98:10-11, 98:22-99:4  ("Hogan Dep.")("It's nonsensical to go back and change the one that occurred before unless you were trying to cover something up.")(Exh. 10).

77.     Admit.


78.     Deny. Going back and changing an evaluation "would not be kosher" Deposition of Richard Hogan at 98:10-11, 98:22-99:4  ("Hogan Dep.")("It's nonsensical to go back and change the one that occurred before unless you were trying to cover something up.")(Exh. 10).


79.     Admit.


80.     Deny.  Fago Affid. at ¶¶6, 7, 8, 13 (Exh. 6).  Pawlina's reason for changing the rating was allegedly based upon an uninvestigated allegation by Rudewicz, which Fago then denied.  This cannot be considered strong enough evidence to change the evaluation, and indicates that something else motivated Pawlina to change this form. Pawlina Dep. at 242:15-243:24 (Exh. 14).  Deny that Pawlina learned of the plaintiff's allegedly harassing conduct between April 2 and April 25, 2002, because the McClure incident was reported in a memo dated February 26, 2002.  2/26/2002 Memo from McClure to Pawlina (Exh. 26).


81.     Admit in part. See response to 80 above.

82.     Admit in part. See response to 80 above.

83.     Admit.

84.     Admit.

85.     Deny. Hogan Dep. at 98:10-11, 98:22-99:4  ("It's nonsensical to go back and change the [evaluation] that occurred before unless you were trying to cover something up.")(Exh. 10).

### Consideration of Fago's Probationary Performance

86.     Admit.

87.     Deny.  Because of his personal relationships with defendants Russell and McClure, Jones's opinion was biased and not based solely on Pawlina's investigation.  Jones Dep. 86:16-24 ( Jones has a personal relationship with Russell, specifically they hunt together); 87: 3-6 (Jones recognizes that credibility is an issue in any investigation); 73:14-17 (Jones admits to having a relationship with McClure)(Exh. 2).

88.     Admit.

89.     Admit.

**May 16, 2002 Meeting Regarding Fago's Demotion**

90.     Admit.

91.     Admit.

92.     Admit.

93.     Admit.

94.     Admit in part.  Fago admits that Marquis made this statement, but denies the validity therein. Marquis stated that he did not confirm any of the allegations of physical intimidation against Fago before deciding to demote him. Marquis Dep. 105: 4-9 (Exh. 11). The only allegation that had been confirmed by anyone was the one from when Fago was a cadet. Id. at 105: 17-23.  Marquis was not aware of the fact that McClure had previously made

an allegation of sexual discrimination against Fago, which was subsequently determined to be unfounded. Id. at 106: 23-107:19. Marquis was also unsure whether he was aware that Fago had filed a sexual harassment claim against McClure in March 2002. Id. generally at 109-111. Marquis did not rely on any information from Sgt. Calderone, the department advocate, who was also investigating McClure's complaint independently from Pawlina's investigation. Id. at 50:6-13. Sgt. Calderone did not sustain McClure's accusations, and found McClure to be not credible.  Id. at 65:12-18, 81-2. Marquis did not have the totality of the circumstances in mind when he demoted Fago, as documents were omitted form Pawlina's packet. Calderone Dep. at 24-25, 49 (Exh. 7).


95.     Deny.  Pawlina and Jones recommended Fago's demotion to Marquis.  Pawlina Investigative Packet at COH 392 (Exh. 13); Jones Dep. at 94-97 (Exh. 2),


96.     Deny.  This copy is missing its attachments.


97.     Deny.  Exhibit J to the Declaration of Colleen Kenton is missing its attachments.


98.     Admit.

99.     Admit, that Fago's duties and responsibilities were terminated on the day he was informed of the demotion.  Fago Affid. at ¶10 (Exh. 6).

## Pawlina's Recommended Discipline of Fago

100.    Admit.

101.    Deny.  Jones states that he received Pawlina's Form 90 on July 29, 2002. Jones Dep. (Exh. 2).

102.    Admit.

103.    Admit.

104.    Admit in part.  The Plaintiff commenced the present lawsuit on July 11, 2002.

105.    Admit in part.  Plaintiff has listed these individuals as examples, but not an all-inclusive list. Plaintiff has stated that these are just a few of those who have been treated differently. Fago Dep. at 305:2-8 ("so many people have done so many things wrong in the

police department and the way the way they've been treated.")(Exh. 1). For example, Fago has also listed Miele, Gamble, Rethis, and Muroy as other incidents of disparate treatment. Id. at 302:8-16, 368: 7-19, 569:3-17; 579-582; 583-584.

106.    Admit.

107.    Deny in part, that on the date the plaintiff was notified of his demotion and the day the demotion was effective was less than two weeks from the date a one year probationary period would be over. Fago Affid at ¶10.

108.    Admit.

109.    Admit.

110.    Admit.

111.    Admit.

112.    Deny. Albert Affid. at ¶4.

113.    Admit.

114.    Deny, immediately following Fago's demotion two black males were promoted
         to Lieutenant. Deposition of Michael Manzi in Cody v. City of Hartford,
         3:02CV1798 (On whether Marquis appointment of Gordon Jones was motivated
         by race, Manzi answered affirmatively)(Exh. 23). See also Jones Dep. at 101:19-
         23 (Jones agreeing that Fago was replaced with a black male)(Exh. 2).

115.    Admit.

116.    Denied.  Marquis did uses personality traits and other standards such as loyalty,
         professionalism, and communication skills for the promotion process. See
         Marquis Dep. at 15: 5-22 (Exh. 11).

117.    Admit.

118.    Admit.

119.    Deny.  Marquis did not describe this process in his deposition. <u>See</u> <u>generally</u> Marquis Dep. at 15: 5-22 (Exh. 11).

120.    Deny.  Marquis did not describe this process in his deposition, instead he describes personality traits and other standards such as loyalty, professionalism, and communication skills.  <u>Id</u>.

121.    Admit.

122.    Admit.

123.    Admit. Plaintiff admits that they were not probationary employees under Marquis, but they committed violations of the Code of Conduct and were not demoted or disciplined.  Fago Affid. at ¶ 15.

124.    Admit.

125.    Admit.

126.    Admit.

127.    Denied.  Fago testified that he has no personal knowledge regarding specific aspects of these events.  Fago Dep. at 226-227 )(Exh. 1).

128.    Admit.

129.    Deny it is unclear who West and White are.

130.    Admit.

131.    Admit.

132.    Admit.

133.    Admit.

134.    Admit.

135.    Admit.

136.    Admit.

137.    Admit.

138.    Admit, plaintiff notes that this investigation should be complete.

139.    Admit.

140.    Admit.

141.    Admit.

142.    Deny. This is a mischaracterization of the record; plaintiff clearly stated that
        though he could not recall at that moment, any additional evidence was
        protected by Attorney/Client privilege. Fago Dep. at 600-01; 531:21-532:17
        (Exh. 1).

143.    Admit in part.  The basis for Fago's hostile work environment claim is based in part on 1.) the Police Defendants' failure to act on or inform superiors about documents that refuted the claims against him; and 2.) the Police Defendants' false statements during their IAD interviews. This list does not include defendants' failure to investigate harassment toward Fago.  The anonymous letter left in Fago's mailbox was never investigated. Fago Dep. at 310:19-20 (Exh. 1). Nor was his sexual harassment claim against McClure properly investigated or even acknowledged.  Jones Dep. at 77:21-24 ("If a sexual harassment complaint was made against McClure, it has to be investigated." "Correct.")(Exh. 2).   Despite his statements in his initial meeting with McClure and Fago, Pawlina and the other supervisors failed to discipline McClure for her unsubstantiated false allegations. Fago Affid at ¶18 (Exh. 6).

144.    Admit.

145.    Denied.  Plaintiff lists a variety of types of grievances.  Fago Dep. at 25-26 (Exh. 1).

146.    Admit.

147.    Admit.

148.    Admit.

149.    Deny.  This is a mischaracterization of the testimony.

150.    Denied.  Plaintiff did not make this statement. Fago Dep. at  141 (Exh. 1).

151.    Admit.

152.    Admit.

153.    Denied.  Police Defendants mischaracterize plaintiff's testimony.  Plaintiff conceded only that he cannot know what occurred in the minds of the defendants, but explained that he was the 'victim of a negative work' condition, and that the City was not happy with the two million dollar award against them that resulted from his testimony. Id. at 154.

154.    Admit.

155.    Deny, the plaintiff did testify on behalf of the city.  Fago Dep. at 156 (Exh. 1).

156.    Deny, the City was a defendant in <u>Amador</u>.  <u>See</u> Case caption of <u>Amador</u> Trial Transcript (Exh. 27).

157.    Deny. Jobes and Russell have testified that they had good relationships with Fago until he testified in <u>Amador</u>. Pawlina Investigative Packet at COH 323-327, 329-330, 335 (In his IAD Interview, Russell explained that he had had no problem with Fago, until he (Fago) testified in the Sergeants' case)(Jobes IAD Interview in which he stated that he and Fago had a "friendly working relationship" until Fago testified in the Sergeants' case)(Exh. 13).

158.    Deny. Marquis was influenced by Jones, and Jones in turn was biased because of these relationships. Marquis discussed Fago's demotion with Assistant Chiefs Jones prior to taking such action. Jones Dep. at 71:18-23; 72:17, 93 (Exh. 2); 4/03/03 Marquis Dep. at 68-69 (Exh. 11).  Jobes, Russell, McClure and Jones had a "friendship" and a "closeness" and McClure and Jones had had a "sexual relationship" Fago Dep. at 159:18-160:1 (Exh. 1).  Jones and Russell had a social relationship outside of work. <u>Id</u>. at 161:18-22.

159.    Denied. Police Defendants misconstrue plaintiff's testimony and the record.  In the pages cited by defendants, Fago clearly states that the chain of command operated in this situation to allow Jones and Pawlina to provide an incomplete investigation and its corresponding conclusions to Marquis. Id. at 164-5.

160.    Admit.

161.    Admit.

162.    Deny.  Fago specifically testified that he had no evidence that the Police Defendant's knew he was a witness in the Russo case at the time of his demotion, but did not testify regarding any other time frame. Id. at 337-8.

163.    Admit.

164.    Deny.  Fago confronted Perez and told her that he felt the transfer was retaliatory, and it was called off. Id. 336.

165.    Deny.  Fago's transfer was retaliatory.  Id. at 334.

166.   Deny in part.  Plaintiff admits that no evidence exists regarding who distributed the harassing notes because the incident was never investigated, but denies Police Defendants general statement regarding "other acts" as this is overly vague, and includes no supporting documentation in the following citations.

167.   Admit.

168.   Admit.

169.   Deny.  The document cited for this proposition does not support this statement.

170.   Deny.  The document cited for this proposition does not support this statement.

171.   Deny.  The document cited for this proposition does not support this statement.

172.   Admit.

173.   Admit.

174.    Admit.

175.    Deny.  The document cited for this proposition does not support this statement. Furthermore, Police Defendants attempt to deliberately mischaracterize the document cited by confusing personnel policy with personnel decisions.

176.    Admit.

177.    Admit.

178.    Admit.

179.    Admit.

180.    Admit.

181.    Admit.

182.    Admit.

183.    Deny.  Plaintiff's emotional distress claim includes all defendants.  <u>See</u> Second Amended Complaint at Count 5.  <u>Id</u>. at 308:4-14 ("It is very stressful and creates a hostile work environment when you know you are doing our job and you have some facts to corroborate that the allegations against you are untrue and unfounded and you present them and they" ignore them."); Hogan Dep. at 105: 12-106:5 (Being demoted is "mortifying" and "embarrassing")( Demoting someone for the wrong reasons is "diabolical and devious")("If you want to embarrass the bejesus out of somebody, promoted them and then just say You're done.")(Exh. 10).

184.    Admit.

185.    Deny.  Plaintiff has continued to see psychologist Dr. Hall, and has now met with him somewhere between twenty-five and thirty times.  In addition, since the more recent retaliatory actions of defendants, plaintiff has begun to see Dr. Goodwin, a psychiatrist.  He has met with Dr. Goodwin four or five times since February. Fago Affid. at ¶ 21.

186.    Admit.

187.    Admit.

188.    Deny.  Marquis sent the letter requiring Fago to be submitted to psychological evaluation of May 3, 2002, the same day that he notified the director of personnel of Fago's demotion. (Exh. 28).

189.    Admit.

190.    Admit.

191.    Deny. See Defendants' statements # 47, 48, 50, 53.