**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **MICHAEL J. FAGO** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **3:02CV1189 (AHN)** |
| **v.** | : | |
| | : | |
| **CITY OF HARTFORD, ET AL.** | : | |
| **Defendants.** | : | **SEPTEMBER 3, 2004** |
| | : | |

**REPLY BRIEF IN SUPPORT OF MOTION FOR**
**SUMMARY JUDGMENT BY DEFENDANTS MCCLURE, JOBES AND RUSSELL**

In accordance with D. Conn. L. Civ. R. 9(d), defendants Nancy McClure, Patrick Jobes and Robert Russell (collectively, the "Three Defendants"; and together with all defendants, the "Defendants") respectfully submit this reply to Plaintiff's "Joint Motion in Opposition to Three Defendants and Police Defendants' Motions for Summary Judgment" and memorandum in support thereof dated August 6, 2004 (hereafter, "Opposition").[1] Summary Judgment should enter in favor of the Three Defendants on all counts of plaintiff's complaint in which they are named.

Plaintiff's recitation of the "facts" of this case (as recited in the memorandum in opposition, the Statement of Material Facts in Dispute and in the "Rule 56(a)(2) Statement of Facts in Dispute"), largely, is a compilation of speculation, conjecture and surmise arranged in

---

[1] Given the space limitations inherent in a reply brief, the Three Defendants cannot respond to each and every argument raised in Plaintiff's Opposition. The Three Defendants will endeavor not to repeat arguments already raised in their Memorandum of Law in Support.

a manner that can be charitably described as fanciful.  Often, the citations contained in

Plaintiff's "Statement of Material Facts in Dispute" do not support the conclusions offered by

Plaintiff.  For example, in paragraph 16 of Plaintiff's Statement of Material Facts in Dispute,

Plaintiff asserts "Jobes and Russell blame the loss of their case on Fago and his testimony."

The purported support for this remarkable statement is Plaintiff's Affidavit at paragraph 2,

which states:  "Russell and Jobes were very angry about my testimony in the 'Sergeants' Case'

and took the fact that I testified for the City as a personal attack that led them to retaliate

against me by making false allegations to Pawlina and IAD investigators."  Even if one were to

accept the speculation contained in Plaintiff's affidavit statement, the statement that Russell

and Jobes were angry about Plaintiff's testimony in the Sergeants' Case and took it personally

does not mean that they blame Plaintiff for the loss of the Sergeants' Case.  Indeed, anyone

reviewing Plaintiff's testimony in the Sergeants' Case (attached as Exhibit 11 to Plaintiff's

deposition transcript [Exhibit A in the Three Defendants' Memorandum in Support of their

Motion for Summary Judgment]), quickly realizes that Plaintiff was a minor witness in the

Sergeants' Case and simply testified that he worked hard to prepare for the relevant sergeants'

examination.  Suffice it to say, Plaintiff's assertions of "fact" often are not adequately

supported by Plaintiff's citations to the "record", even if Plaintiff's "record" is taken at face

value.

Moreover, the "record" relied upon to support Plaintiff's factual assertions consists largely of conjecture, surmise and innuendo. Turing again to the example of paragraph 16 of Plaintiff's Statement of Material Facts in Dispute, Plaintiff is not able to know the thoughts and emotions of Jobes and Russell regarding the Sergeants' Case absent any admissions of Jobes or Russell or other evidence demonstrating their thoughts or emotions. However, Plaintiff has not offered any such reliable evidence establishing that Jobes and Russell "were angry about [Plaintiff's] testimony" and took his testimony "as a personal attack" on them. All that Plaintiff offers is his self-serving guess.

The source of much of this conjecture, surmise and supposition is Plaintiff's testimony either at his deposition or in his affidavit. As a result, the Defendants have filed a Joint Motion to Strike major portions of the affidavits of Plaintiff and Daniel Albert.[2] However, given the breadth and volume of the inadmissible conjecture, surmise and supposition offered by Plaintiff in support of his factual assertions, the Motion to Strike cannot address each and every instance of inadmissible evidence offered by Plaintiff. In short, the "factual" representations contained in Plaintiff's papers are largely unreliable. Consequently, Plaintiff has failed to create a genuine issue of material fact through admissible evidence and summary judgment should enter

---

[2] The Three Defendants also object to the use of Plaintiff's Exhibit 23, the transcript of the December 18, 2003 Deposition of Michael Manzi in <u>Cody v. City of Hartford et al.</u>, 3:02CV1789 (SRU). None of the Three Defendants is a party to that action, nor does the undersigned represent any party in that case. The Three Defendants were not present to cross-examine the deponent in that case. Further, to the knowledge of the undersigned, this transcript was not produced or disclosed during the discovery period.

in favor of the Three Defendants on all claims in which they are named in Plaintiff's Second Amended Complaint.

        1.      <u>Plaintiff Has Failed to Establish an Equal Protection Violation</u>.

In his Opposition (at 17-20), Plaintiff waffles on his theory of an equal protection violation. Plaintiff argues that he can establish a violation of his equal protection rights based on race but, also, that he can establish a "class of one" equal protection violation. Opposition at 17-20.[3] As established in the Three Defendants' Memorandum of Law in Support of their Motion for Summary Judgment (at 15-16), Plaintiff has offered absolutely no admissible evidence of racial animus exhibited by the Three Defendants. Therefore, this discussion will focus on Plaintiff's attempt to pursue a "class of one" claim.

The first problem with Plaintiff's "class of one" argument is that he has not pled a "class of one" equal protection claim. <u>See</u>, the Three Defendants' Memorandum in Support at 15. Rather, Plaintiff claims that his equal protection rights were violated because he "was not treated the same as similarly situated officers due to race." Second Amended Complaint at ¶34. In her December 29, 2003 Ruling on discovery motions, Magistrate Judge Fitzsimmons recognized that Plaintiff's equal protection claim is based on race and during the pre-filing conference for this motion, Plaintiff's counsel agreed that Count One is an equal protection

---

[3] Although Plaintiff's arguments are confusing on this point, Plaintiff has cited specifically to <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562 (2000). Opposition at 18.

claim based on race.  Plaintiff's decision to plead the equal protection claim based on race

dooms his "class of one" argument.

In pursuing an equal protection claim, a plaintiff has to make a choice, in his complaint,

as to the theory under which he is proceeding.   See, African Trade & Information Center, Inc.

v. Abromaitis, 294 F.3d 355, 363-364 (2d Cir. 2002).  For example, in ruling on a state

official's motion for summary judgment on qualified immunity grounds, the Second Circuit

wrote:

> If plaintiffs had alleged that Abromaitis's refusal to contract with them on behalf
> of DECD was wholly arbitrary, or irrational, they would have alleged a violation
> of a clearly established constitutional right.  The problem with plaintiffs' equal
> protection claim is that they make no such allegation.  To the contrary, they
> allege a specific reason for the refusal that was entirely rational but, they claim,
> impermissible under the First Amendment.
> . . .
>
> To prevail under Olech, on which they rely heavily, plaintiffs need to allege that
> they were "intentionally treated differently from others similarly situated and that
> there is no rational basis for the difference in treatment."  Olech, 528 U.S. at 564.
> As set forth above, they have alleged instead that Abromaitis did not consider
> them for their desired positions because they had publicly criticized his conduct
> in office.  Taking that allegation as true, we cannot characterize Abromaitis's
> actions as irrational.  Rather, plaintiff's equal protection claim depends entirely
> on their contention that Abromaitis's actions were *impermissible.*

African Trade, 294 F.3d at 363-364.  Similarly, in this case, Plaintiff has consistently alleged

that his equal protection claim was based on impermissible actions by the Defendants—unequal

treatment based on race.  Second Amended Complaint, Count One.  He has never alleged, in

his complaint, that Defendants treated him differently than similarly situated individuals and

had no rational basis for doing so.  Rather, Plaintiff has consistently pursued an unsupported theory that Chief Marquis sought to demote lieutenants in order to promote black or other minority officers.  Because he has not alleged that Chief Marquis's (or any of the other Defendants') action were wholly irrational, Plaintiff cannot state a "class of one" equal protection claim.

Second, even if the court were to consider Plaintiff's "class of one" equal protection argument, Plaintiff cannot prevail under such an argument against the Three Defendants.  In his Opposition (at 19-20), Plaintiff argues that he is "was similarly situated to numerous HPD officers who have undergone probationary periods before becoming lieutenant. . . .  [He] was treated differently from all other probationary lieutenants because in thirty years, no other probationary lieutenant has been demoted."  Once again, the Three Defendants were not in a position to be able to return Plaintiff to the rank of sergeant and such decision was made by the Chief of Police—the only person with the authority to make such a decision.  The Chief did not consult with any of the Three Defendants in making this decision.  Marquis Tr. At 113-14.  None of the Three Defendants requested that Plaintiff be demoted.  Russell Aff't. (Exhibit K) at ¶12; McClure Aff't. (Exhibit L) at ¶9; Jobes Aff't. (Exhibit N) at ¶13.  Therefore, Plaintiff's "class of one" equal protection argument does not apply to the Three Defendants.

Third, Plaintiff has failed to establish that the Chief's determination had no rational basis.  Apparently, Plaintiff confuses the inherently subjective nature of a determination that a

police supervisor has not satisfactorily completed a probationary period with a determination having no rational basis. Given the report produced by Pawlina, it was entirely rational for the Chief to decide that a pattern of bizarre and intimidating behavior was not appropriate conduct for a probationary lieutenant (or any supervising officer) and that evidence of such conduct was grounds for determining that Plaintiff had not successfully completed the probationary period. The fact that others had not previously failed to successfully complete their probationary periods is of no moment. The Chief's actions need only meet the rational relation test. Given the subjective nature of the decision and given the Chief's reliance on the advice of his staff and review of Pawlina's report, no reasonable jury could conclude that the Chief's decision to return Plaintiff to the rank of sergeant was wholly irrationally or arbitrary. As in <u>African Trade</u>, Plaintiff is left to argue that such decision was based on impermissible factors. He cannot prevail on a "class of one" equal protection theory. Therefore, summary judgment should enter in favor of the Three Defendants on all of Plaintiff's equal protection claims.

       2.     <u>Plaintiff Has No Viable Hostile Work Environment Claim</u>.

The central "factual" underpinning of Plaintiff's argument that the Three Defendants are liable under §1983 for creating a hostile work environment for him (again, based on race) is his statement that: "The Three Defendants were aware that Marquis and his administration were open to the idea of demoting lieutenants based on complaints, in order to promote black and other minorities to the position of lieutenant, and this link substantiates the conclusion that

the Three Defendants and the Police Defendants created a pervasively hostile work environment." Opposition at 25. The "support" for this wild speculation is Plaintiff's own deposition testimony that: "complaints could be made and they could be taken by the administration, and, a demotion, which has seldom occurred in the police department, maybe less than two or three in 30 years or so, 40 years, could happen." Plaintiff's Statement of Material Facts in Dispute at 86. Other than Plaintiff's self-serving speculation, there is no admissible evidence in the record that Chief Marquis sought to demote lieutenants in order to promote black or other minority officers. Additionally, there is absolutely no admissible evidence in the record to establish that the Three Defendants were aware of any willingness by the Chief or other command staff to demote lieutenants in order to promote others. Plaintiff offers no admissible evidence to suggest that the Three Defendants created a workplace "permeated with discriminatory intimidation, ridicule and insult" for Plaintiff and, therefore, summary judgment should enter in favor of the Three Defendants on any hostile work environment claim.

       3.    <u>Plaintiff's First Amendment Claim is Not Viable</u>.

      Plaintiff argues that Jobes and Russell retaliated against him because of his testimony in the Sergeants' Case. His evidence of retaliation consists of the unspecified temporal relationship between his testimony in the Sergeants' Case and the alleged retaliatory behavior. Opposition at 37-39. Plaintiff conveniently ignores the fact that Jobes and Russell were simply

ordered by their superior officers to respond to interrogatories and/or report to IAD and answer questions regarding Plaintiff's odd behavior. Russell and Jobes did not initiate any complaints or actions against Plaintiff. Rather, they were complying with their orders. This alleged temporal connection is simply too remote, in these circumstances, to create a viable claim of First Amendment retaliation.

Plaintiff argues that McClure retaliated against him for: (1) his testimony in the Sergeants' Case; (2) the dismissal of her sexual harassment complaint against Plaintiff;[4] and (3) Plaintiff's alleged sexual harassment complaint against McClure. Opposition at 37-39. First, McClure had no interest in the outcome of the Sergeants' Case because she was already a lieutenant. Further, Plaintiff did not discuss McClure during his testimony in the Sergeants' Case. Plaintiff has not presented any credible evidence to establish either why she would retaliate against Plaintiff for such testimony or that she did, in fact, inexplicably retaliate against Plaintiff for such testimony.

Second, if one were to assume that McClure did retaliate against Plaintiff because her alleged sexual harassment complaint against him was dismissed, Plaintiff has failed to establish that he exercised any First Amendment rights in connection therewith. Plaintiff cannot establish that he exercised any First Amendment rights when a superior officer allegedly dismissed McClure's alleged sexual harassment complaint against him. Because no reasonable

---

[4] This sexual harassment complaint allegedly was filed in or around April or May of 1996—well before the Sergeants' Case testimony. See, Exhibit 14 to the Fago Depo. At COH 387.

jury could conclude, on this record, that Plaintiff exercised any First Amendment rights in connection with McClure's alleged sexual harassment complaint, any First Amendment claim based thereon must fail.

Third, McClure could not have retaliated against Plaintiff for filing his alleged sexual harassment complaint against her because her report of the hallway incident preceded Plaintiff's sexual harassment complaint against McClure. Transcript of the May 14, 2003 Deposition of Michael Fago at 85-86 (his sexual harassment complaint was filed with the City, he believed, in March, after Pawlina's investigation had already been commenced) (attached hereto as Exhibit R); Opposition at 39. Therefore, McClure could not have retaliated against Plaintiff for the filing of his alleged sexual harassment complaint against him. Consequently, summary judgment should enter in favor of the Three Defendants on Plaintiff's First Amendment retaliation claims.[5]

In conclusion, summary judgment should enter in favor of Defendants McClure, Jobes and Russell on all counts of the Second Amended Complaint in which they are named.

---

[5] As the undersigned was putting the finishing touches on this Reply Brief, the Connecticut Supreme Court issued its slip opinion in the case of Craig v. Stafford Construction, SC 17073. A copy of the slip opinion is attached hereto as Exhibit S. The Three Defendants have relied upon the Connecticut Appellate Court's decision in Craig (78 Conn. App. 549, cert. Granted, 266 Conn. 916 (2003)) in support of their argument that the defamatory statements allegedly made by the Three Defendants (and others) are absolutely privileged because they were allegedly made in a quasi-judicial proceeding. Three Defendants' Memorandum in Support at 36-38. The Connecticut Supreme Court has now affirmed the Appellate Court's decision. Exhibit S. Therefore, the Three Defendants also rely on Exhibit S in support of its position that summary judgment should enter in favor of the Three Defendants on Count Six of the Second Amended Complaint.

DEFENDANTS,
NANCY MCCLURE, PATRICK JOBES AND
ROBERT RUSSELL


By_____
          Joseph W. McQuade, ct12121
          jmcquade@kemlaw.com
          Jennifer Lian Dixon, ct15914
          jdixon@kemlaw.com
          Kainen, Escalera & McHale, P.C.
          21 Oak Street, Suite 601
          Hartford, CT  06106
          Telephone (860) 493-0870
          Facsimile (860) 493-0871
          Their Attorneys


## CERTIFICATION OF SERVICE

          This is to certify that a copy of the foregoing Reply Brief of Defendants McClure, Jobes

and Russell was sent via first class U.S. mail on this the 3rd day of September, 2004 to:

James S. Brewer, Esq.                Charles L. Howard, Esq.
Erin I. O'Neil, Esq.                 Gregg P. Goumas, Esq.
Brewer & O'Neil, LLC                 Derek Mogck, Esq.
818 Farmington Avenue                Shipman & Goodwin LLP
West Hartford, CT  06119             One Constitution Plaza
                                     Hartford, CT  06103-1919


                          _____
                                  Joseph W. McQuade

15048