```
 1              UNITED STATES DISTRICT COURT
 2                DISTRICT OF CONNECTICUT
 3
 4
                ------------------------------x
 5   MICHAEL J. FAGO,                         :
 6            Plaintiff,                      :
 7       -versus-                             :  No. 3:02CV1189
                                                    (AHN)
 8   CITY OF HARTFORD; and in their           :
     individual and official
 9   capacities, BRUCE MARQUIS,               :
     Chief of Police; KEVIN JONES,
10   Assistant Chief of Police;               :
     MARK PAWLINA, Police Captain;
11   JOSEPH BUYAK, Police Captain;            :
     NANCY McCLURE, Police
12   Lieutenant; MARK RUDEWICZ,               :
     Police Sergeant; STEPHEN MIELE,
13   Police Sergeant; PATRICK JOBES,          :
     Police Sergeant; and
14   ROBERT RUSSELL, Police Officer,          :
15            Defendants.                     :
                ------------------------------x
16
17
18            Deposition of MICHAEL J. FAGO,
19       taken pursuant to the Federal Rules of
20       Civil Procedure, at the law offices of
21       Shipman & Goodwin, L.L.P., One American
22       Row, Hartford, Connecticut, before Larry
23       Dorfman, L.S.R. #00062 and a Notary Public
24       in and for the State of Connecticut, on
25       May 14, 2003, at 10:22 a.m.
```

---

Page 2

```
 1   APPEARANCES:
 2     For the Plaintiff:
 3     BREWER & O'NEIL, L.L.C.
        818 Farmington Avenue
 4      West Hartford, Connecticut  06119
        By: JAMES S. BREWER, ESQ.
 5          (860) 523-4055
 6
        For the Defendants City of Hartford,
 7      Bruce Marquis, Kevin Jones, Mark
        Pawlina, Joseph Buyak, Mark Rudewicz
 8      and Stephen Miele:
 9      SHIPMAN & GOODWIN, L.L.P.
        One American Row
10      Hartford, Connecticut  06103-2819
        By: CHARLES L. HOWARD, ESQ.
11          (860) 251-5000
12
        For the Defendants Nancy McClure,
13      Robert Russell and Patrick Jobes:
14      KAINEN, ESCALERA & McITALE, P.C.
        21 Oak Street - Suite 601
15      Hartford, Connecticut  06106
        By: JOSEPH W. McQUADE, ESQ.
16          (860) 493-0870
17
18
19
20
21
22
23
24
25
```

---

Page 3

```
 1              STIPULATIONS
 2
 3         IT IS HEREBY STIPULATED AND
 4   AGREED by and between counsel for the
 5   respective parties hereto that all
 6   technicalities as to proof of the official
 7   character before whom the deposition is to
 8   be taken are waived.
 9
10         IT IS FURTHER STIPULATED AND
11   AGREED by and between counsel for the
12   respective parties hereto that the
13   deposition may be signed before any Notary
14   Public.
15
16         IT IS FURTHER STIPULATED AND
17   AGREED by and between counsel for the
18   respective parties hereto that all
19   objections, except as to form, are reserved
20   to the time of trial.
21
22
23              * * * * * *
24
25
```

---

Page 4

```
 1              WITNESS INDEX
 2                                    PAGE
 3   Direct Examination by Mr. Howard    6
 4
 5
 6              EXHIBIT INDEX
 7   DEFENDANT-FAGO     DESCRIPTION     PAGE
 8     1    Re-Notice of Deposition of    6
            Michael J. Fago, 3/31/03
 9
       2    Transcript of Lieutenant      6
10          Mike Fago, COH 374-390
11     3    City of Hartford             91
            Interdepartmental Memorandum
12          dated 3/2/02 from Fago to
            File, Fago 290-295
13
       4    City of Hartford            110
14          Interdepartmental Memorandum
            dated 3/2/02 from Fago to
15          Pawlina, COH 558-570
16     5    City of Hartford            115
            Interdepartmental Memorandum
17          dated 3/17/02 from Jobes to
            Pawlina, COH 396-397
18
       6    City of Hartford            123
19          Interdepartmental Memorandum
            dated 3/5/02 from Pawlina to
20          McClure and Fago, COH 408
21     7    Memorandum dated 4/26/02    144
            from Hajdasz to Wood, COH 409
22
       8    Amended Complaint, 10/17/02  148
23
       9    Plaintiff's Responses to     148
24          City's Defendant's First Set
            of Interrogatories, 10/22/02
25
```

---

Page 5

```
 1              EXHIBIT INDEX
 2   DEFENDANT-FAGO     DESCRIPTION     PAGE
 3    10    City of Hartford Personnel  165
           Rules and Regulations
 4
 5   NOTE: Exhibits attached.
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

# CERTIFICATE

I hereby certify that I am a Notary Public, in and for the State of Connecticut, duly commissioned and qualified to administer oaths.

I further certify that the deponent named in the foregoing deposition was by me duly sworn and thereupon testified as appears in the foregoing deposition; that said deposition was taken by me stenographically in the presence of counsel and reduced to print under my direction, and the foregoing is a true and accurate transcript of the testimony.

I further certify that I am neither of counsel nor related to either of the parties to said suit, nor am I interested in the outcome of said cause.

Witness my hand and seal as Notary Public this ___20th___ day of ___May___, 2003

_____
NOTARY PUBLIC

My Commission Expires:
JANUARY 31, 2007

Page 82

1  point?
2      Q.  Okay. You don't dispute what is
3  reported on page 5 of Exhibit 2, that Captain
4  Pawlina had advised you that the investigation
5  dealt with harassment, and that was a quote, "a
6  very wide-open area"?
7          MR. BREWER: Object.
8      Q.  You don't dispute he said that, do
9  you?
10         MR. BREWER: Same objection. Is
11 that verbatim?
12     A.  That's Captain Pawlina's opinion of
13 what he is allowed to do. I had to answer the
14 questions based on Garrity. If he was to ask me
15 what color is my house, I would have to answer
16 that.
17     Q.  And Captain Pawlina advised you that
18 he was looking at more than just the hallway
19 incident, did he not?
20         MR. BREWER: Object to the form.
21     A.  That's what it appears it says in this
22 document.
23     Q.  Did Captain Pawlina on any other
24 occasion tell you that he was looking at more
25 than just the stairway incident?

Page 83

1      A.  I don't recall.
2      Q.  You did talk to Captain Pawlina on
3  several other occasions, did you not, in the
4  course of his investigations?
5      A.  Yes.
6      Q.  And he reported to you, did he not,
7  that he had spoken with various witnesses to the
8  stairway incident?
9      A.  Yes.
10     Q.  And in fact, isn't it true that he had
11 spoken with the witnesses to the stairway
12 incident by early March, mid-March at the
13 latest?
14     A.  I don't know the time frame, but it
15 wasn't that long after the incident was
16 reported.
17     Q.  But he still did not complete his
18 investigation and you were aware of that, right,
19 even after he had talked to those stairway
20 incident witnesses?
21     A.  As the investigation progressed, I
22 got -- became more unaware of where this
23 investigation was going.
24     Q.  You knew it was not going to be
25 limited just to the stairway incident; isn't

Page 84

1  that true, prior to April 22 when you were
2  interviewed?
3      A.  It appeared --
4          MR. BREWER: Object to the form.
5      A.  It appeared that since I was not -- my
6  Garrity rights weren't being protected, I sought
7  legal counsel, and I had no idea where this
8  investigation was going after that.
9      Q.  Tell me specifically what you claim
10 was in violation of your Garrity rights.
11     A.  An incident occurred, an incident
12 should be investigated. It should be focused,
13 narrowed and -- whatever the other word was, for
14 that investigation.
15     Q.  You are aware, are you not, that the
16 city has non-harassment, nondiscrimination
17 policies?
18     A.  Yes.
19     Q.  You are aware, are you not, that the
20 city has an obligation to investigate
21 allegations of harassment?
22     A.  Yes.
23     Q.  In the course of those investigations,
24 the city has an obligation to look at
25 allegations of harassment generally, does it

Page 85

1  not?
2      A.  I don't know that.
3          MR. BREWER: Object to the form.
4      Q.  What is it about policy 8-26 that you
5  claim requires the exclusion of these questions?
6      A.  I believe that order states to look at
7  an incident or an incident, not any and all
8  incidents.
9      Q.  Is there anything else about that
10 order -- Are you familiar with that order?
11     A.  I have read it, but I don't know -- I
12 would have to see the document.
13     Q.  Other than not limiting the
14 investigation to an incident or incidents, is
15 there any other claimed violation of Order 8-26
16 that you are making?
17     A.  Well, I know there was an incident in
18 the hallway, and it was subsequently found to be
19 not sustainable. So I don't know how you get to
20 point A, B or C in regards to harassment. I
21 don't know much about that, because I made a
22 sexual harassment complaint to the City of
23 Hartford that I don't know whatever happened to
24 it. So I don't know how they are investigated.
25     Q.  When did you make your sexual

Page 86

1  harassment complaint?
2      A. I believe it was March of 2002.
3      Q. Was it during the time this
4  investigation was underway?
5      A. Yes.
6          MR. HOWARD: Why don't we take a
7  lunch break now.
8          MR. BREWER: What time is it?
9          MR. HOWARD: Ten after 12:00.
10 Off the record.
11         (Discussion off the record.)
12         (Luncheon: 12:09 to 1:02 p.m.)
13 BY MR. HOWARD:
14     Q. Sergeant Fago, before the break, you
15 said in connection with the investigation done
16 by Captain Pawlina, you sought legal advice
17 regarding your Garrity advice?
18     A. I had sought just legal advice.
19     Q. When did you seek legal advice?
20     A. I believe when the interrogatories
21 came out.
22     Q. And so you were interviewed by Captain
23 Pawlina after that, were you not?
24     A. Actually, I take that back. I
25 verbally spoke to the attorney, I believe, over

Page 87

1  the phone prior to the interrogatories, and I
2  paid him an office visit after the
3  interrogatories.
4      Q. Okay. I am not going to ask you what
5  you discussed with your lawyer. Don't tell me
6  that, but I do want to know who that lawyer
7  was.
8      A. Yes. Neil Johnson.
9      Q. And did Mr. Johnson represent you
10 through the investigation?
11     A. Yes.
12     Q. Did you consult with him on more than
13 one occasion?
14     A. Yes.
15     Q. Did there come a time when you ceased
16 working with him and began working with
17 Mr. Brewer?
18         MR. BREWER: Object to the form.
19     A. Yes.
20     Q. And were there any other lawyers that
21 you consulted in between?
22     A. No.
23     Q. When did you stop working with
24 Mr. Johnson on this issue?
25     A. I had been -- Let's see. Probably

Page 88

1  about three weeks prior to my demotion.
2      Q. So sometime maybe end of April,
3  beginning of May?
4      A. Prior to the demotion, so maybe late
5  April.
6      Q. Okay. The demotion was what, May
7  16th?
8      A. I believe so.
9      Q. And when you were interviewed by
10 Captain Pawlina, did you request to have a
11 lawyer present at that time?
12     A. No.
13     Q. Would you have been allowed to, to the
14 best of your knowledge, even if you had made the
15 request?
16     A. I do not believe I would have been.
17     Q. Did you make a request to have a union
18 representative present?
19     A. No, I just took one with me. I didn't
20 ask.
21     Q. Right. And there was no objection to
22 having a union representative, was there?
23     A. No.
24     Q. Did the union representative object to
25 any of the questions that were asked to you?

Page 89

1      A. I believe he did.
2      Q. If so, it would be referred to either
3  in the tapes or transcript of Exhibit 2,
4  correct?
5      A. I believe they would be. I am not a
6  hundred percent sure of that.
7      Q. What is your recollection that the
8  union representative objected to?
9      A. He had concern that we had asked for
10 the written complaints from Lieutenant McClure
11 which we were entitled to, I believe, under our
12 bill of rights and that was refused by Captain
13 Pawlina. He had, I believe, a concern, and I am
14 not too exact on the words, but along with me,
15 the line of questioning going outside the scope
16 of the hallway incident.
17     Q. Did Captain Pawlina inform you that he
18 was certainly looking at the hallway incident?
19     A. Yes.
20     Q. Stairway incident, I think we called
21 it.
22         MR. BREWER: Yes.
23     A. Correct.
24     Q. So there was no doubt in your mind
25 that's what was being investigated at least in