UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL J. FAGO, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:02-cv-1189 (AHN) |
| | : | |
| vs. | : | |
| | : | |
| CITY OF HARTFORD, et al. | : | |
| Defendants. | : | September 2, 2004 |

**REPLY TO PLAINTIFF'S OPPOSITION TO
POLICE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]**

I.    **Introduction**

In his Memorandum in Opposition to Police Defendants' Motion for Summary

Judgment, plaintiff attempts at length to dispute many of the facts surrounding the process

that led to his demotion.  However, even if the Court draws all inferences in plaintiff's favor,

as a matter of law, he has failed to present sufficient evidence that the Police Defendants

violated any of his Constitutional rights, defamed him or subjected him to extreme and

outrageous conduct.

II.    **Plaintiff Has Not Presented Evidence That Defendant Marquis Treated Him
Differently Than Similarly Situated White Police Officers.[2]**

Plaintiff argues that he has presented "a broad pool of similarly situated employees

who were treated differently by one or more of the defendants...." Pl. Mem. at 20.[3]  In fact,

however, a close review of the record reveals that none of the individuals identified by the

plaintiff are similarly situated for purposes of an equal protection analysis.[4]

---

[1] This Memorandum is submitted on behalf of the City of Hartford, Bruce Marquis, Kevin Jones, Mark
Pawlina, Joseph Buyak, Mark Rudewicz and Stephen Miele (the "Police Defendants").

[2] To the extent that the Police Defendants have not addressed every issue raised by the plaintiff in his opposition
papers, they rely on their Memorandum in Support of their Motion for Summary Judgment.

[3] Abbreviations used herein will have the same meaning as those used in Police Defendants' Memorandum in
Support of their Motion for Summary Judgment and accompanying Local Rule 56(a)1 Statement.

[4] Plaintiff claims that Marquis demoted him during his probationary promotion period based on his race. Fago
Dep. Vol. III at 307, July 29, 2003 Amended Complaint, First Count ¶¶ 29, 31.  However, he admitted at his

"Although the ultimate burden in making a prima facie case is slight, the issue of whether fellow employees are similarly situated is somewhat strict." Brown v. Middaugh, 41 F. Supp. 2d 172, 184 (N.D.N.Y. 1999). More specifically, courts have stated as follows:

> employees are not 'similarly situated' merely because their conduct might be analogized. Rather, in order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.

Francis v. Runyon, 928 F. Supp. 195, 203 (E.D.N.Y. 1996) (quoting Mazzella v. RCA Global Communications, Inc., 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986)).

Plaintiff claims that he was similarly situated to the following officers:

- "Lt. Antonio Cancel; Off. Tracy Carter; Detective Baez/F. Ortiz; Lt. Jose Lopez; Officer Nestor Caraballo; Capt. Buyak; Sgt. O'Donnell; Acting Chief Rudewicz; Dep. Chief Casati; Lt. Kemmett, Sgt. Cherniak; Capt. Jesse Campbell; Asst. Chief Vega; Asst. Chief. McKoy; Det. Lawlor/Edlewich." Plaintiff's Statement of Facts in Dispute ("Plaintiff's Statement") ¶ 123.
- "Miele, Muroy [sic] and Rethis." Id. ¶ 125.

Pl. Mem. at 20. As a preliminary matter, Fago cannot compare himself to Officers Buyak, O'Donnell, Rudewicz, Casati, Kemmett, Cherniak, Lawlor, Edelwich, Miele and Mulroy in support of his race-based equal protection claim because all of these individuals are white. Defs.' 56(a)1 ¶ 113; Supplemental Declaration of Mark Pawlina ("Supp. Pawlina Dec.") ¶ 8.[5] Further, unlike Fago, Officers Cancel, Carter, Baez, Ortiz, Lopez, Caraballo and

---

deposition that he did not know the motivation for any actions taken by either Pawlina or Jones. Fago Vol. III at 306-07. When questioned further, he was also unable to provide any facts suggesting that any of the Police Defendants treated him differently because he was white. Id. at 600-03.

[5] Attached at Tab 1.

Campbell did not serve in a probationary status under Chief Bruce Marquis - the individual responsible for the ultimate recommendation to demote the plaintiff. Defs.' 56(a)1 ¶ 123.

Fago also claims that Assistant Chief Vega used "slurs" relating to other officers' sexual orientation and that Assistant Chief McKoy allegedly "passed through a toll booth without paying a toll." Defs.' 56(a)1 ¶¶ 124-25. With respect to Vega, plaintiff testified that he has no knowledge as to either the validity of the allegation against him or whether the alleged infraction even took place during Vega's probationary period. Fago Dep. Vol. II at 226-27. Similarly, plaintiff has no knowledge as to either the validity of the allegations or whether McKoy was disciplined in any way. Id. at 227. Thus, Fago has presented absolutely no evidence that Chief Marquis treated similarly situated non-white officers differently.

In further support of his race discrimination claim, plaintiff argues that: (1) after he was demoted Marquis replaced him with a black male; (2) no other probationary Lieutenant has ever been demoted; and (3) Marquis has never demoted a black male. Pl. Mem. at 18. However, it is simply untrue that Marquis replaced him with a black male: following plaintiff's demotion, on July 28, 2002, Marquis appointed four Lieutenants from a list of six eligible Sergeants – two of whom were black *and* two of whom were white. Defs.' 56(a)1 ¶¶ 115-120. Even if it were true that no other probationary Lieutenant had ever been demoted, it does not demonstrate that Marquis discriminated against Fago because he was white. Given that Fago has failed to identify any similarly situated black officers, the fact that Marquis has never demoted a black officer is not evidence of discrimination. [6]

---

[6] In ¶ 25 of his 56(a)2 Statement, plaintiff refers to the testimony of Michael Manzi as supporting a claim that Gordon Jones, a black male, was promoted to Lieutenant based on his race. This is a complete misrepresentation of Manzi's testimony. Manzi testified "I'm sure it wasn't along racist lines...." Pl. Ex. 23 at

Even if plaintiff could establish a prima facie case of race discrimination, Marquis had a legitimate non-discriminatory reason for recommending plaintiff's demotion. Marquis made his decision based on the totality of the circumstances and what he considered was a pattern of harassing and/or intimidating conduct. Defs.' 56(a)1 ¶ 94.[7] The fact that Marquis had a legitimate non-discriminatory reason for recommending Fago's demotion is also supported by the same-actor inference. "When the person who made the decision to fire was the same person who made the decision hire, it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire." Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997); see also Lambert v. New York State Office of Mental Health, 2000 U.S. LEXIS 5197, at *9 (S.D.N.Y. April 24, 2000)[8](applying same actor inference to demotion). Marquis promoted Fago to Lieutenant on a one year probationary basis commencing on May 27, 2001. Supp. Pawlina Dec. ¶ 4. Less than a

---

70. Moreover, Manzi has no personal knowledge of the promotional process followed by Marquis and would therefore not be qualified to testify as to the basis for Marquis' decision. Plaintiff also misrepresents Jones's testimony. Jones testified that black males were promoted after Fago, see Pl. Ex. 2 at 101, not that Fago was replaced by a black male. The evidence reveals that *both* white and black officers were promoted to Lieutenant after Fago's demotion. See Defs' 56(a)2 ¶ 114.

[7] While plaintiff attempts to dispute Marquis' stated reasons, see ¶ 94 of Plaintiff's 56(a)2 Statement, the issues he raises do not demonstrate that Marquis' stated reasons were a pretext for discrimination. Marquis relied on the investigation conducted by Pawlina, and was not obligated to "confirm any of the allegations of physical intimidation against Fago before deciding to demote him." Id. Likewise, the fact that "Marquis was not aware of the fact that McClure had previously made an allegation of sexual harassment against Fago," and that Marquis "was also unsure whether he was aware that Fago had filed a sexual harassment claim against McClure in March 2002," does not suggest pretext. Id. Plaintiff's suggestion that it was inappropriate for Marquis not to consider the conclusions of the Department Advocate, Sergeant Calderone, is misleading because Calderone did not review the charge against Fago until *several months later*. Fago was demoted on May 16, 2002. Defs.' 56(a)1 ¶ 93. Pawlina submitted a Form 90, initiating the department's disciplinary process more than a month *after* Fago had been demoted. Id. ¶ 100-02. Furthermore, the Form 90 was focused solely on McClure's allegation involving the stairwell incident, which was separate from Chief Marquis' decision about whether Fago had successfully completed his probationary service. Id. ¶ 102. As Sergeant Calderone stated in his deposition, his focus was *not* to review the events leading to Fago's demotion. Rather, the purpose of his review was to focus solely on whether Fago should be disciplined for the stairway bumping incident. Calderone Dep. 189-91, App. D., Tab 9.

[8] Attached at Tab 2.

year later, Marquis also made the ultimate recommendation to return Fago to the rank of

Sergeant. Defs.' 56(a)1 ¶ 94. Fago clearly cannot prevail on his race-based equal protection

claim and summary judgment should be granted in favor of the Police Defendants.

**III.    To The Extent That Fago's Complaint Alleges An Equal Protection Claim Based on a "Class of One" Theory, Summary Judgment Should Be Granted.**

Even if Fago's Complaint can be read to allege a "class of one" equal protection

claim, the Police Defendants are entitled to summary judgment. To prevail on this claim, not

only must Fago show that he was treated differently than similarly situated officers, he *also*

must demonstrate that such treatment was based on "impermissible considerations such as

race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or

bad faith intent to injure a person." LaTrieste Rest. & Cabaret, Inc. v. Village of Port

Chester, 40 F.3d 587, 590 (2d Cir. 1994). In his Memorandum, plaintiff argues that:

> [He] was similarly situated to numerous HPD officers who have undergone probationary periods before becoming lieutenant. The list of such similarly situated individuals is expansive. Fago was treated differently from all other probationary lieutenants because in thirty years, no other probationary lieutenant had been demoted. All of those other individuals noted for disparate treatment between themselves and plaintiff have been convicted of crimes or other serious misdeeds, and there can be no rational basis for the difference in treatment.

Pl. Mem. at 20 (citations omitted).[9] Despite his sweeping conclusory allegations, Fago has

not identified any similarly situated officers. As discussed above, in large part he is referring

to officers who completed probationary periods under Chiefs of police other than Marquis.

He has submitted no admissible evidence of any probationary officer serving under Marquis

---

[9] Although Count One is directed at all individual defendants, it is clear from plaintiff's Memorandum that he is only asserting his equal protection claim against Marquis, the individual who recommended his demotion. There is absolutely no basis for him to make such a claim against the other defendants.

who has "been convicted of crimes or other serious misdeeds...."[10]  Even if Fago could

identify a similarly-situated officer, he has presented no evidence that Marquis "subjected

[him] to differential treatment for unconstitutional reasons."  Perodeau v. City of Hartford,

2004 U.S. Dist. LEXIS 12532, at *3 (D. Conn. March 31, 2004).[11]

## IV.    Fago Has No Evidence That He Was Subjected to a Hostile Work Environment.

Although Fago references a "hostile work environment" in both the First and Second

Counts, his Memorandum clarifies that this allegation is limited to his race-based equal

protection claim.  See Pl. Mem. at 22 ("Evidence exists to indicate that defendants created a

racially hostile work environment...")[12].  Plaintiff goes on at length about how he was

allegedly mistreated by the various defendants.  Id. at 22-26.  However, the *only* "evidence"

he presents linking any of this alleged treatment to his race is his self-serving and

unsupported statement that "[t]he Three Defendants were aware that Marquis and his

administration were open to the idea of demoting lieutenants based on complaints, in order to

promote black and other minorities to the position of lieutenant, and this link substantiates the

conclusion that the Three Defendants and the Police Defendants created a pervasively hostile

work environment."  Id. at 25.  Plaintiff has not presented sufficient evidence to support his

claim that he was subjected to a racially hostile work environment.

## V.    Fago Received All The Process He Was Due Because, As a Probationary Lieutenant, He Was Not Entitled to Any Procedural Protections.

---

[10] Plaintiff's citation to ¶¶ 124, 125 of his Statement of Facts in Dispute ("St. Mat. Facts") simply does not support this proposition.

[11] Attached at Tab 3.

[12] Moreover, despite extensive research, the Police Defendants are aware of no case recognizing a claim for "hostile work environment" within the context of a claim for violation of either substantive or procedural due process as asserted in Count Two.

In support of his procedural due process claim in Count Two, Fago argues that he failed to receive bi-monthly performance evaluations during his evaluation period, was never told the exact duration of his probation, and did not receive timely notice of his demotion. Pl. Mem. at 29.[13] As a probationary lieutenant, however, Fago was not entitled to any procedural due process protections. Before a government employee may properly claim that he has been denied procedural due process by discharge from his employment, he must first establish that he has a property right in his position. See e.g., Board of Regents v. Roth, 408 U.S. 564, 569 (1972). A property interest may be created by a state-law provision that the employee may not be fired except for cause. See e.g., Perry v. Sindermann, 408 U.S. 593, 602-03 (1972). Under Connecticut law, a "probationary employee, in the absence of legislation, is not entitled to the protective procedure accorded a career or permanent employee." Millard v. Connecticut Personnel Board, 170 Conn. 541, 547 (1976). "Where there is no property interest in the employment, there can be no property interest in the procedures that follow from the employment." Id.

---

[13] Fago admits in his July 29, 2003 Complaint that he received performance evaluations in November 2001 and February 2002. Compl., Count One, ¶¶ 21, 22. Fago also admits to receiving a final evaluation at his demotion meeting in May 2002. Fago Depo. Vol. at 256. The Personnel Regulations specifically provide that the probationary period would be no longer than twelve months. Rule IX(2). There is no requirement that Fago be told the exact duration. Fago was notified of his demotion on May 16, 2002, but continued to receive pay as a Lieutenant for fourteen days, through May 30, 2002. Defs. 56(a)1 ¶ 99. Most importantly, the Regulations provide that "[a]t *any time* during the probationary period, the appointing authority may recommend in writing to the Director of Personnel the removal of an employee, if in his opinion the working test indicates that such employee is unable or unwilling to perform the duties of the job...." Rule IX(4). The Personnel Director can then remove the probationary employee without the need for a hearing, because neither state law nor the Regulations themselves entitle him to one. Id. Fago cannot point to a state law providing him with a property interest in his employment. Moreover, the Personnel Regulations re-enforce that he can be removed within the discretion of the Chief of Police and Personnel Director – without a hearing.

In <u>Farrish v. Town of East Hartford</u>, 2 Fed. Appx. 110, 2001 U.S. App. LEXIS 745 (2d Cir. Jan. 18, 2001)[14], the plaintiff was employed by East Hartford as an emergency dispatcher on a probationary basis. The East Hartford Personnel Rules and Merit System – like the City of Hartford's Personnel Rules – gave the town discretion to terminate an employee during the probationary period "if, in the opinion of the appointing authority the working test indicated that such employee was unable or unwilling to perform the duties of the position satisfactorily or that his habits and dependability did not merit his continuance in the service." <u>Id.</u> at *2.[15] Like Hartford's Personnel Rules, East Hartford's Rules did not allow for a probationary employee to appeal a dismissal that occurred during the probationary period;[16] and the collective bargaining agreement ("CBA"), like Hartford's CBA, did not provide for access to the grievance process.[17] <u>Id.</u> Based on these facts, the Second Circuit affirmed the decision of the District Court dismissing Farrish's procedural due process claim because he had no property right in his probationary position. Like Farrish, Fago did not have a property right in his probationary promotion and was not entitled to procedural due process protections.

## VI.    Defendants' Alleged Conduct Does Not Shock the Conscience.

---

[14] Attached at Tab 4.

[15] Rule IX(4) of the City of Hartford Personnel Rules and Regulations provides in relevant part: "At any time during the probationary period, the appointing authority may recommend in writing to the Director of Personnel the removal of an employee, if in his opinion the working test period indicates that such employee is unable or unwilling to perform the duties of the position satisfactorily or that his habits and dependability do not merit his continuance in the service." <u>See</u> Defs.' 56(a)1 ¶ 10; Chin Decl. ¶ 5, App. B, Tab 1.

[16] Hartford's Personnel Rule XIII(3) provides: "Any *permanent employee* who is dismissed, demoted, or suspended may appeal in writing to the Personnel [sic] within 5 working days of the date of such service." Chin Decl. ¶ 5, App. B, Tab 1 (emphasis added). Rule II(14) defines "permanent employee" as "an employee who has been regularly and legally appointed to a position in the classified service after satisfactorily completing his working test period in accordance with the Charter." <u>Id.</u>

[17] Section 1.8 of Hartford's CBA provides that "no probationary employee in any promotional classification shall have access to the grievance procedure where the issue is one of their demotion." Defs.' 56(a)1 ¶ 7; Kenton Decl. ¶¶ 26, 39, Ex. D, App. B, Tab 2.

8

In support of his substantive due process claim, plaintiff alleges a variety of conduct by the defendants. Pl. Mem. at 32-33. As a preliminary matter, it should be noted that the vast majority of the citations provided plaintiff at pages 32 through 33 of his Memorandum simply do not support the proposition for which they are offered. Nevertheless, even if taken as true, they still would not give rise to a claim for violation of substantive due process. "The protections of substantive due process are available only against egregious conduct which goes beyond merely 'offending some fastidious squeamishness or private sentimentalism' and can fairly be viewed as so 'brutal and offensive to human dignity' as to shock the conscience." Smith v. Half-Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 173 (2d Cir. 2002) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 & n.6 (2d Cir. 1973)). In Half-Hollow Hills Cent. Sch. Dist. the Second Circuit held that a single, full-force slap in the face with an open hand of a seventh-grade student by a public school teacher – an actual physical assault which caused the student severe physical and emotional pain for which he underwent psychotherapy – was not so "'brutal and 'offensive to human dignity'" as to shock the conscience," and therefore did not violate substantive due process. Id. In light of the very high standard set by the Second Circuit in Half-Hollow Hills, none of the defendants' alleged conduct – even if taken as true- is sufficiently sever enough to give rise to a claim for violation of substantive due process.

## VII.    Fago Cannot Prevail on His First Amendment Claim.

Fago alleges that the defendants retaliated against him in violation of his First Amendment rights based on: (1) his testimony in Amador v. City of Hartford; (2) the filing

of sexual harassment complaints; (3) the filing of the Complaint in this case; and (4) his other testimony against the HPD. Pl. Mem. at 34.

### 1.    Testimony in <u>Amador</u>.

Fago's testimony in Amador focused on what he personally did to prepare for a promotional exam; it did not touch on matters of public concern. <u>See</u> Pl. Ex. 27. Further, as Fago admitted at his deposition, his testimony in <u>Amador</u> was favorable to the City. Fago Vol. I at 157. It would be illogical for Marquis, Jones or Pawlina to retaliate against him for such testimony, and there is no evidence that they did so.

### 2.    Filing of a Sexual Harassment Complaint.

Fago alleges that the defendants retaliated against him for filing a sexual harassment complaint against McClure in 1996, relating to the way that McClure pronounced his name. Defs.' 56(a)1 ¶¶ 144, 157. This complaint clearly dealt only with Fago's individual employment situation and did not implicate matters of public concern. <u>See</u> <u>Salpaugh v. Monroe Cnty. Hosp.</u>, 4 F.3d 134, 143 (2d Cir. 1993)(finding that employee's complaints of sex discrimination did not implicate matters of public concern because they were motivated by and dealt with her individual employment situation."). Moreover, the long period of time between his 1996 complaint and any of the events alleged in the Complaint undermines any suggestion that the events are causally connected. Marquis, the individual who ultimately recommended that plaintiff be demoted, was not even aware that Fago had filed such a claim. <u>See</u> ¶ 94 Plaintiff's 56(a)2 Statement.

### 3.    Filing of this Lawsuit.

Fago claims that "[a]fter the filing of this lawsuit, Pawlina initiated disciplinary charges against [him] for the alleged events within his improper investigation...." Pl. Mem. at 36. However, in his April 25, 2002 report – *prior* to the filing of this lawsuit – Pawlina stated that he would recommend Fago be disciplined. Defs.' 56(a)1 ¶ 71. Further, at the time Pawlina submitted the disciplinary form to Jones, Fago's operative Complaint in this lawsuit clearly did not touch on matters of public concern.[18]

### 4. Fago's Other Testimony Against the HPD.

#### (a) Russo v. City of Hartford

Fago testified at his deposition that he was deposed in the Russo cases in either September or October 2003, but this was long *after* his demotion in May 2002 and the referral for discipline in June/July 2002. Defs.' 56(a)1 ¶¶ 101, 161. Thus, neither his demotion nor the referral for discipline could have been in retaliation for his testimony in Russo. Since the time of his demotion, he only claims to have been subjected to "verbal abuse, and improper interrogations, retaliatory mandatory training sessions, threats of transfer and ignoring and dismissing [his] concerns." Pl. Mem. at 38. None of these constitutes an adverse employment action.[19]

---

[18] The Police Defendants believe that the operative (July 29, 2003) Complaint in this lawsuit does not touch on matters of public concern, but rather relates only to Fago's personal employment situation. However, even if the Court accepts plaintiff's argument that the July 29, 2003 Complaint addresses matters of public concern because it alleges "systemic discrimination" based on race, the Complaint did not allege race discrimination at the time Pawlina submitted the Form 90. Fago originally filed this lawsuit on July 11, 2002. Defs.' 56(a)1 ¶ 104. It was not until he amended his Complaint on or after October 8, 2002 -- several months after Pawlina had submitted the Form 90, see Defs.' 56(a)1 ¶101, that Fago alleged discrimination based on race. A review of the October 8, 2002 Complaint reveals his allegations of race discrimination related only to his *personal* employment situation, rather than "systemic" issues.

[19] It is undisputed that Fago was not transferred on either July 15 or July 25, 2003. Defs.' 56(a)1 ¶ 163. Further, Fago's claim regarding an alleged "retaliatory investigation and subsequent discipline on July 15, 2004" involving "conflict resolution training" should be disregarded. Pl. Mat. Facts ¶ 131. This alleged incident is not part of the operative (July 29, 2003) Complaint in this lawsuit and occurred after defendants'

(b)     **Stack v. City of Hartford** and **Perodeau v. City of Hartford**

For the first time, Fago now claims that he has retaliated against for his "whistle blowing" testimony and affidavits in the Perodeau and Stack cases. Nowhere in either his original or amended Complaints in this lawsuit has Fago alleged that he testified or provided affidavits in Stack or Perodeau, or that he was claiming retaliation based on such participation. Fago cannot now raise this claim for this first time in his opposition to defendants' Motions for Summary Judgment. The Court should disregard this claim.[20]

(c)     **Murdock v. City of Hartford**

Fago claims that he gave a deposition and testified at the trial in Murdock, and that the defendants have retaliated against him based on such testimony. Pl. Mem. at 36; Defs.' 56(a)1 ¶ 151. Fago, however, has no evidence that Pawlina, Jones or Marquis ever read the transcripts of either his deposition or trial testimony in Murdock. Defs.' 56(a)1 ¶ 154. In fact, it is undisputed that Marquis was unaware that Fago testified in Murdock. Id. ¶ 152. Fago has no evidence to suggest a causal link between his testimony in Murdock and any action taken against him by the City. Id. ¶ 153.

## VIII. Fago Has Abandoned His Title VII Claim.

Although Fago's Complaint alleges a violation of Title VII, he has not briefed and presumably has abandoned this claim. See Pl. Mem. at 42-49. Also, it is undisputed that

---

Motions for Summary Judgment had been filed. Even if the Court were inclined to consider the alleged referral for "conflict resolution training" as an adverse employment action, as reflected in Assistant Chief Pawlina's Supplemental Declaration, attached at Tab 1, the City had a legitimate non-discriminatory reason for requiring Fago to attend anger management training.

[20] Even if the Court were to consider plaintiff's argument that he was retaliated based on his participation in Perodeau or Stack, there is no evidence in the record to reflect when he offered such testimony or affidavits or the substance thereof. Further, Fago has not presented evidence sufficient to establish a causal link between such testimony and any of the defendants' actions.

Fago has not exhausted his administrative remedies as required by Title VII. Defs.' 56(a)1 ¶ 167.

**IX.    Fago's § 1983 Claim Against the City is Without Merit.**

In support of his § 1983 claim against the City, Fago argues that "[t]he CBA ... adopted by the City of Hartford violated plaintiff's due process rights by refusing him the grievance process and allowing the defendants to escape any ramifications for their actions." Pl. Mem. at 45. This argument is without merit. As a member of the police union, Fago cannot now complain about the provisions of the collective bargaining agreement entered into by his union leadership.

Next, Fago argues that "Marquis established a policy wherein he would demote officers without just cause and based on their race...." Id. His only support for this claim is that Marquis allegedly "replaced him with an African American" and has never demoted a black person. Pl. Mat. Facts ¶¶ 126, 127. Even if these statements were true, they would not establish that Marquis was a policymaker for purposes of § 1983. Fago has chosen to completely ignore Looby v. City of Hartford, 152 F. Supp. 2d 181 (D. Conn. 2001), in which the Court held that the Hartford Fire Chief was not a policy-making official. Like the Fire Chief, the Police Chief's powers are expressly limited by the City Charter, the Personnel Rules and the City's anti-discrimination policies. Defs.' 56(a)1 ¶¶ 177-79.

Plaintiff also argues that he will "prevail on [his] § 1983 claims against all defendants because the plaintiff can establish that all defendants violated his constitutional rights through the policy and customs that were a part of a widespread custom in which false complaints

13

against white males were more thoroughly investigated that those against other races." Pl.

Mem. at 46. Plaintiff's own self-serving testimony does not support this claim.

### X.    Police Defendants' Statements Were Privileged and Cannot Form the Basis of Fago's Claims for Defamation or Intentional Infliction of Emotional Distress.

Plaintiff argues that Buyak, Rudewicz and Miele made defamatory statements during

their official interviews with the Internal Affairs Department. Pl. Mem. at 51.[21] These

statements also form the basis for Fago's claim for intentional infliction of emotional distress.

Pl. Mem. at 51. However, such statements are privileged can cannot form the basis of

either a defamation claim,  see Craig v. Stafford Const. Inc., 78 Conn. App. 549, 550 (2003)

(Peters, J.) cert. granted 266 Conn. 916 (2003), or a claim for intentional infliction of

emotional distress. Petyan v. Ellis, 200 Conn. 243, 246-47 (1986).

### XI.    Conclusion

For all the foregoing reasons, along with the reasons discussed in the Police

Defendants' Memorandum in Support of their Motion for Summary Judgment, their Motion

should be granted.

---

[21] Plaintiff argues that "*[i]n his April 10, 2002, IAD interview*, Buyak made defamatory statements...." With respect to Miele, he claims, "*[d]uring his April 11, 2002, IAD interview*, Miele made defamatory statements such as...." Lastly, with respect to Rudewicz, he argues that "*[d]uring his IAD interview*, [he] referred to Fago as ... To make these false allegations of pathological behavior *in an official IAD interview* is extreme and outrageous." Pl. Mem. at 51.

14

THE DEFENDANTS
CITY OF HARTFORD, BRUCE MARQUIS,
KEVIN JONES, MARK PAWLINA,
JOSEPH BUYAK, MARK RUDEWICZ and
STEPHEN MIELE

By _____
    Charles L. Howard
    Federal Bar No. CT 05366
    Gregg P. Goumas
    Federal Bar No. 19095
    Shipman & Goodwin LLP
    One Constitution Plaza
    Hartford, CT 06103-1919
    Tel: (860) 251-5000
    Fax: (860) 251-5214
    Their Attorneys

15

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing Reply Memorandum was sent by U.S. Mail, postage prepaid, this 1st day of September 2004, to:

Joseph W. McQuade, Esq.
Jennifer L. Dixon, Esq.
Kainen, Escalera & McHale, P.C.
21 Oak Street, Suite 601
Hartford, CT 06106

James S. Brewer, Esq.
Brewer & O'Neil, LLC
818 Farmington Avenue
West Hartford, CT 06119

With Chambers Copy to:

The Honorable Alan H. Nevas
United States District Court
915 Lafayette Blvd.
Bridgeport, CT 06604

Gregg P. Goumas

379444 v.01 S1

16