UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL J. FAGO,                    :
                                   :
        Plaintiff,                 :
                                   :
        v.                         :
                                   :   CIVIL NO. 3:02cv1189(AHN)
CITY OF HARTFORD,                  :
BRUCE MARQUIS, KEVIN JONES,        :
MARK PAWLINA, JOSEPH BUYAK,        :
MARK RUDEWICZ, STEPHEN MIELE,      :
NANCY MCCLURE,                     :
                                   :
        Defendants.                :

RULING ON MOTIONS FOR SUMMARY JUDGMENT

The plaintiff, Michael Fago ("Fago"), a Hartford police officer, filed this civil action on July 11, 2002 against the City of Hartford (the "City") and the following officers of the Hartford Police Department ("HPD"): Bruce Marquis, then-Chief of Police ("Chief Marquis"); Assistant Chief Kevin Jones ("Assistant Chief Jones"); then-Captain Mark Pawlina ("Captain Pawlina"); Captain Joseph Buyak ("Buyak"); Lieutenant Mark Rudewicz ("Rudewicz"); Lieutenant Stephen Miele ("Miele"); and Lieutenant Mary McClure ("McClure")[1] (together the "Individual Defendants"). Fago brings a Fourteenth Amendment equal protection claim under 42 U.S.C. § 1983 against all Individual Defendants, a due process claim against Chief Marquis, Assistant Chief Jones, and Captain

_____

[1] Joined as defendants and represented along with McClure were also Hartford police officers Patrick Jobes ("Jobes") and Robert Russell ("Russell"). However, a stipulation of dismissal as to Jobes and Russell was filed in April 2005.

Pawlina, a First Amendment retaliation claim under § 1983 against

all Individual Defendants, a Monell claim against the City, a

state-law claim of intentional infliction of emotional distress

against the Individual Defendants, and a state-law defamation

claim against McClure, Buyak, Miele, and Rudewicz.  On April 30,

2004, McClure filed a motion for summary judgment as to all

claims.[2]  On May 20, 2004, the remaining defendants also moved

for summary judgment.  Additionally, the defendants filed a

motion to strike[3] various portions of affidavits that Fago

submitted in opposition to their motions for summary judgment.

In March 2005, all motions were denied without prejudice to

renewal after substitute counsel replaced Fago's former counsel.

_____

[2] McClure is represented separately from the other
defendants.

[3] The defendants have moved to strike [doc # 153] portions of
the affidavits of Michael Fago and Daniel Albert that were
submitted with Fago's opposition to defendants' motion for
summary judgment.  The defendants assert that all or portions of
paragraphs 2-3, 5-9, 11, 13, and 15 of Fago's affidavit and
portions of paragraphs 2 and 4 of Albert's affidavit should be
stricken because they are either conclusory and/or not based on
personal knowledge.  Because, even with those affidavits before
the court, the defendants are entitled to summary judgment, there
is no need to reach the merits of defendants' motion to strike.
The motion to strike the paragraphs that contain conclusory
generalizations is therefore DENIED as moot.
    Additionally, the defendants assert that the court should
strike paragraph 11 of Fago's affidavit because the events
alleged therein are not relevant to this lawsuit.  To the extent
that the affidavit contains irrelevant material, the court has
not considered that material in ruling on the motion for summary
judgment.  Consequently, the motion to strike the paragraph that
contains irrelevant material is also DENIED as moot.

These motions were renewed, and on February 22, 2006, the court heard oral argument. For the reasons that follow, the defendants' motions for summary judgment are GRANTED.

<u>FACTS</u>

The following facts are not disputed. In 1986, Fago, a white male, joined the HPD as a cadet. In 1987, Fago became a sworn HPD officer. In 1995, Fago was promoted to the rank of sergeant. On May 27, 2001, Chief Marquis promoted him to the rank of lieutenant and Fago began a one-year probationary period at that rank. At the same time, Chief Marquis also appointed John Betz, Daniel Albert, Edward Moehringer III, Brian Heavren, Joseph Sikora, and Gordon James as probationary lieutenants. Including Fago, six of the seven individuals who Chief Marquis appointed as probationary lieutenants are white males; only one, Gordon James, is an African-American male.

Several months later, Rudewicz submitted a memorandum dated September 5, 2001 (the "Rudewicz Memorandum") to Captain Pawlina reporting that Fago harassed him. Specifically, Rudewicz claimed that when Fago passed him he cleared his throat, made an awkward facial expression, approached him and began to hum, and that Fago did so to harass and intimidate him. Captain Pawlina took no action against Fago with respect to Rudewicz' complaint.

On February 25, 2002, an incident occurred in a hallway/stairwell in the HPD headquarters building (the

"Stairwell Incident").  McClure was standing in the hallway speaking with HPD Sergeant Scott Sansom ("Sansom").  Lieutenant Mark Francis ("Francis") and Detective Thomas Zemienieski ("Zemienieski"), both of the Windsor Police Department, were also in the stairwell.  According to McClure, Fago, who was passing in the hallway, made physical contact with her.  The next day, McClure wrote a memo to Captain Pawlina regarding the Stairwell Incident, complaining that Fago had intentionally made physical contact with her.

On March 1, 2002, Captain Pawlina met with McClure to discuss the Stairwell Incident.  McClure told him that Fago made contact with her that was hard enough to knock her pocketbook from her shoulder.  McClure also told Captain Pawlina that Fago had harassed other officers, including Buyak, Miele, Rudewicz, Jobes, Russell, and Maticke and that Lieutenant Even had also witnessed Fago engaging in other harassing conduct.  McClure stated that she feared Fago would act against her physically.

Thereafter, Captain Pawlina contacted the three officers who had witnessed the Stairwell Incident.  Sansom said he saw Fago in the stairwell, but did not see any physical contact between Fago and McClure.  Zemienieski stated that he saw Fago bump McClure, but was unsure whether he did so intentionally.  Francis said that he did not see any physical contact between Fago and McClure because he was walking up the stairs and facing the opposite

4

direction.

On March 3, 2002, McClure reported to Captain Pawlina that Fago had driven his car past her in the HPD parking lot in an intimidating manner.  Later that day, Captain Pawlina met with Fago to discuss McClure's claims.  Captain Pawlina told Fago that he was investigating McClure's claim regarding the Stairwell Incident and also whether Fago's conduct toward other officers demonstrated a pattern of harassment and intimidation.

With regard to the Stairwell Incident, on March 4, 2002, Captain Pawlina met with Fago and McClure, and told them that he was going to conduct a thorough investigation into McClure's allegations.  The next day, Captain Pawlina wrote a memorandum to both Fago and McClure and stated that the allegations, if proven, would lead to severe discipline.  He also advised that baseless accusations would be treated with the same severity.

In connection with his investigation into the allegations of Fago's intimidating and harassing conduct toward other HPD officers, on March 11, 2002, Captain Pawlina sent interrogatories to all lieutenants and sergeants in HPD's patrol division.  He asked them if they had ever observed, witnessed, or been a victim of any type of harassment, intimidation, or violence in the workplace by Fago, and if so, to describe in detail what had occurred.  In reply, Jobes and Miele reported separate instances in which they claimed Fago harassed or intimidated either them or

others.  Lieutenant Even reported that he had observed Fago harassing other officers.

Captain Pawlina then directed HPD's Internal Affairs Division ("IAD") to interview Buyak, Rudewicz, Miele, McClure, Russell, Jobes, Even, and Sergeant Maglieri.  Rudewicz told the IAD investigators that Fago had harassed him after he dated Fago's former and current girlfriend, Laura Buyak (also a HPD officer and the sister of Buyak, one of the Individual Defendants in this case).  Rudewicz also reported ten incidents that occurred between 1994 and 2002, including two that occurred during Fago's probationary period in which Fago allegedly harassed or intimidated him, and a 2001 incident in which Fago physically bumped into him in a HPD headquarters hallway.

When the IAD interviewed Buyak, he described an April 21, 1993 incident for which he disciplined Fago and, in response to that disciplinary action, Fago referred to him as a "cunt" and "a piece of shit" and called his sister a "whore."  Buyak also described instances in which Fago walked by him and made grunting sounds to get his attention.  Buyak told IAD investigators that he perceived Fago as "unstable" and a "loose cannon".

Miele told the IAD investigators that Fago harassed and intimidated him because of his prior relationship with Laura Buyak.  Miele described Fago's conduct by saying if "you're in the hallway he'll try steering you down, uh, kind of walk up the

6

hallway towards you and try to make contact with you." Miele also stated that Fago would try to provoke him to fight, in part by using profane and derogatory language. Miele described Fago as having "bully" behavior and as "a dangerous guy."

Russell told the IAD investigators that Fago made intimidating gestures toward him in the federal courthouse during the trial of the "Sergeants' case," a case that had been brought by Russell and Jobes against the HPD involving the process by which the HPD appoints sergeants. Russell also told the IAD investigators that Fago had arbitrarily changed Russell's duty assignments and unnecessarily contacted him at home.

Jobes reported to the IAD investigators that Fago had physically bumped into him on more than one occasion at the federal courthouse during the "Sergeants' case." Jobes also described an instance in which Fago had bumped into the chair in which he was sitting and then leaned on him while McClure was explaining an HPD-computer program to him at HPD headquarters.

When McClure was interviewed by the IAD investigators, she discussed the Stairwell Incident and also complained about two subsequent occasions in which Fago allegedly stalked her in the HPD parking lot.

After the IAD interviews were completed, Captain Pawlina interviewed Fago at the IAD office. IAD's commander and a union representative were also in attendance. Fago denied all of the

allegations against him.

On April 25, 2002, Captain Pawlina submitted an
"Investigative Packet" to Assistant Chief Jones regarding the
Stairwell Incident and the IAD investigation.  Captain Pawlina
excluded from the Investigative Packet certain documents that
Fago had given him because he believed that they did not prove or
disprove any of the allegations.  Based on the conduct reported
by McClure and Rudewicz, Captain Pawlina found that there was
sufficient information to corroborate the allegations of
harassment and intimidation in the workplace by Fago.  Based on
statements made by Buyak, Miele, Rudewicz, Russell, Jobes, Even,
and McClure that identified specific episodes of harassment over
several years, Captain Pawlina concluded that there was a
continuous pattern of harassing and intimidating conduct on the
part of Fago.  Captain Pawlina also concluded that the Stairwell
Incident had occurred and was intentional.  Pursuant to Rule IX
of the City's Personnel Rules and Regulations ("Personnel
Rules"),[4] Captain Pawlina recommended that Fago receive an

---

[4]Under the City's Personnel Rules, all promotions are
subject to a probationary period of three months to one year.
Rule IX requires supervisors to complete interim and final
probationary employee-performance evaluations.  One of the
categories on which probationary employees are evaluated is their
or her ability to work in harmony with co-workers at all levels.
Under Rule IX, a probationary employee can be dismissed at any
time during a probationary period if an appointing authority
recommends in writing to the City's personnel director that a
probationary employee not continue in his or her probationary
position and states that the working test indicates that the

unsatisfactory final probationary performance evaluation and that he not be allowed to continue as a lieutenant.

Previously, however, before this final recommendation and before the IAD investigation had been completed, Captain Pawlina had submitted to Assistant Chief Jones a second-interim evaluation for Fago for the period ending February 22, 2002, in which he rated Fago's performance as "satisfactory." After Assistant Chief Jones received this interim evaluation on April 2, 2002, he rated Fago's performance as "needing improvement." Chief Marquis signed this second-interim evaluation on April 2, 2002. But at some point between April 2, 2002 and April 25, 2002, Captain Pawlina concurred with Jones's assessment of Fago and changed his prior "satisfactory" performance rating to a "needs improvement." Fago did not receive a copy of the second-interim evaluation with Captain Pawlina's satisfactory rating, only the one reflecting his changed assessment.

After Assistant Chief Jones received the Investigative Packet and Captain Pawlina's final probationary performance evaluation and recommendation, he recommended to Chief Marquis that Fago not continue in his probationary position. Chief

---

employee is unwilling or unable to perform his duties or that his habits and dependability do not merit his continuance in that position. If the personnel director concurs with the recommendation, the probationary employee is removed from his or her probationary position, and if applicable, returned to his or her former position.

9

Marquis then discussed with Rae Ann Palmer ("Palmer"), a civilian responsible for the HPD's youth initiatives and Fago's immediate supervisor, and Elizabeth Dunn ("Dunn") of the City's personnel office, the possibility that Fago be demoted or his probationary period be extended.

On May 16, 2002, Chief Marquis met with Assistant Chief Jones, Carlson, Fago, and the union president, and informed Fago that he had determined that Fago's performance as a probationary lieutenant was unsatisfactory and that he was returning Fago to his rank of sergeant. At this time, Fago also received the second-interim evaluation. Although he was returned to the rank of sergeant on May 16, 2002, Fago received pay as a lieutenant through May 30, 2002.

Thereafter, on June 20, 2002, Captain Pawlina initiated HPD's disciplinary process in connection with the Stairwell Incident. Department Advocate Calderone later exonerated Fago, dismissing McClure's account of the Stairwell Incident as not credible. No disciplinary action was taken against McClure. On July 11, 2002, Fago filed this action.

<u>STANDARD OF REVIEW</u>

Summary judgment should be granted if the record demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See <u>Chambers v. TRM Copy Ctrs. Corp.</u>, 43 F.3d 29,

36 (2d Cir. 1994); Fed. R. Civ. P. 56(c).  The burden of
demonstrating the absence of any genuine issue of material fact
rests on the moving party, see Celotex Corp. v. Catrett, 477 U.S.
317, 323 (1986), and all ambiguities and inferences that may
reasonably be drawn from the facts must be viewed in the light
most favorable to the nonmoving party, see Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248-49 (1986).  Once a party moving
for summary judgment has made a properly supported showing as to
the absence of any genuine issue as to all material facts, to
defeat summary judgment the nonmoving party must come forward
with evidence such as affidavits, deposition testimony, answers
to interrogatories and admissions on file, that show there is a
genuine factual issue for trial.  See, e.g., Amnesty Am. v. Town
of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002); Goenaga v.
March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.
1995).  A disputed issue is not created by a mere allegation in
the pleadings, see Applegate v. Top Assoc., Inc., 425 F.2d 92, 96
(2d Cir. 1970), or by surmise or conjecture, see Quinn v.
Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir.
1980).  Conclusory assertions also do not create a genuine
factual issue.  See Delaware & Hudson Ry. Co. v. Conrail, 902
F.2d 174, 178 (2d Cir. 1990).  Where affidavits are submitted on
summary judgment they "shall be made on personal knowledge, shall
set forth such facts as would be admissible in evidence, and

11

shall show affirmatively that the affiant is competent to testify to the matters stated therein." Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001) (quoting Fed. R. Civ. P. 56(e)).  Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the nonmoving party's case." Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).

## DISCUSSION

There are two summary judgment motions pending.  The Individual Defendants move for summary judgment on Fago's § 1983 equal protection, due process, retaliation claims as well as his state-law claims; the City moves for summary judgment on Fago's § 1983 Monell claim.  There are no genuine issues of material fact as to any of these claims, and thus summary judgment is an appropriate vehicle to resolve this case.

I.    Equal Protection Claims Against Individual Defendants[5]

---

[5] Fago brings his § 1983 claim against the Individual Defendants in their official and individual capacities in counts one, two and three.  However, a § 1983 suit against a municipal officer in his official capacity is considered a suit against the municipality itself, see Brandon v. Holt, 469 U.S. 464, 472 (1985), and therefore the officer may be held liable only if the municipality is liable for a "policy" or "custom" of unconstitutional discrimination under the principles of Monell v. New York City Dept. of Social Serv., 436 U.S. 658, 690-91 (1978). See Brandon, 469 U.S. at 472-73.  Because, as discussed at length below, there is no liability under Monell, to the extent that counts one, two and three are brought against the Individual Defendants in their official capacity, these claims are dismissed.

Fago brings both a traditional, race-based equal protection claim against the Individual Defendants as well as a "class of one" equal protection claim. He maintains that he was treated differently than other similarly-situated HPD officers because he was demoted from lieutenant to sergeant on the basis of his race. Alternatively, he maintains that he was singled out from other similarly-situated HPD officers when he was demoted for reasons that were wholly arbitrary. The Individual Defendants move for summary judgment on the grounds that Fago has no evidence to prove that similarly-situated HPD officers were treated differently, that the decision to demote him was based on improper motives, or that they acted arbitrarily. Thus, they maintain that Fago cannot prevail on his equal protection claim under either a race-discrimination theory or a "class of one" theory.

A.    Race-based Equal Protection Claim

"The Equal Protection Clause requires that the government treat all similarly situated people alike." Harlan Assoc. v. Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (citations omitted). Traditional equal protection claims are based on alleged disparate treatment resulting from some suspect classification, like race. See Jackson v. Burke, 256 F.3d 93, 96 (2d Cir. 2001). Thus, to prevail on his race-based equal protection claim, Fago must prove (1) that he was treated

differently from other similarly-situated individuals, and (2) that such differential treatment was based on race, the impermissible basis he alleges.  See Harlan Assoc., 273 F.3d at 499.  "To be similarly situated, the individuals with whom [the plaintiff] attempts to compare [himself] must be similarly situated in all material respects." Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997) (internal quotation marks and citations omitted).  The Second Circuit has clarified that the plaintiff must establish "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." Graham v. Long Is. R.R., 230 F.3d 34, 40 (2d Cir. 2000); see also McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001). "[A] court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." Harlen Assoc., 273 F.3d at 499 n.2.

Based on the record before the court, Fago has not established either of the two required elements of a traditional equal protection claim.  First, he has not set forth any evidence showing that the Individual Defendants treated him differently from a group of similarly-situated HPD officers because none of the HPD officers he compares himself to were similarly-situated. Second, he has not shown that he was treated differently because of his race.

14

With regard to the first requirement, Fago has not presented any facts demonstrating that similarly-situated probationary lieutenants were treated differently.  See Shumway, 188 F.3d at 64.  Fago merely identifies a broad pool of HPD officers and asserts that he was treated differently than the officers in that group, but does not show how these officers are comparable to him, or that they engaged in comparable conduct, or even that they were treated differently.  Rather, his allegedly similar group is comprised either of officers who are also white, or officers who had completed their probationary periods during the tenure of other chiefs of police, or officers who were not probationary lieutenants, or officers who were disciplined for conduct that was dissimilar to the harassing and intimidating conduct for which Fago was demoted.  Because none of these officers are similarly situated to Fago in any respect let alone all material respects, he has not established the first requirement of his traditional equal protection claim.  See Graham, 230 F.3d at 40; see also McGuinness, 263 F.3d at 53-54.

With regard to the second element of a traditional equal protection claim, Fago has submitted no evidence showing that the asserted disparate treatment was based on his race.  See Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977) (holding that the plaintiff must show that an "invidious discriminatory purpose was a motivating factor" to establish a

violation of the Equal Protection Clause).  Rather, to support his claim that he was demoted because of his race, Fago maintains that he was replaced as a probationary lieutenant by a black male, relying on the undisputed evidence showing that after he was demoted, in July 2002 Chief Marquis appointed four probationary lieutenants from a list of six eligible sergeants and that two of them were white and two were black.  While replacement by someone outside the protected class suffices for the required inference of discrimination at the prima facie stage, see Rosso v. PI Mgmt. Assocs., L.L.C., No. 02 Civ. 1702, 2005 WL 3535060, at *17 (S.D.N.Y. Dec. 23, 2005) (citing Zimmermann v. Assocs. First Capital Corp., 251 F.3d, 381 (2d Cir. 2001)), the fact that Fago was so replaced, even if true, is not sufficient to maintain his race-based equal protection claim in light of the Individual Defendants' legitimate, non-discriminatory reason for Fago's demotion.  See Sorlucco v. New York City Police Dep't, 888 F.2d 4, 7 (2d Cir. 1989) (noting that employment discrimination claims under § 1983 based on race are subject to the same McDonnell Douglas burden shifting analysis as claims brought under Title VII).  Indeed, Fago ignores the defendants' uncontroverted evidence establishing that he was demoted for valid, performance-related reasons after a full investigation pursuant to City policy and regulations.  This evidence is sufficient to rebut the only evidence Fago has to

support his allegation of impermissible race-based
discrimination.  But even if he could provide factual support for
his conclusory assertion that Chief Marquis never demoted any
black males, such evidence would still be insufficient to rebut
the Individual Defendants' evidence that the real reason Fago was
demoted was because of his performance.  Thus, because Fago has
failed in his ultimate burden of submitting evidence from which a
jury could conclude that Chief Marquis intentionally
discriminated against him on the basis of race when he demoted
him, see Reeves v. Sanderson Plumbing Products, Inc., 530 U.S.
133, 143 (2000), his equal protection claim must fail.[6]

     This is also true with regard to the lack of evidence
showing that the other Individual Defendants were racially
motivated in their alleged discriminatory conduct toward Fago.
Indeed, Fago testified at his deposition that he did not know if
Captain Pawlina investigated him because he is white or if either
Captain Pawlina or Assistant Chief Jones recommended that he be
demoted because of his race.  Fago also has no offered no

_____

     [6]Significantly, Fago also fails to address the same-actor
inference that further supports the Individual Defendants'
evidence showing that Chief Marquis had a legitimate non-
discriminatory reason for demoting Fago.  Because Chief Marquis
made the decision to promote Fago to lieutenant and also made the
decision to demote him, it is difficult to impute an invidious
motive to his decision.  See Grady v. Affiliated Cent., Inc., 130
F.3d 553, 560 (2d Cir. 1997) (holding that when the person who
made the decision to fire was the same person who made the
decision to hire, it is difficult to impute an invidious motive
that would be inconsistent with the decision to hire).

evidence that would show that McClure, Rudewicz, Buyak, or Miele were motivated to make allegedly false statements to the IAD investigators because of Fago's race, or that they committed any other acts directed at him because of his race.  In sum, Fago has no evidence showing that his race was a motivating factor in any of the actions of the Individual Defendants.  Without such evidence, his race-based equal protection claim against the Individual Defendants fails as a matter of law.[7]  See Arlington Heights, 429 U.S. at 265.

   2.   Class of One Equal Protection Claim

   Similarly, Fago submits no evidence to support his "class of one" equal protection claim.  "Successful equal protection claims

---

[7]For this reason, Fago's claim that the Individual Defendants violated his equal protection right to be free from race discrimination by subjecting him to a hostile work environment must also fail.  Although such alleged activity is actionable under Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 143-44 (2d Cir. 1993), Fago must show that the alleged harassment was based on his membership in a protected class, such as race, and that the harassment was sufficiently severe and pervasive to alter the conditions of his employment.  See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  Fago's conclusory assertion that Chief Marquis and his administration were open to the idea of demoting probationary lieutenants based on complaints in order to promote blacks and other minorities to that position, is wholly without factual support.  While Fago makes a conclusory assertion that Rudewicz, Buyak, Miele, and McClure made false statements in the IAD investigation, he fails to link these acts with racial animus.  Because there is nothing in this record that even resembles a pattern of race-based harassment, see Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002), nor evidence of even a single racially motivated incident, much less one that is particularly severe, see Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000), this claim is meritless.

may be brought by a 'class of one' where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564-565 (2000)).  The Second Circuit has clarified that under the first prong of a class of one claim, the level of similarity between a plaintiff and the persons with whom he compares himself must be extremely high.  <u>See</u> <u>Nielson v. D'Angelis</u>, 409 F.3d 100, 104 (2d Cir. 2005).  Indeed, plaintiffs pursuing a class of one claim "must demonstrate that they were treated differently than someone who is <u>prima facie</u> identical in all relevant respects." <u>Id.</u> (quoting <u>Purze v. Village of Winthrop Harbor</u>, 286 F.3d 452, 455 (7th Cir. 2002)).  Such a high degree of similarity is required in a class of one claim because "[t]he similarity and equal protection inquiries are ... virtually one and the same in ... a 'class of one' case." <u>Nielson</u>, 409 F.3d at 105.

In addition to proving disparate treatment, a plaintiff alleging a class of one equal protection claim must prove that the challenged governmental action is irrational or arbitrary. This inquiry does not turn on whether the action was correct, but focuses instead "on whether the [governmental] official's conduct was rationally related to the accomplishment of the work of the agency." <u>Bizzarro v. Miranda</u>, 394 F.3d 82, 88-89 (2d Cir. 2005).

In this case, Fago's class of one claim fails under both prongs because he does not establish a similarly situated group that is prima facie identical to his circumstances and does not demonstrate that the Individual Defendants' actions were irrational or arbitrary.

Just as he failed to identify a similarly situated group for purposes of his traditional equal protection claim, Fago has not identified any HPD officers who are identical to him as required by Nielson, for purposes of his class of one claim. Specifically, he has failed to identify any other probationary lieutenant who was demoted after an investigation revealed a pattern of abusive and harassing behavior toward fellow officers.

Further, Fago has no evidence showing that Chief Marquis or any of the Individual Defendants acted irrationally or arbitrarily.  See Barstow v. Shea, 196 F. Supp. 2d 141, 148 (D. Conn. 2002).  Rather, the record evidence establishes that Chief Marquis had a legitimate basis for investigating the Stairwell Incident, that Captain Pawlina conducted a thorough investigation into the allegations of Fago's inappropriate behavior towards fellow officers, and that, based upon the results of Captain Pawlina's investigation, Chief Marquis had a legitimate basis for recommending Fago's demotion.  The uncontroverted evidence also shows that Chief Marquis followed HPD policy and regulations in connection with Fago's demotion.  Under Rule IX, a probationary

20

employee can be dismissed at any time during a probationary
period if an appointing authority recommends in writing to the
City's personnel director that he not continue in his
probationary position and states, <u>inter</u> <u>alia</u>, that the
probationary officer's habits and dependability do not merit his
continuance in that position.  Thus, Chief Marquis's
recommendation was not arbitrary, but was made after a full
inquiry and in accordance with HPD policy and procedures.  <u>See</u>
<u>Olech</u>, 528 U.S. at 564.  Because the Individual Defendants have
met their burden of showing an absence of proof on Fago's part as
to the two essential elements of a class of one equal protection
claim, the Individual Defendants are entitled to judgment as a
matter of law on this claim.

II.  <u>First Amendment Retaliation Claim Against Individual</u>
     <u>Defendants</u>

     In his § 1983 First Amendment retaliation claim, Fago
alleges that he was demoted from his position as a probationary
lieutenant in retaliation for his protected speech.
Specifically, he claims that the Individual Defendants retaliated
against him because he (1) filed  a sexual harassment complaint
against McClure in 1996, (2) filed a grievance against Carlson in
May 2002, (3) testified in various HPD-related lawsuits, and (4)
filed this action.  The Individual Defendants maintain that none
of these activities constitute protected speech for purposes of a
First Amendment retaliation claim and that there is no causal

connection between these activities and the alleged retaliatory action.  The court agrees.

A public employee asserting a First Amendment retaliation claim under § 1983 must show by a preponderance of the evidence that: (1) his speech or actions constituted speech on a matter of public concern, see Connick v. Myers, 461 U.S. 138, 146 (1983), and (2) that the speech was "at least a 'substantial' or 'motivating' factor" in the employer's adverse action. See White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1058 (2d Cir. 1993) (quoting Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977)).  However, even if a plaintiff can establish these elements, the public employer may still prevail if it demonstrates that it would have taken the same adverse action in the absence of the protected speech.  See Mandell v. Cnty. of Suffolk, 316 F.3d 368, 384 (2d Cir. 2003).

The determination of whether a particular instance of speech is related to a matter of public concern presents a question of law and must be determined from the "content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48; see also Ezekwo v. New York City Health & Hosp. Corp., 940 F.2d 775, 781 (2d Cir. 1991).  To fall within the realm of "public concern," an employee's speech must relate to a matter of political, social or other concern to the community, and the employee must speak "as a citizen upon matters

of public concern," not simply "as an employee upon matters only of personal interest." Pappas v. Giuliani, 290 F.3d 143, 152 (2d Cir. 2002). If an employee's speech relates solely to issues that concern the employee personally, the speech is generally not protected. See Ezekwo, 940 F.2d at 781. In making its determination, the court should focus on the speaker's motive and must attempt to discern whether the speech was calculated to redress personal grievances or whether it had a broader public purpose. See Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999). A plaintiff "may not cast [his] personal work grievances in the light of public concern merely by offering [a] conclusory allegation" that his speech or conduct is a matter of public concern. See Thorpe v. Luisi, No. 00 Civ. 3144, 2005 WL 1863671, *6 (S.D.N.Y. Aug. 4, 2005). Even if an issue could arguably be viewed as a matter of public concern, an employee's First Amendment right to comment on that issue is entitled to little weight if the issue was raised solely in order to further his own employment interest. See White Plains Towing Corp., 991 F.2d at 1059.

Based on these requirements, Fago's sexual harassment complaint against McClure and his grievance against Carlson do not constitute protected activity for First Amendment purposes. Both the sexual harassment complaint against McClure, which alleged that McClure mispronounced his name as "Fag-o," and the

23

grievance against Carlson, which alleged that Carlson made
derogatory comments about him, constitute only personal
grievances.  See Pappas, 290 F.3d at 152.  They are not matters
of public concern because they did not involve issues of
political, social or other concern to the community, and were
calculated to redress Fago's personal greivances.  See Lewis, 165
F.3d at 163-64.  Fago's conclusory assertions casting these
personal work grievances as matters of public concern do not make
them so.  See Thorpe, 2005 WL 1863671 at *6.

Fago also cannot use the filing of this lawsuit as a basis
for his retaliation claim even if the subject matter of this case
touched on a matter of public concern, see Konits v. Valley
Stream Cent. High School Dist., 394 F.3d 121, 124 (2d Cir. 2005),
because there is no causal connection between this lawsuit and
his demotion, the alleged retaliatory action.  See Sumner v.
United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990); see
also White Plains Towing Corp., 991 F.2d at 1058.  The undisputed
evidence shows that this lawsuit was filed after he was demoted
and thus the two cannot be causally connected.  See Sumner, 899
F.2d at 209.  Moreover, even if Fago could show a causal
connection between the filing of this lawsuit and any alleged
threats to transfer him, such threats alone, without a showing of
a negative change in the terms and conditions of his employment,
would not be actionable adverse action.  While a transfer may

24

constitute an adverse employment action if it is "accompanied by a negative change in the terms and conditions of employment," Morris v. Landau, 196 F.3d 102, 113 (2d Cir. 1999), Fago presents no evidence that he was transferred much less that he experienced any negative changes in the terms and conditions of employment after he filed this lawsuit.  Without such evidence, he cannot maintain a claim of retaliation on the basis of his filing this lawsuit.

Further, even if Fago had any evidence showing that his testimony in various HPD-related lawsuits involved matters of public concern, such activity could not support his retaliation claim because he has not shown that such testimony was causally connected to his demotion.  See id.  Fago submits no evidence showing that Chief Marquis, Assistant Chief Jones, or Captain Pawlina even knew about, much less read the testimony he relies on from the Murdock case.  See Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 751 (9th Cir. 2001) (summary judgment appropriate when there is no evidence to establish that the defendant was aware of the protected speech); see also Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993) (same). Moreover, there is no temporal proximity between the date of his testimony in the Murdock case in 1999 or 2000 and the date of his demotion in May 2002.  See Sumner, 899 F.2d at 209.  Similarly, there is no causal relationship between his testimony in a

deposition in 2003 in <u>Russo v. City of Hartford</u> and his demotion in 2002.

The court also rejects Fago's factually unsupported assertion that the Individual Defendants retaliated against him because of his testimony in the "Sergeants case." Fago's testimony in that case merely involved his personal experience with the test required for promotion to the rank of sergeant. He submits no evidence to support his conspiracy theory that the Individual Defendants colluded with one another to retaliate against him because of his testimony. Because he has no facts to link that testimony to the decision to demote him, it cannot serve as a basis for his retaliation claim.

Finally, Fago's bold assertion that he was demoted in retaliation for some unspecified "whistle blowing" testimony and some unidentified affidavits he provided in two unnamed cases also fails in the absence of any supporting evidence showing that this activity involved matters of public concern or was causally connected to his demotion.

Because Fago submits no evidence to support his allegations of First Amendment retaliation, his claim fails.

III. <u>Due Process Claims Against the Individual Defendants</u>

In his § 1983 claim based on due process violations, Fago claims that Chief Marquis, Captain Pawlina, and Assistant Chief Jones deprived him of procedural due process by demoting him from

26

his probationary rank of lieutenant to the rank of sergeant
without first reviewing his probationary performance and basing
the decision to demote him on an incomplete investigation and
false accusations.  He further maintains that Chief Marquis's
decision to recommend Fago's demotion, Captain Pawlina's
investigation into the Stairwell Incident, and Assistant Chief
Jones's participation in the investigation and demotion
recommendation were shocking to the conscience in violation of
his substantive due process rights.  Because there are no genuine
issues of material fact as to either of these claims, summary
judgment is warranted as a matter of law.

A.   Procedural Due Process

Chief Marquis, Assistant Chief Jones, and Captain Pawlina
move for summary judgment on Fago's procedural due process claim
on the grounds that Fago received all the process to which he was
entitled and that, in any event, he failed to exhaust his
administrative remedies.  The court agrees.

State action violates procedural due process requirements
where it takes place without notice and an opportunity to be
heard.  See Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  To
find a procedural due process violation, the threshold inquiry is
whether the plaintiff has established a protected liberty or
property interest.  See id. at 309.  If so, the court must then
consider whether there was a deprivation of the identified

interest.  See id.  Whether a protected property interest exists
is a question of state law.  See Board of Regents v. Roth, 408
U.S. 564, 577 (1972).  In the employment context, a plaintiff
must show that state law created a property interest in the
alleged employment or in the benefit that was removed.  See
Bernheim v. Litt, 79 F.3d 318, 322 (2d Cir. 1996).  Under
Connecticut law, a "probationary employee, in the absence of
legislation, is not entitled to the protective procedure accorded
a career or permanent employee."  Millard v. Connecticut
Personnle Board, 170 Conn. 541, 547 (1976); see Jannsen v. Condo,
101 F.3d 14, 16 (2d Cir. 1996) ("Where state law defines an
employment position as probationary, the employee lacks a legal
claim of entitlement and therefore lacks a property interest in
the expectation of continued employment.") (internal quotation
marks omitted).  Further, a promotion is not a protectable
property interest unless the plaintiff has a claim of entitlement
to it.  See Andreucci v. City of New Haven, 916 F. Supp. 146,
147-48 (D. Conn. 1996).

Based on Connecticut law, Fago does not have the requisite
property interest either in his employment as a probationary
lieutenant or in a promotion.  The collective bargaining
agreement ("CBA") between the City and the union defines Fago's
rights as a probationary lieutenant.  The CBA states that no
probationary employee in any promotional classification shall

have access to the grievance procedure where the issue is one of
the employee's demotion.  Instead, the CBA provides that
probationary status is determined by the City's Personnel Rules.
Under Rule IX of the City's Personnel Rules, an appointing
authority has the discretion to recommend the removal of a
probationary employee "if in his opinion the employee will not or
cannot continue to perform in the probationary rank or if the
employee's habits and dependability do not merit his continuance
in service."  Thus, according to the provisions of the CBA and
Rule IX, Chief Marquis, as an appointing authority, had the
discretion to recommend that Fago be removed from his
probationary position.  Also, Fago, as a probationary employee,
was not entitled to the union grievance procedure in connection
with his demotion from a probationary position.  Thus, Fago did
not have a protected property interest in his position as a
probationary lieutenant.  Moreover, the undisputed evidence shows
that Fago received the benefit of all the procedures to which he
was entitled under the City's Personnel Rules.  Further, inasmuch
as Fago maintains otherwise, he has not shown any provision of
Rule IX that, as alleged, entitled him to be informed of the
length of time he would serve in his probationary position.
Rather, Rule IX merely provides that the probationary period
could not be longer than twelve months.

In sum, Fago has failed to establish a constitutionally

29

property interest in his position as probationary lieutenant, and
in any event, the undisputed evidence establishes that he was
afforded all the process that was due.  Accordingly, his
procedural due process claim is dismissed.

    B.   Substantive Due Process

    Similarly, the court finds that Fago's substantive due
process claim is without merit.  "Substantive due process
protects against government action that is arbitrary, conscience-
shocking, or oppressive in a constitutional sense, but not
against government action that is 'incorrect or ill-advised.'"
Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995)
(internal citation omitted).  "[W]ith regard to [the] 'shocks the
conscience' test that [t]he acts must do more than offend some
fastidious squeamishness or private sentimentalism ...; they must
be such as to offend even hardened sensibilities, or constitute
force that is brutal and offensive to human dignity."  DeLeon v.
Little, 981 F. Supp. 728, at 734-35 (D. Conn. 1997) (internal
citation omitted).  In sum, only the most egregious official
conduct violates a party's substantive due process rights.  See
Cty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).  For
instance, malicious and sadistic abuses of government power which
are intended only to oppress or to cause injury and that serve no
legitimate government purpose unquestionably shock the
conscience.  See Johnson v. Newburgh Enlarged Sch. Dist., 239

F.3d 246, 252 (2d Cir. 2001).

Because Fago has not produced any evidence to show that Chief Marquis, Captain Pawlina, and/or Assistant Chief Jones engaged in any conduct, that, as a matter of law, "shocks the conscience" or otherwise did not serve any legitimate government purposes, Fago's substantive due process claim fails.  As already noted, appointing authorities have the discretion to determine whether a probationary HPD employee successfully completes his or her probationary service.  If that authority finds that a probationary employee's habits and conduct toward fellow officers did not merit his continuance in that position, he can recommend that the probationary employee be dismissed or returned to his previous position.  Thus, Chief Marquis's decision to recommend Fago's demotion cannot be the basis of a substantive due process claim.  Moreover, even if, as Fago claims, Chief Marquis's investigation was incomplete in that he did not consider the documents Fago submitted, the undisputed evidence shows that Captain Pawlina determined that those documents were not relevant to the investigation.  But even assuming that Captain Pawlina's decisions with respect to the scope of the investigation and the documents that should be included in the Investigative Packet were "incorrect" or "ill-advised," such decisions, without more, even that would not support a substantive due process claim.  See Kaluczky, 57 F.3d at 211.  There is simply no evidence in the

record of any conduct on the part of Captain Pawlina, Assistant
Chief Jones, or Chief Marquis that arbitrary, oppressive of
conscience shocking and Fago's substantive due process claim is
also dismissed.

IV.  <u>Qualified Immunity</u>

        Additionally, the Individual Defendants have moved for
summary judgment on Fago's § 1983 equal protection, retaliation,
and due process claims on qualified immunity grounds.  They
maintain that they are entitled to qualified immunity because
Fago has not established that they violated his constitutional
rights or that their conduct was objectively unreasonable.  The
court agrees.

        In the first stage of the qualified immunity analysis, the
court must consider whether the facts, taken in a light most
favorable to the plaintiff, could show a constitutional
violation.  <u>See</u> <u>Cowan v. Breen</u>, 352 F.3d 756, 761 (2d Cir. 2003).
If so, the court must determine whether the right in question was
clearly established at the time the violation occurred, or if it
would have been objectively reasonable for the official to
believe that his conduct did not violate that right.  <u>See</u> <u>Saucier
v. Katz</u>, 533 U.S. 194, 201 (2001).  If either the right was not
clearly established or a reasonable official would not have
believed his conduct would violate that right, the official is
shielded from liability for civil damages.  <u>See</u> <u>Mandell v. Cnty.</u>

of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003).  Qualified immunity
provides "ample protection to all but the plainly incompetent or
those who knowingly violate the law."  Malley v. Briggs, 475 U.S.
353, 341 (1986).

Here, the Individual Defendants are entitled to qualified
immunity because the undisputed facts concerning their conduct,
viewed in the light most favorable to Fago, demonstrate that none
of Fago's constitutional rights were violated, but even if they
were, the officers' conduct was objectively reasonable.  See
Saucier, 533 U.S. at 201; see also Mandell, 316 F.3d at 385
(stating that an officer is entitled to immunity from suit if his
conduct did not violate plaintiff's clearly established rights).

Accordingly, all of the Individual Defendants are entitled
to qualified immunity.

V.    Municipal Liability under § 1983 & Title VII

The City moves for summary judgment on Fago's claims under §
1983 and Title VII on the grounds that he has failed to exhaust
his administrative remedies under Title VII and has failed to
establish any violation of his constitutional rights to warrant
relief under § 1983._____

A.    Title VII

Fago claims that the City violated Title VII when it demoted
him in retaliation for filing a sexual harassment claim against
McClure in 1996.  However, even if this claim had merit, the

33

claim would fail because Fago did not exhaust his administrative remedies.

Obtaining a right to sue letter is a statutory prerequisite to bringing suit in federal court for alleged violations of Title VII. See White v. Martin, 23 F. Supp. 2d 203, 205 (D. Conn. 1998). Fago did not file a complaint with the Equal Employment Opportunities Commission ("EEOC") or the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Thus, Fago failed to exhaust his administrative remedies and his Title VII claim against the City is not actionable.

B.    Section 1983

There is also no merit to Fago's Monell claim against the City. Fago alleges Monell liability on the grounds that (1) Chief Marquis was an official policymaker for the City and was responsible for a policy of demoting probationary officers without just cause and on the basis of race, (2) the actions of Chief Marquis's subordinates constituted a widespread custom of discrimination against white-male probationary officers, (3) the provisions of the CBA amounted to a policy that violated his rights by depriving him of a grievance process to redress the loss of his probationary position, and (4) the City acted with deliberate indifference to his rights by its failure to train, supervise, and properly discipline officers. The City moves for summary judgment on this claim on the grounds that Fago has not

34

established that any of the Individual Defendants violated his constitutional rights, but even if he had done so, he has submitted no evidence to establish the existence of an official policy or custom that caused him to be subjected to the denial of a constitutional right.  The court agrees.

Pursuant to <u>Monell v. Dept. of Social Servs.</u>, 436 U.S. 658 (1978), a municipality may be liable under § 1983 if official municipal policy of some nature caused the alleged constitutional tort.  <u>See</u> <u>Monell</u>, 436 U.S. at 690-91.  A plaintiff alleging liability pursuant to <u>Monell</u> must demonstrate (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.  <u>See</u> <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995).  Given that the court has found no merit to any of Fago's constitutional claims, the claim against the City would necessarily fail as well.

Nonetheless, Fago has no evidence that shows any official policy or custom caused him to be subjected to the denial of a constitutional right.  Even though a collective bargaining agreement such as the CBA may qualify as a municipal "policy" under <u>Monell</u>, <u>see</u> <u>Kasper v. City of Middletown</u>, 352 F. Supp. 2d 216, 235 (D. Conn. 2005), as discussed above, Fago has not made any showing that any of the provisions of the CBA caused the deprivation of his constitutional rights.

Moreover, Fago's assertion that Chief Marquis was a final

policymaker is legally incorrect and cannot serve as a basis for his <u>Monell</u> claim.  <u>See</u> <u>Jeffes v. Barnes</u>, 208 F.3d 49, 57-58 (2d Cir. 2000) (noting that whether an official possessed final policy making authority in a particular area is a legal question to be determined by state law); <u>Looby v. City of Hartford</u>, 152 F. Supp. 2d 181 (D. Conn. 2001).  Under the City's personnel rules, Chief Marquis was only given the discretion and authority to "recommend" a demotion.  Thus, as a matter of law, he did not have final policy making authority with respect to Fago's demotion, or any other act relevant to this lawsuit.

Similarly, Fago's claim that the acts of Chief Marquis's subordinates constituted a widespread policy whereby white-male probationary officers were subject to unwarranted investigations and demoted on the basis of race is completely without factual support and as such does not merit consideration.

Fago also submits no evidence to support his conclusory assertion that the City failed to adequately train or supervise officers and that its failure resulted in deliberate indifference to his rights.  <u>See</u> <u>City of Canton</u>, 489 U.S. 378, 387-90 (1989) (holding that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact).  A finding of inadequate training and causation must

"be based on more than the mere fact that the misconduct occurred in the first place." Amnesty America v. Town of West Hartford, 361 F.3d 113, 130 (2d Cir. 2004). Significantly, Fago does not offer any evidence concerning the City's training programs, but merely relies on his baseless and unsubstantiated assertion that if the training and supervision had been adequate, the Individual Defendants would not have made false complaints leading to his demotion. Similarly, Fago's conclusory and wholly unsubstantiated claim that the City failed to promulgate and enforce appropriate guidelines and policies regarding personnel actions and discipline is also unavailing without supporting evidence.

Without the required factual support, Fago's bald assertions are insufficient to impose liability on the City for the conduct of the Individual Defendants.

VI. State-Law Claims

Fago also brings two pendent state-law claims: a claim of intentional infliction of emotional distress against the Individual Defendants and a defamation claim against McClure, Buyak, Miele, and Rudewicz. These defendants move for summary judgment on these claims on the grounds that Fago has offered no evidence showing a genuine issue for trial.

However, the court need not consider the merits of these pendent state-law claims. Supplemental or pendent jurisdiction

37

is a matter of discretion, not of right, and a court does not need to exercise supplemental jurisdiction in every case.  See United Mine Workers v. Gibbs, 383 U.S. 715, 715-26 (1966) (noting that a federal court should exercise supplemental jurisdiction and hear a state claim when doing so would promote judicial economy, convenience and fairness to the litigants).  Here, the court has dismissed all of Fago's federal claims against the defendants and could only determine his state-law claims if it exercised supplemental jurisdiction.  However, in accordance with counsel's request at oral argument, it declines to do so.  See 28 U.S.C. § 1367(c)(3).

CONCLUSION

For the foregoing reasons, the defendants' motions for summary judgment [docs. ## 152, 154] are GRANTED.  The defendants' Motion to Strike [doc. # 153] is DENIED.  Fago's state-law claims of defamation and intentional infliction are DISMISSED without prejudice pursuant to 28 U.S.C. § 1367(c)(3). The Clerk is instructed to enter judgment in favor of all defendants and to close the case.

SO ORDERED this 31st day of March, 2006, at Bridgeport, Connecticut.

/s/
Alan H. Nevas
United States District Judge